# UNITED STATES DISTRICT COURT
FOR THE
# DISTRICT OF RHODE ISLAND

**STATE OF RHODE ISLAND,** by and through the **RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT**

*Plaintiff,*

vs.

**TOWN OF COVENTRY, RHODE ISLAND,**
**A. CARDI REALTY CO., INC.,**
**ARKWRIGHT, INC.,**
**CNA HOLDINGS, INC.,** f/k/a Hoechst Chemical Corp. and American Hoechst Corp.,
**CHEVRON U.S.A. INC.,**
**CIBA SPECIALTY CHEMICALS CORPORATION,**
**GARLAND INDUSTRIES, INC.,**
**MALLINCKRODT INC.,** f/k/a International Minerals & Chemicals Corp.,
**SOLUOL, INC.,**
**SUNOCO, INC.,**
**TEXACO, INC.**
**UNIROYAL HOLDING, INC.,**
**UNION OIL COMPANY OF CALIFORNIA** (d/b/a Unocal), for its former subsidiary American Mineral Spirits Co.
**WHITTAKER CORPORATION**

*Defendants.*

CA 05 346ML

**Civil Action No. ___**

**COMPLAINT**

The State of Rhode Island ("State") by authority of the Attorney General of the State of Rhode Island and through the undersigned attorney, acting at the request of the Director of the Rhode Island Department of Environmental Management ("RIDEM"), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought pursuant to Sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9607 and 9613 ("CERCLA"), the Rhode Island Hazardous Waste Management Act of 1978, R.I. Gen. Laws §§ 23-19.2 et seq., the Rhode Island Industrial Property Remediation and Reuse Act, R.I. Gen. Laws §§ 23-19.14, et seq., the Rhode Island Groundwater Protection Act, R.I. Gen. Law §§ 46-13.1, et seq., the Rhode Island Water Pollution Act, R.I. Gen. Laws §§ 46-12-1, et seq., and the common law of nuisance and strict liability. The State seeks to recover costs that have been and will be incurred by the State in connection with responses to the release or threatened release of hazardous substances at or from the Coventry Landfill and the affected adjacent property (referred to inclusively as the "Site"), located in the Town of Coventry, Rhode Island.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to Section 113(b) of CERCLA 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the claims arose and the threatened and actual releases of hazardous substances arose in this district.

## DEFENDANTS

4. Upon information and belief, defendant Town of Coventry, Rhode Island is a municipality in the State of Rhode Island.

5. Upon information and belief, defendant A. Cardi Realty Co., Inc. is a Rhode Island corporation.

6. Upon information and belief, defendant Arkwright, Inc. is a Rhode Island corporation.

7. Upon information and belief, defendant Chevron U.S.A. Inc. is a Pennsylvania corporation.

8. Upon information and belief, defendant Ciba Specialty Chemical Corporation is a Delaware corporation.

9. Upon information and belief, defendant CNA Holdings, Inc., f/k/a Hoechst Chemical Corp. and American Hoechst Corp. is a Delaware corporation.

10. Upon information and belief, defendant Garland Industries, Inc. is a Rhode Island corporation.

11. Upon information and belief, defendant Mallinckrodt Inc., f/k/a International Minerals & Chemicals Corp., is a New York corporation.

12. Upon information and belief, defendant Soluol, Inc. is a Rhode Island corporation.

13. Upon information and belief, defendant Sunoco, Inc. is a Pennsylvania corporation.

14. Upon information and belief, defendant Texaco Inc. is a Delaware corporation.

15. Upon information and belief, defendant Uniroyal Holding, Inc., successor to certain liabilities of Uniroyal, Inc., is a New Jersey corporation.

16. Upon information and belief, defendant Union Oil Company of California (d/b/a Unocal), is a California corporation.

17. Upon information and belief, defendant Whittaker Corporation is a Delaware corporation.

18. Each of the above-named defendants are persons within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601 (21).

## BACKGROUND

19. The Site is located on Arnold Road in the Town of Coventry, Rhode Island, and includes the Coventry Landfill (the "Landfill") and adjacent properties that have been impacted by the disposal of wastes at the Landfill.

20. The Landfill is owned by the Town of Coventry (the "Town"), which has owned the Landfill since at least the late 1930's.

21. The Town of Coventry operated the Landfill from the late 1930s until it ceased landfill operations in July 1975.

22. Coventry Landfill generally accepted household, commercial and industrial waste throughout its operational period. A variety of correspondence, newspaper articles and witness recollections confirm the fact that during the many years that the Landfill was in use, it was the only disposal site in the Coventry area. Consequently, except for companies and other businesses that disposed of waste on their own property, commercial and industrial facilities within the Town of Coventry and nearby used the Landfill for disposal of their wastes. At times, companies located outside of the state were also known to have used the Landfill for disposal.

23. In April, 1969, the ongoing waste disposal practices at the Landfill were officially recognized by the Town of Coventry through its adoption of "Rules and Regulations for Refuse Disposal Facilities of the Town of Coventry." Those regulations stated that "disposal of 'Refuse' (including 'solid wastes' and 'industrial wastes') shall be permitted only by sanitary landfills or by other means approved by the Town Council." With the requirement that the Town provide for a disposal site within the Town and the fact that commercial and industrial facilities were not charged a fee for the disposal, local businesses continued to make use of the dump on Arnold Road. An August 11, 1971 Landfill Disposal Site Inspections Report noted that "The area [in the Landfill] written up is where the mills and large packers dump." An operator of a septic cleaning business in Coventry was quoted in a July 30, 1970 Evening Bulletin article entitled "Firm Denies Dumping of Sewage," [into the Coventry Landfill], "There's no other provision for disposal of industrial waste anywhere in the town."

24. Based upon the recollections of former municipal employees who worked at the Landfill and members of the community at the time the Landfill was being operated, industrial and commercial waste that was disposed of at the Landfill was delivered directly in individual company trucks and by third-party transporters, including septic companies. Many companies whose wastes were disposed of at the Landfill were customers of Farrell Barrel (later, Great Lakes Container Corporation), the drum reconditioner located immediately across the street from the Coventry Landfill. According to former employees of Farrell Barrel and Great Lakes Container Corporation, the companies' customers sent drums to the facility to be reconditioned

still containing varying amounts of waste materials, much of which ultimately made its way to Coventry Landfill.

25. Numerous witnesses revealed that when a customer's drums arrived at Farrell Barrel for reconditioning, the liquid and solid residues in them were emptied into a holding tank on the Farrell Barrel property. According to several witnesses, on a no less than weekly, but often daily basis, a truck pulled the tanker over to the Landfill to be emptied. According to another witness, drums that Farrell Barrel could not recondition were dumped at the Landfill along with any waste they happened to contain. The same witness said that he witnessed Farrell Barrel dumping oil on the road leading into the Landfill, reportedly to suppress road-dust. Another witness recalled that Farrell Barrel was believed to be one of the primary sources of pollution at the Landfill because it regularly brought waste, consisting of various oils, to the Landfill. The president of a civic association concerned about the pollution of Tiogue Lake from waste oils and chemicals from Farrell Barrel's operations said that he was pleased that Farrell Barrel took a large amount of waste across the street to the Landfill because it reduced the chances of Tiogue Lake being polluted. Another witness indicated that two other drum companies, Efros Barrel and J. Collins in Providence, also brought drums containing residual wastes to Farrell Barrel for reconditioning. Those wastes likewise wound up being dumped at the Landfill along with the wastes from Farrell Barrel's other customers.

26. The administrative record on the Coventry Landfill maintained by the State demonstrates that few commercial and industrial businesses in and around the Town of Coventry during the time the Landfill was in operation (1938-1975) could have avoided using the Landfill for their waste disposal needs.

27. In 1981 and again in 1987, the Rhode Island Department of Public Health conducted sampling and analysis of private drinking water wells near the Site. In May 1982, the U.S. Environmental protection Agency ("EPA") completed a Preliminary Assessment at the Site. In 1984, EPA performed a Site Inspection. In 1989, RIDEM performed surface soil sampling at the Site. An alternative Remedial Contracting Strategy Site Inspection Prioritization was prepared by EPA in 1995. These studies have confirmed the release of hazardous substances at the Site.

28. Available information indicates that the Landfill principally accepted general refuse for disposal. The administrative record further reveals that unknown quantities of the solvent trichloroethlyene ("TCE"), a hazardous substance under CERCLA Section 101 (14), 42 U.S.C. § 9601 (14), barrel washing wastes and other wastes contaminated with unnamed chemicals were disposed of at the site.

29. Witnesses have indicated that certain Defendants either shipped wastes directly to or had wastes transshipped to the Landfill on their behalf, which wastes contained hazardous substances that were subsequently released at the Landfill.

30. Various Defendants met with RIDEM in 2004 to undertake a Site Investigation in order to assess the conditions at the Site. The Site Investigation will be conducted in accordance with the terms of the Partial Consent Decree to be filed contemporaneously with this Complaint.

31. RIDEM incurred response costs in connection with review of the Site Investigation Work Plan in 2004 and makes a claim under this Complaint for such response

costs. RIDEM seeks its response costs incurred subsequent to review and approval of the Site Investigation Work Plan ("Response Costs").

**FIRST CLAIM FOR RELIEF**

32. Paragraphs 1 through 31 are hereby realleged and incorporated herein by reference.

33. There were and are releases within the meaning of Section 101(22) of CERCLA 42 U.S.C. § 9601(22), and the threat of release of hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), at the Site.

34. The Site is a facility within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

35. Section 107(a) of CERCLA 42 U.S.C. § 9607(a), provides, in part:

> *1. The owner and operator of a vessel or facility;*
>
> *2. Any person who at the time of disposal of hazardous substance owned or operated any facility at which such hazardous substances were disposed of;*
>
> *3. Any person who by contract, agreement, or otherwise arrange for disposal or treatment, or arrange with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances; and,*
>
> *4. Any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release or a threatened release which . . . causes the incurrence of response costs, of a hazardous substance, shall be liable for;*
>
> > *a. all costs of removal or remedial action incurred by the United States Government or a State or an Indian*

*Tribe not inconsistent with National Contingency Plan . . ..*

36. Each Defendant is liable for costs of any remedial actions incurred by the State at the Site under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

37. The State has incurred Response Costs in responding to releases and threatened releases at the Site. The State will continue to incur Response Costs within the meaning of Section 101(15) of CERCLA, 42 U.S.C. § 9601(25), to respond to the releases or threatened releases of hazardous substances at the Site.

38. The State's actions taken and to be taken at the Site and the Response Costs incurred incident to those actions are not inconsistent with the National Contingency Plan promulgated by EPA under Section 105(a) of CERCLA, 42 U.S.C. § 9605(a), and codified at 40 C.F.R., Part 300 et seq.

39. The costs incurred by the State in connection with the Site were and are for actions taken in response to the release or threat of release of hazardous substances at the Site.

40. The State has satisfied any and all conditions precedent to the undertaking of response actions, the incurrence of Response Costs, and the recovery of those costs under Section 107 of CERCLA, 42 U.S.C. § 9607.

41. Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), each of the Defendants is jointly and severally liable to the State for all costs incurred and to be incurred by the State at the Site.

# UNITED STATES DISTRICT COURT
FOR THE
# DISTRICT OF RHODE ISLAND

**STATE OF RHODE ISLAND,** by and through the **RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT**

*Plaintiff,*

vs.

**TOWN OF COVENTRY, RHODE ISLAND,**
**A. CARDI REALTY CO., INC.,**
**ARKWRIGHT, INC.,**
**CNA HOLDINGS, INC.,** f/k/a Hoechst Chemical Corp. and American Hoechst Corp.,
**CHEVRON U.S.A. INC.,**
**CIBA SPECIALTY CHEMICALS CORPORATION,**
**GARLAND INDUSTRIES, INC.,**
**MALLINCKRODT INC.,** f/k/a International Minerals & Chemicals Corp.,
**SOLUOL, INC.,**
**SUNOCO, INC.,**
**TEXACO, INC.**
**UNIROYAL HOLDING, INC.,**
**UNION OIL COMPANY OF CALIFORNIA** (d/b/a Unocal), for its former subsidiary American Mineral Spirits Co.
**WHITTAKER CORPORATION**

*Defendants.*

CA 05 346ML

**Civil Action No. ___**

**COMPLAINT**

The State of Rhode Island ("State") by authority of the Attorney General of the State of Rhode Island and through the undersigned attorney, acting at the request of the Director of the Rhode Island Department of Environmental Management ("RIDEM"), files this Complaint and alleges as follows:

1

## NATURE OF THE ACTION

1. This is a civil action brought pursuant to Sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9607 and 9613 ("CERCLA"), the Rhode Island Hazardous Waste Management Act of 1978, R.I. Gen. Laws §§ 23-19.2 et seq., the Rhode Island Industrial Property Remediation and Reuse Act, R.I. Gen. Laws §§ 23-19.14, et seq., the Rhode Island Groundwater Protection Act, R.I. Gen. Law §§ 46-13.1, et seq., the Rhode Island Water Pollution Act, R.I. Gen. Laws §§ 46-12-1, et seq., and the common law of nuisance and strict liability. The State seeks to recover costs that have been and will be incurred by the State in connection with responses to the release or threatened release of hazardous substances at or from the Coventry Landfill and the affected adjacent property (referred to inclusively as the "Site"), located in the Town of Coventry, Rhode Island.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to Section 113(b) of CERCLA 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the claims arose and the threatened and actual releases of hazardous substances arose in this district.

## DEFENDANTS

4. Upon information and belief, defendant Town of Coventry, Rhode Island is a municipality in the State of Rhode Island.

5. Upon information and belief, defendant A. Cardi Realty Co., Inc. is a Rhode Island corporation.

6. Upon information and belief, defendant Arkwright, Inc. is a Rhode Island corporation.

7. Upon information and belief, defendant Chevron U.S.A. Inc. is a Pennsylvania corporation.

8. Upon information and belief, defendant Ciba Specialty Chemical Corporation is a Delaware corporation.

9. Upon information and belief, defendant CNA Holdings, Inc., f/k/a Hoechst Chemical Corp. and American Hoechst Corp. is a Delaware corporation.

10. Upon information and belief, defendant Garland Industries, Inc. is a Rhode Island corporation.

11. Upon information and belief, defendant Mallinckrodt Inc., f/k/a International Minerals & Chemicals Corp., is a New York corporation.

12. Upon information and belief, defendant Soluol, Inc. is a Rhode Island corporation.

13. Upon information and belief, defendant Sunoco, Inc. is a Pennsylvania corporation.

14. Upon information and belief, defendant Texaco Inc. is a Delaware corporation.

15. Upon information and belief, defendant Uniroyal Holding, Inc., successor to certain liabilities of Uniroyal, Inc., is a New Jersey corporation.

16. Upon information and belief, defendant Union Oil Company of California (d/b/a Unocal), is a California corporation.

17. Upon information and belief, defendant Whittaker Corporation is a Delaware corporation.

18. Each of the above-named defendants are persons within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601 (21).

## BACKGROUND

19. The Site is located on Arnold Road in the Town of Coventry, Rhode Island, and includes the Coventry Landfill (the "Landfill") and adjacent properties that have been impacted by the disposal of wastes at the Landfill.

20. The Landfill is owned by the Town of Coventry (the "Town"), which has owned the Landfill since at least the late 1930's.

21. The Town of Coventry operated the Landfill from the late 1930s until it ceased landfill operations in July 1975.

22. Coventry Landfill generally accepted household, commercial and industrial waste throughout its operational period. A variety of correspondence, newspaper articles and witness recollections confirm the fact that during the many years that the Landfill was in use, it was the only disposal site in the Coventry area. Consequently, except for companies and other businesses that disposed of waste on their own property, commercial and industrial facilities within the Town of Coventry and nearby used the Landfill for disposal of their wastes. At times, companies located outside of the state were also known to have used the Landfill for disposal.

23. In April, 1969, the ongoing waste disposal practices at the Landfill were officially recognized by the Town of Coventry through its adoption of "Rules and Regulations for Refuse Disposal Facilities of the Town of Coventry." Those regulations stated that "disposal of 'Refuse' (including 'solid wastes' and 'industrial wastes') shall be permitted only by sanitary landfills or by other means approved by the Town Council." With the requirement that the Town provide for a disposal site within the Town and the fact that commercial and industrial facilities were not charged a fee for the disposal, local businesses continued to make use of the dump on Arnold Road. An August 11, 1971 Landfill Disposal Site Inspections Report noted that "The area [in the Landfill] written up is where the mills and large packers dump." An operator of a septic cleaning business in Coventry was quoted in a July 30, 1970 Evening Bulletin article entitled "Firm Denies Dumping of Sewage," [into the Coventry Landfill], "There's no other provision for disposal of industrial waste anywhere in the town."

24. Based upon the recollections of former municipal employees who worked at the Landfill and members of the community at the time the Landfill was being operated, industrial and commercial waste that was disposed of at the Landfill was delivered directly in individual company trucks and by third-party transporters, including septic companies. Many companies whose wastes were disposed of at the Landfill were customers of Farrell Barrel (later, Great Lakes Container Corporation), the drum reconditioner located immediately across the street from the Coventry Landfill. According to former employees of Farrell Barrel and Great Lakes Container Corporation, the companies' customers sent drums to the facility to be reconditioned

still containing varying amounts of waste materials, much of which ultimately made its way to Coventry Landfill.

25. Numerous witnesses revealed that when a customer's drums arrived at Farrell Barrel for reconditioning, the liquid and solid residues in them were emptied into a holding tank on the Farrell Barrel property. According to several witnesses, on a no less than weekly, but often daily basis, a truck pulled the tanker over to the Landfill to be emptied. According to another witness, drums that Farrell Barrel could not recondition were dumped at the Landfill along with any waste they happened to contain. The same witness said that he witnessed Farrell Barrel dumping oil on the road leading into the Landfill, reportedly to suppress road-dust. Another witness recalled that Farrell Barrel was believed to be one of the primary sources of pollution at the Landfill because it regularly brought waste, consisting of various oils, to the Landfill. The president of a civic association concerned about the pollution of Tiogue Lake from waste oils and chemicals from Farrell Barrel's operations said that he was pleased that Farrell Barrel took a large amount of waste across the street to the Landfill because it reduced the chances of Tiogue Lake being polluted. Another witness indicated that two other drum companies, Efros Barrel and J. Collins in Providence, also brought drums containing residual wastes to Farrell Barrel for reconditioning. Those wastes likewise wound up being dumped at the Landfill along with the wastes from Farrell Barrel's other customers.

26. The administrative record on the Coventry Landfill maintained by the State demonstrates that few commercial and industrial businesses in and around the Town of Coventry during the time the Landfill was in operation (1938-1975) could have avoided using the Landfill for their waste disposal needs.

27. In 1981 and again in 1987, the Rhode Island Department of Public Health conducted sampling and analysis of private drinking water wells near the Site. In May 1982, the U.S. Environmental protection Agency ("EPA") completed a Preliminary Assessment at the Site. In 1984, EPA performed a Site Inspection. In 1989, RIDEM performed surface soil sampling at the Site. An alternative Remedial Contracting Strategy Site Inspection Prioritization was prepared by EPA in 1995. These studies have confirmed the release of hazardous substances at the Site.

28. Available information indicates that the Landfill principally accepted general refuse for disposal. The administrative record further reveals that unknown quantities of the solvent trichloroethlyene ("TCE"), a hazardous substance under CERCLA Section 101 (14), 42 U.S.C. § 9601 (14), barrel washing wastes and other wastes contaminated with unnamed chemicals were disposed of at the site.

29. Witnesses have indicated that certain Defendants either shipped wastes directly to or had wastes transshipped to the Landfill on their behalf, which wastes contained hazardous substances that were subsequently released at the Landfill.

30. Various Defendants met with RIDEM in 2004 to undertake a Site Investigation in order to assess the conditions at the Site. The Site Investigation will be conducted in accordance with the terms of the Partial Consent Decree to be filed contemporaneously with this Complaint.

31. RIDEM incurred response costs in connection with review of the Site Investigation Work Plan in 2004 and makes a claim under this Complaint for such response

costs. RIDEM seeks its response costs incurred subsequent to review and approval of the Site Investigation Work Plan ("Response Costs").

**FIRST CLAIM FOR RELIEF**

32. Paragraphs 1 through 31 are hereby realleged and incorporated herein by reference.

33. There were and are releases within the meaning of Section 101(22) of CERCLA 42 U.S.C. § 9601(22), and the threat of release of hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), at the Site.

34. The Site is a facility within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

35. Section 107(a) of CERCLA 42 U.S.C. § 9607(a), provides, in part:

1. *The owner and operator of a vessel or facility;*

2. *Any person who at the time of disposal of hazardous substance owned or operated any facility at which such hazardous substances were disposed of;*

3. *Any person who by contract, agreement, or otherwise arrange for disposal or treatment, or arrange with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances; and,*

4. *Any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release or a threatened release which . . . causes the incurrence of response costs, of a hazardous substance, shall be liable for;*

   a. *all costs of removal or remedial action incurred by the United States Government or a State or an Indian*

> *Tribe not inconsistent with National Contingency Plan . . ..*

36. Each Defendant is liable for costs of any remedial actions incurred by the State at the Site under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

37. The State has incurred Response Costs in responding to releases and threatened releases at the Site. The State will continue to incur Response Costs within the meaning of Section 101(15) of CERCLA, 42 U.S.C. § 9601(25), to respond to the releases or threatened releases of hazardous substances at the Site.

38. The State's actions taken and to be taken at the Site and the Response Costs incurred incident to those actions are not inconsistent with the National Contingency Plan promulgated by EPA under Section 105(a) of CERCLA, 42 U.S.C. § 9605(a), and codified at 40 C.F.R., Part 300 et seq.

39. The costs incurred by the State in connection with the Site were and are for actions taken in response to the release or threat of release of hazardous substances at the Site.

40. The State has satisfied any and all conditions precedent to the undertaking of response actions, the incurrence of Response Costs, and the recovery of those costs under Section 107 of CERCLA, 42 U.S.C. § 9607.

41. Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), each of the Defendants is jointly and severally liable to the State for all costs incurred and to be incurred by the State at the Site.

## SECOND CLAIM FOR RELIEF

42. Paragraphs 1 through 41 are hereby realleged and incorporated herein by reference.

43. There were and are, within the meaning of R.I. Gen. Laws Section 46-12-1(c), discharges of pollutants into the waters of the State at the Site.

44. Defendants are persons within the meaning of R.I. Gen. Laws § 42-12-1(1).

45. Each Defendant is liable under R.I. Gen. Laws § 46-12-5 for discharges of pollutants into the waters of the State from the Site.

## THIRD CLAIM FOR RELIEF

46. Paragraphs 1 through 45 are hereby realleged and incorporated herein by reference.

47. There was, within the meaning of R.I. Gen. Laws § 23-19.1-4, unpermitted disposal of hazardous wastes at the Site.

48. Defendants are persons within the meanings of R.I. Gen. Laws § 23-19.1-4(9).

49. Each Defendant is liable under R.I. Gen. Laws § 23-19.1-10 for disposal of hazardous waste without a permit at the Site.

## FOURTH CLAIM FOR RELIEF

50. Paragraphs 1 through 49 are hereby realleged and incorporated herein by reference.

51. There was, within the meaning of R.I. Gen. Laws § 23-19.14-1, et seq., an actual or threatened release of hazardous substances at or from the Site.

52. Each and all of the Defendants are persons within the meaning of the statute.

## FIFTH CLAIM FOR RELIEF

53. Paragraphs 1 through 52 are hereby realleged and incorporated herein by reference.

54. There were, within the meaning of R.I. Gen. Laws § 46-13.1-3, discharges of toxic pollutants into the groundwater at the Site.

55. Each Defendant is liable under R.I. Gen. Laws § 46-13.1-2 for discharges for toxic pollutants from the Site.

## SIXTH CLAIM FOR RELIEF

56. Paragraphs 1 through 55 are hereby realleged and incorporated herein by reference.

57. Defendants permitted the release of hazardous pollutants into the environment from the Site.

58. The contamination of soil and groundwater by these hazardous pollutants at the Site is a public nuisance.

59. The State has sustained damages resulting from the contamination in groundwater at the Site.

60. Each Defendant is strictly liable to the State for damages resulting from the contamination of groundwater at the Site.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, the State of Rhode Island, respectfully requests that the Court:

1. Enter a judgment against Defendants, jointly and severally, to perform response actions (investigation and remediation) at the Site;

2. Enter a judgment against Defendants, jointly and severally, for all Response Costs incurred by the State in connection with the Site, plus appropriate interest and legal expense.

3. Enter a judgment against Defendants, jointly and severally, for all Oversight Costs incurred by the State in connection with the Site, plus appropriate interest and legal expense.

4. Award the State a declaratory judgment that Defendants, jointly and severally, are liable for future costs incurred by the State in connection with the Site;

5. Enter a judgment that each Defendant is liable pursuant to R.I. Gen. Laws § 46-12-5 for discharges of pollutants into waters of the State from the Site and award the State civil penalties and past and future costs in accordance with R.I. Gen. Laws §46-12-13.

6. Enter a judgment that each Defendant is liable pursuant to R.I. Gen. Laws § 23-19.1-10 for unpermitted disposal of hazardous waste at the Site.

7. Enter a judgment that: (i) finds that each Defendant is a responsible party pursuant to R.I. Gen. Laws §23-19.14-6(a) and is jointly and severally liable for the actual or threatened release of hazardous materials at the Site pursuant to R.I. Gen. Laws § 23-19.14-6(b); and (ii) awards the State its past and future costs in accordance with R.I. Gen. Laws § 23-19.14-6(b)(2).

8. Enter a judgment finding that each Defendant is liable for restoring the quality of groundwater impacted by the Site consistent with R.I. Gen. Laws §§ 46-13.1-2 through –4 and the regulations promulgated thereunder.

9. Award the State its costs and fees in this action.

10. Grant such other and further relief as is appropriate.

Respectfully submitted,
STATE OF RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL MANAGEMENT
By its attorney,

Brian Wagner, Esq. (R.I. Bar No. 4033)
Deputy Chief Legal Counsel
RIDEM – Office of Legal Services
235 Promenade Street, 4th Floor
Providence, RI 02908
Tel. – (401) 222-6607
Fax - (401) 222-3378