# UNITED STATES DISTRICT COURT

FOR THE

# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **STATE OF RHODE ISLAND, ET AL.** ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | |
| **v.** ) | **C.A. No. 05-346ML** |
| ) | |
| **TOWN OF COVENTRY, R.I. et al.** ) | **Motion to Enter** |
| ) | **Partial Consent Decree** |
| **Defendants** ) | |

The State of Rhode Island ("State"), by and through the authority of the Department of Environmental Management ("RIDEM"), hereby moves the Court to Enter the Partial Consent Decree lodged by the parties on August 15, 2005. In support of this Motion, Plaintiff relies on the Memorandum of Law filed herewith.

STATE OF RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL MANAGEMENT
By its attorney,

BRIAN A. WAGNER (No. 4033)
235 Promenade Street
Providence, Rhode Island 02908
Tel. (401) 222-6607
Fax (401) 222-3378

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of September, 2005, a copy of the within Motion to Enter Partial Consent Decree was served on the following parties:

Anthony F. Muri, Esq.
Goldenberg & Muri, LLP
10 Weybosset Street
Providence, RI 02903-2808

Jean Warshaw Esq.
177 East 87th Street
Suite 201C
New York, NY 10128

Patrick J. Sullivan, Esq.
505 Tiogue Avenue
Coventry, RI 02816

Thomas J. Haines
Sunoco, Inc (R&M)
Law Department
1735 Market St., Suite LL
Philadelphia, PA 19103

S. Paul Ryan, Esq.
670 Willett Ave.
East Providence, RI 02915

Gregory Benik, Esq.
Holland & Knight
1800 Hospital Trust Tower
Providence, RI 02903

Richard Sherman, Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Susan Shumway, Esq.
155 Post Road East, Suite 12
Westport, CT 06880

Eric G. Lardiere
Vice President, Secretary & General Counsel
Whittaker Corporation
1955 North Surveyor Avenue
Simi Valley, CA 93063

David Graham, Esq.
Kaufman & Canoles
4801 Courthouse St.
Williamsburg, VA 23188

Pat Duft
Vice President, Legal
675 McDonnell Blvd.
St. Louis, MO 63042

Jill A. Tracy, Esq.
376 South Valencia Ave.
Brea, CA 92823

Richard T. Hughes, Esq.
ChevronTexaco
Law Department
1500 Louisiana St.
Room 36050 C
Houston, TX 77002

By regular mail, postage pre-paid.

Irene Lennox

# UNITED STATES DISTRICT COURT

**FOR THE**

# DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **STATE OF RHODE ISLAND, ET AL.** **Plaintiffs** | ) | |
| **v.** | ) | **C.A. No. 05-346ML** |
| **TOWN OF COVENTRY, R.I. et al.** **Defendants** | ) | **Memorandum Supporting Plaintiff's Motion to Enter Partial Consent Decree** |

On August 15, 2005, the State of Rhode Island (the "State") lodged a Partial Consent Decree (the "Partial CD") concerning the Coventry Municipal Landfill located on Arnold Road in the Town of Coventry, Rhode Island (the "Landfill" or "Site"). The Partial CD represents a settlement between the State and the fourteen (14) defendants named in the Complaint (the "Settling Defendants"). The Settling Defendants are potentially responsible parties ("PRPs") with respect to the Site either as owners, operators, generators or transporters.

As proposed, the Partial CD resolves the State's claims against the Settling Defendants under various statutory and common law causes of action[1] for the performance of a Remedial Investigation/Feasibility Study ("RI/FS") and the payment of oversight costs incurred by the State in connection with the performance of the RI/FS. The RI/FS will be performed by six (6) of the Settling Defendants (the "Performing Settling Defendants") using financial support contributed by thirteen (13) of the Settling Defendants. The Performing Settling Defendants will implement the RI/FS in accordance with the RI/FS Work Plan that is appended to the Partial CD. In return for full performance of the RI/FS and reimbursement of the State's related oversight costs, the State is providing the Settling Defendants with standard covenants not to sue and contribution protection under Sections 106, 107 113 and 310 of CERCLA, Section 23-19.14-11 of IPRARA and other Federal or State statute or common law. The covenants not

[1] These causes of action include: The Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 100 Stat. 1613 (1986) ("CERCLA"), 42 U.S.C. §§ 9607 et seq.; the Rhode Island Hazardous Waste Management Act, R.I. Gen. Laws ch. 23-19.1; the Rhode Island Industrial Property Remediation and Reuse Act, R.I. Gen. Laws ch. 23-19.14

to sue and contribution protection Provided in the Partial CD relate solely to the design and successful performance of the RI/FS and to the payment of the State's oversight costs and do not protect the Settling Defendants from liability to the State or other PRPs associated with any remedial activities that may be required in the future.

Notice of the proposed Partial CD was published in the Providence Journal on August 19, 2005, announcing a thirty (30) day public comment period for the Partial CD. *(A copy of the Affidavit of Publication attached hereto as "Exhibit A.")* The public comment period expired on September 19, 2005, without any comments being received regarding the Partial CD. Accordingly, this matter is now ripe for a decision on the entry of the Partial CD. Given the absence of public comment and the State's belief that the settlement proposed by the Partial CD is fair, reasonable, consistent with CERCLA's statutory scheme and in the public interest, the State has determined to go forward with the proposed settlement and hereby moves for Entry of the Partial CD.

A. CERCLA Overview

CERCLA was enacted in 1980 in response to widespread public concern regarding the safety of disposal practices for hazardous substances and the subsequent impacts to public health, safety and the environment occasioned by those practices. *See* Eagle-Picher Industries v. EPA, 759 F.2d 922, 925 (D.C. Cir. 1985). The enactment of CERCLA authorized the President to implement and administer a program to secure, "prompt and effective response to problems of national magnitude resulting from hazardous waste disposal." United States v. Cannons Engineering Corp., 899 F.2d 79, 90 (1st Cir. 1990) (quoting United States v. Reilly Tar & Chemical Corp., 546 F. Supp. 1100, 1112 (D. Minn. 1982)). As amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986), CERCLA provides both the federal and state governments with broad authority to investigate and clean up hazardous waste sites, 42 U.S.C. §9604(a), to compel potentially responsible parties ("PRPs") to investigate and clean up such sites, 42 U.S.C. §9606, and to seek and obtain reimbursement from PRPs for costs incurred by the government with respect to the investigation and clean up of such sites, 42 U.S.C. §9607.

("IPRARA"); the Rhode Island Groundwater Protection Act, R.I. Gen. Laws ch. 46-13.1; the Rhode Island Water Pollution Act, R.I. Gen. Laws ch. 46-12, and the common law causes of action of public nuisance and strict liability.

PRPs may be held responsible for investigating and remediating hazardous waste sites and/or for reimbursing governmental actors for performing those activities include: the owner(s) and operator(s) of the facility where the hazardous waste disposal occurred; the person(s) who generate the hazardous wastes and/or arrange for their disposal, treatment or transportation; and anyone that accepts hazardous wastes for transport to a disposal or treatment site. New York v. Shore Realty Corp., 759 F.2d 1032, 1043 (2nd Cir. 1985); United States v. Monsanto, 858 F.2d 160, 167-171 (4th Cir. 1988), cert. denied, 490 U.S. 1106 (1989). The liability scheme established by CERCLA is one of joint and several liability for all responsible parties. O'Neil v. Picillo, 883 F.2d 176, 178-79 (1ST Cir. 1989), cert. denied sub nom.; American Cyanamid Co. v. O'Neil, 493 U.S. 1071 (1990); United States v. Kayser-Roth Corp., 724 F.Supp. 15, 19 (D.R.I. 1989), aff'd, 910 F.2d 24 (1ST Cir. 1990), cert. denied, 498 U.S. 1084 (1991).

B. The Coventry Municipal Landfill CERCLA Site

The Coventry Municipal Landfill is located in the Town of Coventry, Rhode Island, on the southwest side of Arnold Road, northeast of the intersection of Arnold Road and New London Turnpike. The Landfill is situated on a parcel of property that is roughly ten (10) acres in size; however, the detection of refuse and fill materials on abutting properties indicate that wastes may also have been dumped beyond the boundaries of the Site. The Landfill accepted wastes from the late 1930's through July 1975. In addition to municipal waste, the Landfill is also known to have accepted industrial/commercial wastes, building and demolition debris, and bulk and drummed solid and liquid wastes from two local drum-reconditioning businesses. The Landfill is unlined and uncapped and is covered with sand and gravel that has become well vegetated over time. Local geological information and quarrying operations indicate that the Landfill is underlain by sand and gravel deposits that would provide a highly conductive pathway for the migration of contaminated leachate. Groundwater beneath the Landfill is presumed to flow northward towards Tiogue Lake.

The Settling Defendants have been identified as PRPs at the Landfill because they either own(ed) and/or operate(d) the property on which the wastes were dumped, or they are believed to have generated or arranged for the disposal, treatment or transportation of the hazardous wastes that ultimately found their way to the Landfill. Some

of the Settling Defendants are local businesses that transported or arranged for wastes to be transported directly from their facilities to the Landfill. Most of these local PRPs were identified by employees of the Coventry Sanitation Department who worked at the Landfill, observed the delivery of the wastes, and directed the drivers where to dump their loads.

The remaining PRPs are mainly comprised of waste generators that arranged for the disposal of hazardous wastes that ultimately found their way to the Landfill via the operations of two drum reconditioning businesses: D.F. Farrell, Inc. (a/k/a Farrell Barrell, later known as Great Lakes Container Corporation), and Efros Barrel, Inc. These two businesses used the Landfill for the bulk disposal of residual liquid and solid wastes that they removed from the drums during the reconditioning process as well as drummed wastes. Farrell Barrell alone allegedly dumped as much as 50-75,000 gallons of waste at the Landfill each week from its operations.

In May and June 2003, the State sent Letters of Responsibility ("LORs") to approximately twenty-four (24) PRPs advising them of their alleged liability at the Landfill and inviting them to attend an informational meeting at the offices of the Department of Environmental Management to discuss conditions at the Landfill and the need to perform an RI/FS. Approximately ten (10) more LORs were subsequently issued in or about March 2004. As a result of these LORs, a number of the PRPs began to work together in a cooperative fashion to prepare a scope of work for a RI/FS as requested by the State in the LORs. This scope of work evolved into the RI/FS Workplan that will be implemented by the Performing Defendants upon entry of the Partial CD. Performance of the RI/FS is an essential prerequisite to the design and implementation of a cleanup remedy for the landfill. In addition to identifying the types of contaminants that need to be cleaned up, where they are located and the appropriate cleanup technologies to be applied, the RI/FS will also help to identify new PRPs and to allocate responsibility for the investigation and cleanup. Accordingly, entry of the Partial CD will facilitate the performance of the RI/FS and, ultimately, clean up of the Landfill.

C. Public Policy Favors CERCLA Settlements

There is a "clear policy in favor of encouraging settlements . . . particularly in an area where voluntary compliance by the parties . . . will contribute significantly toward ultimate achievement of statutory goals".

Patterson v. Newspaper & Mail Deliverers' Union of New York, 514 F.2d 767,771(2d Cir. 1975), cert. denied sub nom, Larkin v. Patterson, 427 U.S. 911 (1976). The public policy in favor of the resolution of litigation by settlement is particularly strong in CERCLA cases. In Re Acushnet River & New Bedford Harbor, 712 F.Supp. 1019, 1029 (D.Mass. 1989) (The "Congressional purpose is better served through settlements which provide funds to enhance environmental protection, rather than the expenditure of limited resources on protracted litigation.") See also Dedham Water Co. v. Cumberland Farms Dairy, Inc., 805 F.2d 1074, 1082 (1st Cir. 1986).

The settlement encompassed in the Partial CD serves the interests of public policy and the goals of CERCLA because it provides for a prompt and complete investigation of the Landfill by the PRPs at no cost to the State or Federal governments and without limiting the State's legal options to pursue and prosecute any and all PRPs, known or unknown, for the remediation of the Landfill. By handling the investigation of the Landfill cooperatively, as a state-lead CERCLA site pursuant to State site investigation and remediation requirements, the parties believe that the investigation and remediation of the Landfill can be completed faster and at less expense than under the typical federal-lead scenario. By limiting the focus of the Partial CD to the RI/FS, the State is able to attract more PRPs to participate in the settlement because they are not committing to participate in the full remediation of the Site. Once the RI/FS is completed, the State, the Court, the Settling Defendants and new PRPs will have significantly better information on the nature and extent of the contamination at the Landfill, the methodology and cost of the remedy, and the identity and relative liabilities of the PRPs. This information should enhance and accelerate the ability of the parties to arrive at an appropriate agreement for remediating the Landfill.

D. Standard for Judicial Review of the Consent Decree

Approval of a consent decree is a judicial act committed to the informed discretion of the trial court. United States v. Cannons Eng'g Corp., 720 F. Supp. 1027, 1035 (D.Mass. 1989), aff'd, 889 F.2d 79 (lst Cir. 1990). Generally, when reviewing a settlement the standard to be applied is whether the settlement is "fair, adequate, and reasonable". See Walsh v. Great Atlantic & Pacific Tea Co., 726 F.2d 956, 965 (3d Cir. 1983). This standard has been affirmed for the review of CERCLA settlements. Cannons, 889 F. 2d at 85 (quoting H.R. Rep. No. 253(III) at 19 (Oct. 31, 1985), reprinted in 4 1986 U.S. Code Cong. & Admin. News 3038, 3042) (a court "is only to 'satisfy

itself that the settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve'"). See Also, United States v. Charles George Trucking, Inc., 34 F.3d 1081, 1085 (1st Cir. 1994); and United States v. DiBiase, 45 F.3d 541, 544 (1st Cir. 1995). In particular, judicial review of a settlement negotiated by the government is subject to special deference. Given the sophistication of the parties; the court should not engage in "second-guessing" the government's settlement simply because it may not be one which the court itself might have fashioned; rather the court should determine whether the proposed decree is "fair, reasonable, and faithful to the objectives of the governing statute." Cannons at 84; see generally Sam Fox Publ. Co. v. United States, 366 U.S. 683, 689 (1961) (absent malfeasance or bad faith, courts not to "assess the wisdom of the Government's judgment in negotiating and accepting a Consent Decree").

Based on the above, the Court's role in reviewing the Partial CD is limited and the Court should not substitute its judgment for that of the parties. Since the State has received no objections or comments to the Partial CD and since the settlement provides for the completion of an RI/FS without any cost to the State or limitation on its ability to prosecute any and all PRPs for the remediation of the Site, the Partial CD should be found to be fair, reasonable, consistent with the goals of CERCLA and in the public interest and should be entered by the Court.

E. The Consent Decree is Fair

The "fairness" of a CERCLA settlement involves both procedural fairness and substantive fairness. Cannons, 889 F.2d at 86. Courts evaluate procedural fairness by considering the "candor, openness and bargaining balance" of the negotiation process, id, while substantive fairness is considered as a function of the equity of the settlement versus the risks of litigation and, in some measure, the comparative fault of the PRPs and other pertinent factors. Charles George Trucking, 34 F.3d at 1089; Dibiase, 45 F.3d at 544, 545. The negotiating process in this matter was open to all who were willing to participate in the investigation of the Landfill in a cooperative manner with the State and the Settling Defendants. The PRPs that have decided to participate as Settling Defendants have weighed their litigation risks against their costs of participation in the RI/FS and have determined that voluntary participation in the RI/FS will be less costly and more expeditious than the litigation process. Consideration of the issue of comparative fault is premature in the present matter because the RI/FS must be completed before such

issues can be fully evaluated. In the end, the information gained through the RI/FS will help to insure that the appropriate PRPs bear the appropriate share of the costs to investigate and remediate the Landfill.

1. The Partial CD was negotiated in a procedurally fair and open manner within the government's discretion in exercising CERCLA enforcement and settlement authority.

In the present matter, the State identified over thirty-five (35) PRPs with potential liability at the Landfill. Each PRP was sent a Letter of Responsibility notifying them of their alleged potential liability and "inviting" them to participate in the formulation of a scope of work for an RI/FS. Fourteen (14) of those PRPs accepted the State's invitation and have agreed to enter into a Partial CD for the completion of the RI/FS. Although no PRPs were intentionally excluded from the negotiating process, once a certain "critical mass" of PRP participation was reached, neither the State nor the Settling Defendants continued to pursue PRPs that were reluctant to cooperate in the investigation of the Site. This is because the beneficial aspects of the Partial CD (expediency and cost saving/sharing) are dependant upon minimizing friction between the State and the Settling Defendants and among the Settling Defendants themselves. These non-settling PRPs will remain targets for prosecution by the State and contribution by the Settling Defendants. CERCLA case law allows the government to exercise this type of discretion in deciding which parties to settle with, litigate against, or choose not to include in negotiations. See e.g., Cannons, 899 F.2d at 93 ("So long as it operates in good faith, the EPA is at liberty to negotiate and settle with whomever it chooses.") As long as the settlement is otherwise fair, reasonable, consistent with the statute and in the public interest, a court should approve such settlements. United States v. Serafini, 781 F. Supp. 336, 339 (M.S.Pa. 1992) ("Therefore, the government may, if it chooses, deny parties any opportunity to settle their liability."). The Settling Defendants' efforts with respect to the Site are an example of how the CERCLA process can and should work without the need for expensive and time consuming litigation. Both the Settling Defendants and the State welcome new PRPs to the negotiating table, provided that they are willing to work towards completing the investigation and remediation of the Landfill in a cooperative and constructive manner. Accordingly, this agreement was negotiated in a procedurally fair manner and should be approved.

2. Given its limited purpose, completion of the RI/FS, the Partial CD is substantively fair.

Prior to entry of a CERCLA settlement, a court must satisfy itself that a consent decree is substantively fair. Cannons, 899 F.2d at 87. The Partial CD is substantively fair for the State because: (i) It provides for an

expeditious investigation of the Landfill unencumbered by the delay and expense of litigation; (ii) the RI/FS is performed at no expense to the State; (iii) the State retains a substantive oversight role over the RI/FS (at the expense of the Settling Defendants) to insure that it is properly and thoroughly performed; and (iv) the State does not waive any of its rights to pursue the Settling Defendants, or any other PRPs, for the remediation of the Landfill.

The Partial CD is substantively fair for the Settling Defendants because: (i) It will likely be less expensive for many Settling Defendants to participate in the RI/FS than it would be for them to litigate the issue of liability, even if they ultimately obtained a successful result; (ii) the Settling Defendants retain a level of control over the direction of the RI/FS (subject to state oversight) and the proposals for remediation than they would otherwise have if the RI/FS were performed by the government; (iii) the RI/FS will help to insure that remedial liability is properly allocated, possibly absolving some Settling Defendants of liability altogether; and (iv) the Settling Defendants receive a covenant not to sue from the State for expenses associated with the RI/FS, contribution protection from other PRPs for costs related to the RI/FS and the right to seek contribution for their RI/FS expenses against other, non-settling PRPs.

Based on the above, the Partial CD advances the State's interests in securing a prompt and efficient investigation of the Landfill without any cost to the State, while it protects the Settling Defendants' interests to delay a final determination on remedial liability until the RI/FS is complete.

3. The Court may enter a settlement involving certain settling PRPs without performing an allocation of liability as to all PRPs related to a site.

A court can and should enter a settlement involving certain settling PRPs without performing an allocation of liability as to all PRPs related to a site. To require otherwise would necessitate a trial on the merits before every settlement. Instead, "[s]ettlements are to be encouraged and the court does not "have the right or duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.'[City of Detroit v. Grinnell Corp., 495 F.2d at [sic] 448, 456 (2d Cir. 1974)]." Cannons, 720 F.Supp. at 1036 quoting City of New York v. Exxon, 697 F.Supp. 677, 692 (S.D.N.Y. 1988). All that is necessary is for a court to conduct a searching, but narrow, examination of the basis for the settlement in order to determine whether the settlement provides rough justice. See Cannons, 720 F.Supp. at 1040-46. In the present matter, no such allocation is required at the present

time because the Partial CD does not propose to implement a final remedy. Furthermore, performing an allocation at this time would be premature given that one of the functions of the RI/FS is to better identify the wastes at the site, which will in turn lead to a more complete and accurate identification of PRPs and, consequently a better allocation of liability. Accordingly, entry of the Partial CD should not be precluded because of an inability to accurately allocate liability for the performance of the RI/FS. Allocation of liability will be addressed in the remedial phase.

STATE OF RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL MANAGEMENT
By its attorney,

BRIAN A. WAGNER (No. 4033)
235 Promenade Street
Providence, Rhode Island 02908
Tel. (401) 222-6607
Fax (401) 222-3378

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of September, 2005, a copy of the within Memorandum Supporting Plaintiff's Motion to Enter Partial Consent Decree was served on the following parties:

Anthony F. Muri, Esq.
Goldenberg & Muri, LLP
10 Weybosset Street
Providence, RI 02903-2808

Jean Warshaw Esq.
177 East 87th Street
Suite 201C
New York, NY 10128

Patrick J. Sullivan, Esq.
505 Tiogue Avenue
Coventry, RI 02816

Thomas J. Haines
Sunoco, Inc (R&M)
Law Department
1735 Market St., Suite LL
Philadelphia, PA 19103

S. Paul Ryan, Esq.
670 Willett Ave.
East Providence, RI 02915

Gregory Benik, Esq.
Holland & Knight
1800 Hospital Trust Tower
Providence, RI 02903

Richard Sherman, Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Susan Shumway, Esq.
155 Post Road East, Suite 12
Westport, CT 06880

Eric G. Lardiere
Vice President, Secretary &
General Counsel
Whittaker Corporation
1955 North Surveyor Avenue
Simi Valley, CA 93063

David Graham, Esq.
Kaufman & Canoles
4801 Courthouse St.
Williamsburg, VA 23188

Pat Duft
Vice President, Legal
675 McDonnell Blvd.
St. Louis, MO 63042

Jill A. Tracy, Esq.
376 South Valencia Ave.
Brea, CA 92823

Richard T. Hughes, Esq.
ChevronTexaco
Law Department
1500 Louisiana St.
Room 36050 C
Houston, TX 77002

By regular mail, postage pre-paid.

Irena Lonny