UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STATE OF RHODE ISLAND, ET AL. | ) | |
| | ) | |
| Plaintiffs | ) | C.A. No. 05-346ML |
| | ) | |
| TOWN OF COVENTRY, RHODE ISLAND, ET AL. | ) | |
| | ) | |
| Defendants | ) | |

**ORDER**

This matter is before the Court on the State of Rhode Island's Motion for Injunctive Relief Authorizing Access to Property to Perform RI/FS, and the objection of Commerce Park Realty, LLC and Commerce Park Associates 9, LLC. After consideration of the filings by the parties and the merits of the claims made, it is hereby:

**ORDERED, ADJUDGED AND DECREED:**

1. Commerce Park Realty, LLC and Commerce Park Associates 9, LLC be, and hereby are, ordered to provide access to the Site (as defined in the Complaint and the Amended Complaint) upon the terms and conditions set forth in the Access Agreement attached to this Order, upon compliance by the Performing Settling Defendants and the State with their obligations thereunder.

ENTERED: ORDERED:

______________________ ______________________

# ACCESS AGREEMENT

This Access Agreement (this "Agreement") is made as of the ___ day of __________ 2006, by and between the State of Rhode Island, by and through its Department of Environmental Management (the "State"), the Settling Defendants ("Settling Defendants") as they are identified in the attached Partial Consent Decree entered by the United States District Court for the District of Rhode Island on October 13, 2005 in State of Rhode Island by and through the Rhode Island Department of Environmental Management vs. Town of Coventry, Rhode Island, et al., C.A. No. 05-346ML (the "Consent Decree"), Woodard & Curran, Inc., a Maine corporation having a principal place of business in the City of Portland, State of Maine ("W&C") in each case on behalf of themselves and their respective agents, employees, consultants, and assigns, and Commerce Park Realty, LLC, Commerce Park Associates 4, LLC, and Commerce Park Associates 9, LLC (the three last named entities are hereinafter referred to, collectively, as "Owner").

## Recitals

WHEREAS, in its capacity as the authorized agent of the Settling Defendants, and at the direction of the State, W&C is conducting a Remedial Investigation/Feasability Study of environmental conditions (the "Investigation") in and around the Coventry Landfill site, as the same is more particularly identified in the Consent Decree (the "Site"), which includes real property owned and leased by Owner;

WHEREAS, the Investigation is being conducted in accordance with the terms of the Consent Decree, which contemplates that the Owner shall permit W&C and the State to have access to the Site for the purposes contemplated by the Consent Decree and by this Agreement; and

WHEREAS, in order to avoid protracted litigation, the Owner is agreeable to grant access to the Site to W&C and the State for the purposes contemplated by the Consent Decree and by this Agreement, upon and subject to the terms and conditions hereinafter set forth.

## Agreement

NOW THEREFORE, the parties, on behalf of themselves, their agents, employees, independent contractors and assigns, hereby agree as follows:

1. Work to be Performed. The work to be performed (hereinafter, the "Work") shall be limited to the "Site Investigation Scope of Work" set forth in Section 4.00 of the Site Investigation Work Plan attached to the Consent Decree, and shall include the installation of one or more groundwater and soil gas monitoring wells on the Site; engineering and construction activities associated with the location and installation of the Wells, including surveying and layout for the installation of the Well(s); the collection of de minimus amounts of soil, air, soil gas, surface water and/or sediment samples on the Site, as set forth in the Remedial Investigation/Feasability Study appended to the Consent Decree; the subsequent monitoring of the Wells; performing test pit excavations and geoprobe investigations; conducting topographic and

property line surveys; and temporary storage of equipment and supplies on the former Coventry Landfill portion of the Site.

2. Data and Reports. All information, whether or not such information would otherwise be confidential, and all data and reports generated from the Remedial Investigation/Feasability Study conducted on the Site , whether or not submitted to the State, shall be promptly provided to the Owner.

3. Access by W&C. Owner hereby grants to W&C, its authorized agents and employees, and such independent contractors of W&C as shall execute and deliver to the Owner an agreement to be bound by the terms and conditions of this Agreement, a limited license to enter upon the Site for the sole purpose of conducting the Work, and for no other purpose, during the term of this Agreement. All persons granted a license to conduct any activities on the Site under this Agreement are hereinafter referred to, collectively, as "Licensees."

4. Access by the State. Owner hereby grants to the State a limited license to enter upon the Site for the purpose of monitoring the Work, verifying any data or information obtained by the persons conducting the Work pursuant to Paragraph 1 above, obtaining samples to the same extent as the Licensees conducting the Work pursuant to Paragraph 1 above, assessing the need for additional response actions on the Site, and assessing the Settling Parties' compliance with the Consent Decree.

5. Mutual Cooperation. All Work to be conducted by Licensees hereunder upon the Site shall occur in a reasonable time and manner and shall not inconvenience or interrupt the normal use and enjoyment of the Site by the Owner. Owner agrees reasonably to forbear from interfering with the Licensees' activities hereunder in compliance with this Agreement.

6. Compliance with Applicable Requirements. The Licensees shall comply with all applicable federal, state, or local laws, regulations, and standards in conducting the Work and in managing and disposing of any material generated by the Licensees in the conduct of the activities authorized by this Agreement at the Site .

7. Completion of Work. Upon completion of the Work, the Licensees shall restore the Site to its condition prior to the commencement of the Work.

8. Limitation on Owner's Liability. Owner shall not be responsible or liable for any defect, latent or otherwise, in the condition of the Site nor shall it be responsible or liable for any injury, loss or damage to any person or to any property of W&C or any other person or firm in any way caused by or resulting from any such defect or condition, or from rain, snow, ice, wind, frost, water, fire, or from the presence of solid or hazardous waste on the Site, or for any injury or damage caused by or resulting from acts of God or the elements, or for any injury or damage caused by or resulting from any defect or negligence in the ownership or management of the Site

by any person (including Owner). W&C shall give prompt notice to Owner in the event of any accident occurring anywhere upon the Site or elsewhere in connection with the Remedial Investigation/Feasability Study.

9. Insurance. W&C shall purchase and maintain insurance with respect to its operations on the Site during all phases of the Remedial Investigation /Feasibility Study. Such insurance shall be written for not less than the following limits, or greater if required by law:

(a) Workers Compensation and Employers Liability meeting statutory limits mandated by State and Federal laws.

(b) Commercial General Liability including coverage for Premises-Operations, Independent Contractors Protective, Products Completed Operations, Contractual Liability, Personal Injury and Broad Form Property Damage (including coverage for Explosion, Collapse and Underground hazards), as follows:

| | | |
|---|---|---|
| i. | $3,000,000 | Each Occurrence |
| ii. | $6,000,000 Advertising injury | General Aggregate, Personal and |
| iii. | $6,000,000 Aggregate | Products Completed, Operations |

The Policy shall be endorsed to have the General Aggregate apply to the project contemplated by this Agreement.

(c) Automobile Liability (owned, non-owned and hired vehicles) for bodily injury and property damage, $1,000,000 each accident.

12. Indemnity. The Licensees and each of them, jointly and severally, shall save Owner harmless from, and indemnify Owner from, any and all injury, loss or damage and any claims for injury, loss or damage, of whatever nature occurring upon or about the Site or in connection with Licensees' operations hereunder, no matter how caused. Licensees agree that the Owner shall not be liable to any Licensee or any anyone claiming under any Licensee for any injury, loss or damage that may be caused by or result from the fault or negligence or any persons occupying the Site or the adjoining premises. This indemnity and hold harmless agreement shall include indemnity against all costs, expenses and liabilities incurred in connection with any such injury, loss or damage or any such claim, or any proceeding brought thereon or the defense thereof, and shall specifically include costs of suit, and attorneys fees. In the event suit is brought to enforce the obligations of the Licensees under this Agreement, the Owner shall be entitled to recover its reasonable attorneys' fees and court expenses incurred therein. Moreover, the Licensees agrees to pay Owner's expenses, including reasonable attorney's fees, incurred in drafting, reviewing, and preparing this

Agreement, up the amount of Five Thousand Dollars ($5,000.000).

13. Termination. This Agreement shall expire upon the completion of the Remedial Investigation/Feasibility Study, provided that in the event that the State shall require additional site work as a condition of approval of the Remedial Investigation/Feasibility Study, this Agreement and each of its terms shall be revived for such period as may be required to complete such additional site work, and shall terminate upon the completion of such additional site work. The rights and remedies to which Owner may be entitled under the terms of this Agreement and/or under applicable law are cumulative and are not intended to be exclusive of any other rights or remedies to which Owner may be properly entitled in case of any breach or threatened breach by any Licensee of any provision of this Agreement. No failure of Owner to exercise any power conferred to it in this Agreement and/or under applicable law or to insist upon strict compliance by Licensees with any obligation, covenant, or agreement, and no custom or practice of the parties at variance with the terms hereof shall constitute a waiver of Owner's right to demand an exact compliance with the terms hereof.

14. Miscellaneous.

a. The interpretation, validity, performance, and enforcement of this Agreement shall be governed by the laws of the State of Rhode Island

b. Headings in this Agreement are for convenience and reference only and shall not be used to limit, amplify, or otherwise construe its provisions.

c. Whenever used in this Agreement, the singular number shall include the plural, and words of any gender shall include each other gender.

d. The terms, provisions, and covenants of this Agreement shall be binding upon and inure to the benefit of both parties and their respective successors in interest, and legal representatives, except as otherwise expressly provided herein.

e. This Agreement contains the entire agreement among the parties. No other agreements shall be effective to change, modify, or terminate this Agreement, in whole or in part, unless in writing and duly signed by both parties. Each party acknowledges that it is not relying on any representation or promise of the other, or of any agent of the other, except as expressly set forth herein.

f. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.