# UNITED STATES DISTRICT COURT

FOR THE

# DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STATE OF RHODE ISLAND, ET AL. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No. 05-cv-0346-T |
| | ) | |
| TOWN OF COVENTRY, R.I. et al. | ) | |
| | ) | |
| Defendants | ) | |

## Memorandum Supporting Rhode Island's Reply to the Limited Objection to its Motion for Access

On Tuesday, April 25, 2006, the Rhode Island Department of Environmental Management ("RIDEM") received a facsimile of the Limited Objection and supporting Memorandum filed on behalf of defendants Commerce Park Realty, LLC and Commerce Park Associates 9, LLC (the "Commerce Park defendants").[1] Without waiving its right to raise additional arguments both in support of its motion and in response to defendants' Limited Objection, RIDEM responds as follows:

First, RIDEM notes that it inadvertently failed to attach to its supporting memorandum a copy of the Settling Defendants' October 26, 2005 letter and proposed access agreement referenced therein. Accordingly, copies of those documents have been appended hereto for the Court's consideration.

[1] RIDEM notes that as of the date of this Reply it has yet to receive copies of the either the Objection or Memorandum by regular mail in accordance with the Certificate of Service appended thereto. RIDEM learned of the objection on April 24, 2006 via e-mail and an April 21, 2006 newspaper article. Thereafter, RIDEM contacted counsel for the Commerce Park defendants and received a copy by facsimile on April 25, 2006.

Second, at Page 2 of their supporting memorandum, the Commerce Park defendants suggest that RIDEM reacted rashly to their proposed revisions to the draft access agreement by moving to add them as defendants and in seeking injunctive relief. Although RIDEM acknowledges that its decision to bring this matter to the Court for resolution may appear abrupt, RIDEM believes that given the history of this matter and the demands made by the Commerce Park defendants in their proposed revisions, any further attempt to negotiate access would have been fruitless and would have needlessly delayed implementation of the RI/FS. The Commerce Park defendants have previously made their position on participating in the investigation and remediation of this site crystal clear by refusing to respond to RIDEM's Letter of Responsibility ("LOR"). In fact, Nicholas Cambio, the underlying principal of the Commerce Park defendants, actually stormed out of one of the initial organizational meetings of the Potentially Responsible Parties ("PRPs") vehemently refusing to participate in the investigation and remediation and was never heard from again. The proposed revisions to the access agreement offered by the Commerce Park defendants were little more than a reiteration of Mr. Cambio's previously stated position. The Settling Defendants have likewise made it clear that they have no desire to reward the recalcitrance of the Commerce Park defendants by performing their share of the RI/FS for free. Accordingly, RIDEM believes that Court involvement is necessary in order to avoid further delay in getting the Court-approved RI/FS up and running.

Third, the Commerce Park defendants also state on Page 2 that "fairness" demands that "reasonable obligations" be imposed on the Performing Settling Defendants ("PSDs") in return for the right to access the Site. Although RIDEM believes that many of the demands made by the Commerce Park defendants in return for site-access are neither fair nor reasonable, RIDEM

suggests that if the Court does consider the concepts of "fairness" and "reasonableness" in ruling on RIDEM's motion, that it applies those concepts in a manner that is consistent with CERCLA caselaw. *See United States v. Cannons Engineering Corp., 889 F.2d 79, 85 (1st Cir. 1990); see also, United States v. Charles George Trucking, Inc., 34 F.3d 1081, 1085 (1st Cir. 1994); and United States v. DiBiase, 45 F.3d 541, 544 (1st Cir. 1995).* Under CERCLA, "fairness" and "reasonableness" are regularly considered by Courts in reviewing Consent Decrees to insure that each defendant bears its fair share of the burdens imposed by the investigation and clean up. The Court should employ a similar analysis in this situation. In the present case, the Commerce Park defendants are responsible parties at the subject site that have refused to participate in the investigation and cleanup of property that they own and control. In fact, not only have they refused to participate, they have actively attempted to use their control over the site as leverage against the State and the PSDs to try and secure a complete release from liability at the site and, in so doing, have blocked implementation of the Court-approved RI/FS for over 6 months. Under CERCLA, RIDEM contends that the real issues of "fairness" and "reasonableness" to be considered in this case are whether it is either fair or reasonable *to the PSDs* to allow non-participating responsible parties like the Commerce Park defendants, to make any demands whatsoever on the PSDs that stand ready, willing and able to investigate the contamination on the non-participating parties' property? Fairness and reasonableness are two edges of the same sword and that sword cuts both ways. The Commerce Park defendants should not be rewarded or protected for their recalcitrant tactics.

Fourth, the Commerce Park defendants suggest at Page 3 of their Limited Objection that certain of the revisions that they proposed should be imposed as preconditions to access because

"neither the State nor the [Performing Settling Defendants] have objected" to them. In response, RIDEM states that it had no obligation to include in its motion for injunctive relief an exhaustive list of every provision in the revised access agreement with which it disagrees. RIDEM's motion is not an attempt to negotiate terms for access; rather, RIDEM's motion abandons the negotiation process in favor of seeking a Court-ordered resolution to the issue of access as outlined in the relief requested in RIDEM's memorandum. The Commerce Park defendants' demand for contribution protection and a covenant not to sue was not the only proposed revision with which RIDEM disagreed; it was merely the deal breaker. Accordingly, RIDEM strenuously disagrees that it has somehow acquiesced to any demand made by the Commerce Park defendants in the revised access agreement and requests that the Court grant access to the property in accordance with the terms outlined in RIDEM's memorandum, not with respect to any proposed access agreement.

Finally, the Commerce Park defendants contend that it is somehow inappropriate for the injunctive relief sought by RIDEM to run against Nicholas Cambio individually. RIDEM respectfully disagrees. The Commerce Park defendants are corporate entities that can only act at the direction of their principals, managers and employees. Accordingly, it is entirely appropriate to extend the injunctive relief to those individuals and to the other entities that they control so that they cannot later avoid liability for violating the Court's access order by playing a shell game with their various corporate and individual identities.

STATE OF RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL
MANAGEMENT
By its attorney,

BRIAN A. WAGNER (No. 4033)
235 Promenade Street
Providence, Rhode Island 02908
Tel. (401) 222-6607
Fax (401) 222-3378

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of April, 2006, a copy of the within Memorandum Supporting RIDEM's Reply to Limited Objection:

Anthony F. Muri, Esq.
Goldenberg & Muri, LLP
10 Weybosset Street
Providence, RI 02903-2808

David Graham, Esq.
Kaufman & Canoles
4801 Courthouse St.
Williamsburg, VA 23188

Patrick J. Sullivan, Esq.
505 Tiogue Avenue
Coventry, RI 02816

Stephen H. Burke, Esq.
Ratcliffe Burke Harten &
Elias LLP
1600 Financial Plaza
Providence, RI 02903

By regular mail, postage pre-paid.

KAUFMAN & CANOLES
| A Professional Corporation |
Attorneys and Counselors at Law

David B. Graham
757 / 259-3855
dbgraham@kaufcan.com

757 / 259-3800
fax: 757 / 259-3838

*Mailing Address:*
P.O. Box 6000
Williamsburg, VA 23188

4801 Courthouse Street
Suite 300
Williamsburg, VA 23188

October 26, 2005

Mr. Nicholas E. Cambio
Commerce Park Realty, LLC
Universal Properties
207 Quaker Lane, Third Floor
West Warwick, RI 02893

Re: Environmental Investigation of Coventry Landfill

Dear Mr. Cambio:

I am writing to you on behalf of the Coventry Landfill Group. This group is composed of the Town of Coventry; A Cardi Realty Co.; Inc. Arkwright, Inc.; CNA Holdings, Inc.; Chevron Environmental Management Co. (on behalf of Chevron U.S.A. Inc., Texaco, Inc. and the former Unocal); Ciba Specialty Chemicals Corp.; Garland Industries, Inc; Mallinckrodt Inc; Soluol, Inc.; Sunoco, Inc. (R&M); Uniroyal Holding, Inc. and Whittaker Corp.

As you are aware, in June, 2003, the Rhode Island Department of Environmental Management ("RIDEM") notified you, the thirteen members of the Coventry Landfill Group and a number of others with Letters of Responsibility that the State had found all so notified to be potentially liable for the environmental investigation and cleanup of the Coventry Landfill. Subsequently, the members of the Coventry Landfill Group executed a Partial Consent Decree with the State, State of Rhode Island v. Town of Coventry, et al., that was entered by the U.S. District Court of Rhode Island on October 13, 2005.

In accordance with the terms of the Consent Decree, the parties that elected to cooperate with the State in conducting an environmental investigation of the Coventry Landfill have engaged an engineering consultant, Woodard & Curran, and are ready to initiate the Remedial Investigation/Feasibility Study ("RI/FS") required by the Consent Decree.

The purpose of this letter is to request access from you as the owner and/or lessee of the property where wastes destined for disposal in the Coventry Landfill came to be located for both Woodard & Curran and RIDEM in order to perform the RI/FS. Attached is an Access Agreement for your review. The State has informed the Coventry Landfill Group that it expects the RI/FS to commence in the second week of November 2005. Therefore, we would appreciate your response as soon as possible since the environmental investigation cannot begin until you grant access to the property on which the work is to occur.

If you have any questions, please call Brian Wagner, the RIDEM attorney on this matter, at 401-222-6607 or me at 757-259-3855.

Sincerely,

David Graham

David B. Graham, on behalf of
Coventry Landfill Group

DBG/jsc
cc: Brian Wagner

6081576

**ACCESS AGREEMENT**

This Access Agreement is made as of _______________ by and between Woodard & Curran ("W&C") and Mr. Nicholas E. Cambio, on behalf of Universal Properties Group, Inc., Commerce Park Realty, LLC and himself (the three entities are hereinafter referred to as "Owner").

WHEREAS, W&C is coordinating an investigation of environmental conditions in and around the Coventry Landfill site;

WHEREAS, this remedial investigation is being conducted in accordance with the terms of the attached Partial Consent Decree entered by the U.S. District Court of Rhode Island on October 13, 2005 in State of Rhode Island by and through the Rhode Island Department of Environmental Management vs. Town of Coventry, RI, et al., C.A. No. 05-346ML ("Consent Decree");

WHEREAS, as part of the investigation of site conditions, it may be necessary for W&C to conduct surveying activities, perform test pit and geoprobe investigations, install monitoring wells and collect environmental samples on the former Coventry Landfill and property of Owner immediately adjacent thereto on which landfill waste came to be located (hereinafter the "Property");

NOW THEREFORE, W&C and Owner hereby agree as follows:

1. Work to be Performed. The work to be performed (hereinafter the "Work") could include the installation of one or more groundwater and soil gas monitoring wells on the Property; activities associated with this construction, including surveying and layout for the installation of the well(s); the collection of soil, air, soil gas, surface water and/or sediment samples and analysis of the same as set forth in the Work Plan appended to the Consent Decree; the subsequent monitoring of the new well(s); performing test pit excavations and geoprobe investigations; conducting topographic and property line survey; and temporary storage of equipment and supplies on the former Coventry Landfill portion of the Property.

2. Data and Reports. All data and reports that are generated from the remedial investigation conducted on the Property that are submitted to the State will be provided to Owner.

3. Access by W&C. Owner hereby grants access to W&C, its authorized agents and employees, and other authorized contractors to enter upon the Property for the purpose of conducting the Work.

4. Access by the State. Owner hereby grants access to officers, employees, contractors, agents, and other authorized representatives of the State to enter upon the Property for the purpose of monitoring the Work, verifying any data or information obtained by W&C, its authorized agents or employees, or other authorized contractors, obtaining samples, assessing the

need for and conducting additional response actions on the Property, and assessing compliance with the Consent Decree.

5. Mutual Cooperation. All entrances by officers, employees, contractors, agents, and other authorized representative of the State, and by W&C, its authorized agents and employees, and other authorized contractors upon the Property shall occur in a reasonable time and manner to minimize any inconvenience to or interruption of the normal use and enjoyment of the Property. Owner agrees to cooperate with W&C and other authorized contractors in the scheduling and performance of the activities.

6. Compliance with Applicable Requirements. W&C, its authorized agents and employees, and other authorized contractors shall comply with all applicable federal, state, or local laws, regulations, and standards in conducting the Work and in managing and disposing of any waste materials generated by W&C in the conduct of the Remedial Investigation/Feasibility Study ("RI/FS") at the Property.

7. Completion of Work. Upon completion of the Work, W&C or other authorized contractors shall ensure that any areas of the Property that are affected by the Work are restored to the condition in which they were found prior to the initiation of said Work.

8. Indemnity. W&C agrees to defend, indemnify, and hold harmless Owner from any claims, losses, lawsuits, damages, costs, and expenses arising from any negligent acts or omissions of W&C, its authorized agents, subcontractors or employees in the performance of the Work.

9. Termination. This Agreement shall expire at the completion and approval of the RI/FS by the State.

IN WITNESS WHEREOF, W&C and Owner have executed this Agreement on the dates set forth below.

| WOODARD & CURRAN | OWNER |
|---|---|
| By ______________________ | By ______________________ |
| Project Coordinator | Nicholas E. Cambio |
| Date: ______________________ | Date: ______________________ |

6081907\3