**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF RHODE ISLAND, by and through the RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF COVENTRY, et. al,<br><br>Defendants. | C.A. 05-346T-LDA |

**THE TOWN OF COVENTRY'S OBJECTION**
**TO MOTION TO DISQUALIFY ATTORNEYS**

The Town of Coventry, Rhode Island ("Coventry") hereby objects to the Motion of Cross-Claim Plaintiffs Commerce Park Realty, LLC and Commerce Park Associates 9, LLC to Disqualify Attorneys. The facts and arguments upon which Coventry's objection is based are set forth in the accompanying memorandum, the affidavits of Peter Lawson Kennedy, Reynolds F. Lake and Todd D. White and the declaration of Edward L. Maggiacomo.

Dated: Providence, Rhode Island
January 16, 2007

TOWN OF COVENTRY
By its Attorneys,

/s/ Geoffrey W. Millsom
Mark O. Denehy (#3492)
Elizabeth McDonough Noonan (#4226)
Geoffrey W. Millsom (#6483)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200; Fax: (401) 751-0604

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF RHODE ISLAND, by and through the RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Plaintiff, | |
| v. | |
| TOWN OF COVENTRY, et. al, Defendants. | C.A. 05-346T-LDA |

**MEMORANDUM IN SUPPORT OF THE TOWN OF**
**COVENTRY'S OBJECTION TO MOTION TO DISQUALIFY ATTORNEYS**

The Town of Coventry, Rhode Island ("Coventry") submits this memorandum in support of its Objection To Cross-Claim Plaintiffs' Commerce Park Realty, LLC ("CPR") and Commerce Park Associates 9, LLC ("CPA9") Motion To Disqualify Attorneys.

## INTRODUCTION

The Motion To Disqualify Attorneys filed by CPR and CPA9 presents a potpourri of irrelevant facts and immaterial law and is without merit. As set forth below, there are a number of fundamental deficiencies in the movants' factual recitation and legal reasoning, any one of which alone is sufficient to deny the motion.

First, CPR and CPA9 are not now and have never been clients of Adler Pollock & Sheehan P.C. ("AP&S"). Second, CPR and CPA9 are legal entities, separate and distinct from their owners, managers, incorporators and corporate affiliates. Consequently, even if AP&S has in the past represented other persons or entities that may somehow be related to CPR and CPA9, these prior representations are not germane for conflict of interest purposes and could not be so

unless CPR and CPA9 are alter egos of past or present AP&S' clients – a showing they have not attempted to make, nor could they make. Third, there is no substantial relationship between this case and any other matter in which AP&S previously was involved; and AP&S does not have confidential information obtained from a past representation of another client that could be misused in this case. Fourth, CPR's and CPA9's motives in bringing this motion are called into question as they have significantly delayed moving for disqualification and CPR did not object to AP&S's representation of parties adverse to it in other litigation matters. Consequently, CPR and CPA9 have waived any right they might otherwise have had to object to AP&S's representation of Coventry in this case.

Ultimately, these factual and legal deficiencies, combined with the movants' questionable timing and their failure to even attempt seriously to carry their burden on such a motion, show that the disqualification motion is nothing more than an attempt to harass and distract Coventry and its counsel apparently to provide CPR and CPA9 with an improper tactical advantage in this case. CPR and CPA9 should not be so rewarded.

## FACTUAL BACKGROUND

### A. AP&S's Past Representation Of Nicholas Cambio, Universal Properties Group And Roney Malafronte

Prior to February 2001, Nicholas E. Cambio, Vincent A. Cambio, Universal Properties Group ("UPG") and the late Roney Malafronte were clients of Adler Pollock & Sheehan ("AP&S"). Affidavit of Reynolds F. Lake ("Lake Aff."), ¶ 2, attached as Exhibit 1; Declaration of Edward L. Maggiacomo ("Maggiacomo Dec."), ¶¶ 2-3, attached as Exhibit 2. For many years, AP&S assisted the Cambios, Mr. Malafronte and UPG on numerous matters involving varied scopes of work. Maggiacomo Dec., ¶ 2. In early 2001, a dispute arose between AP&S and the Cambios, Mr. Malafronte and UPG that ultimately resulted in the permanent cessation of

AP&S's legal representation of those persons and entities. Maggiacomo Dec., ¶ 8. Although AP&S withdrew from any active representation in the few pending litigation cases for these former clients in February 2001, there were some very limited "clean-up" activities on limited transactional matters (including certain required annual filings and registered agent registration notices) that occurred after February 2001. Lake Aff., ¶ 3; Maggiacomo Dec., ¶ 8. The last known time entered into the AP&S billing system on a matter involving any of these former clients was in conjunction with an annual tax filing on November 12, 2001. Lake Aff., ¶ 3.

AP&S never represented CPR or CPA9. Maggiacomo Dec., ¶ 6. AP&S did not form either CPR or CPA9 and AP&S has never performed any services on behalf of either entity. Maggiacomo Dec., ¶ 6. AP&S did not draft, review, negotiate or otherwise have any involvement with the Net Ground Lease that is the subject of CPR's and CPA9's cross-claims against Coventry in this case. Maggiacomo Dec., ¶ 7.

**B. Other AP&S Representations Adverse To Nicholas E. Cambio, Universal Properties Group And CPR**

On or about June 6, 2005, CPR – one of the cross-claim plaintiffs in this case – brought suit in the Rhode Island Superior Court for Kent County against various parties including Kent County Water Authority ("KCWA") and its Director, Frances J. Perry, seeking monetary damages and an order compelling KCWA to take certain action. Affidavit of Todd D. While ("White Aff."), ¶ 2, attached as Exhibit 3. AP&S was retained to represent Mr. Perry in that dispute and AP&S lawyers attended Coventry Town Council meetings, participated in chambers conferences with Judge Thompson and had significant discussions and negotiations with other counsel, including counsel for CPR. White Aff., ¶ 3-4. CPR never raised an issue of a purported conflict of interest or requested that AP&S withdraw in its representation of Mr. Perry. White Aff., ¶ 5. This matter was ultimately dismissed voluntarily by the CPR. White Aff., ¶ 6.

On August 30, 2006, AP&S filed a Complaint in Rhode Island Superior Court against Mr. Cambio and UPG on behalf of Edward Rowse Architects, Inc. Affidavit of Peter Lawson Kennedy ("Kennedy Aff.") Aff., ¶ 3, attached as Exhibit 4. That Complaint was docketed as 06-4555. Rago Aff., ¶ 3. Mr. Cambio and UPG answered on September 15, 2006 and the case is progressing through discovery. Rago Aff., ¶ 4-5. Neither defendant in that case has raised the issue of a purported conflict of interest or moved to disqualify AP&S. Rago Aff., ¶ 6.

**C. <u>AP&S'S Representation Of Coventry In This Litigation</u>**

AP&S entered its appearance in this case on or about May 24, 2006. On September 27, 2006, Coventry, through AP&S, served written discovery requests upon CPR and CPA9 along with Rule 30(b)(6) deposition notices of those entities and a fact deposition notice of Nicholas E. Cambio. CPR and CPA9 failed to timely respond to that discovery or to produce witnesses for their depositions and sought an extension of time on the grounds that their litigation counsel had withdrawn due to non-payment of fees. When CPR and CPA9 subsequently responded to discovery, Coventry was unsatisfied with the deficient responses it received and so informed CPR and CPA9 by letter written pursuant to Rule 37 of the Federal Rules of Civil Procedure. Coventry ultimately was forced to file a motion to compel full and adequate discovery. CPR and CPA9 never objected to the motion to compel and on December 8, 2006, this Court entered an order requiring them to comply with discovery. However, compliance still has not occurred.

On November 8, 2006, Coventry moved to dismiss Count V of the Cross-claim asserted by CPR and CPA9. CPR and CPA9 also failed to respond to the motion to dismiss and it was granted. In the interim, discovery closed on December 1, 2006 without CPR or CPA9 having served a single written discovery request or noticing any depositions. Coventry subsequently moved to amend its answer to assert, *inter alia*, additional defenses. In opposing this motion,

CPR and CPA9 argued that Coventry's motion was brought in bad faith, requesting sanctions. On January 3, 2007 the Court granted Coventry's motion to amend its answer and on January 4, 2007, the amended answer was filed.

**ARGUMENT**

As the Rhode Island Supreme Court Rules of Professional Conduct[1] expressly recognize, objections to an opposing party's counsel on conflict of interest grounds are inherently suspect and often misused for illegitimate purposes. *See* Commentary to Sup. Ct. R. Prof. Conduct 1.9 & 1.7 ("Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment."). Potentially disqualifying issues often are raised in litigation for strategic purposes or solely in order to provide one party with an "undue tactical advantage." *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1118-19 (D.N.J. 1993) (collecting authority); *see also Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985). ("We share the Court of Appeals' concern about 'tactical use of disqualification motions' to harass opposing counsel."). For this and other reasons, motions to disqualify opposing counsel are disfavored and the movant is subjected to a heightened burden of proof. *Fregeau v. Deo*, No. C.C. PC03-4179, 2005 WL 1837011, at *3 R.I. Super. Aug. 2, 2005) ("[M]otions to disqualify are generally disfavored because they separate a client from a chosen attorney, inevitably cause delay, and are often made only for tactical reasons. Most jurisdictions, therefore place a high burden of proof on a party who moves to disqualify counsel."); *Gray v. Rhode Island Dept. of Children, Youth and Families*, 937 F. Supp. 153, 156 (D.R.I. 1996) ("It is also necessary that the court remain skeptical of disqualification motions because of the increasingly strategic manner in which they are used.").

[1] Local Rule 208 adopts the Rhode Island Supreme Court Rule of Professional Conduct in this district.

## I. THERE IS NO CONFLICT OF INTEREST

The first step in determining whether a situation requires attorney disqualification on conflict of interest grounds requires the Court to establish the existence of an attorney-client relationship. *Angeloff v. Noranda, Inc.*, 936 F. Supp. 72, 75 (D.R.I. 1996). AP&S presently does not represent either CPR or CPA9, has never represented either entity in the past and CPR and CPA9 do not contend otherwise. Instead, they assert – without explanation – that a conflict of interest exists because AP&S previously represented other entities or persons, including the Cambios, Mr. Malafronte and UPG. However, there is no general ethical or legal prohibition that prevents a lawyer from accepting a representation adverse to a party that it has never represented.[2]

Nor is there any basis to attribute AP&S's prior representation of the Cambios, Mr. Malafronte and UPG to CPR and CPA9 for conflict of interest purposes. First, CPR and CPA9 have failed to explain the relationship between and among CPR, CPA9 and the Cambios, Mr. Malafronte and UPG, much less to carry their burden of presenting evidence of such relationship. Under Rhode Island law, corporations and other legal entities (including limited liability companies such as CPR and CPA9) are considered legal "persons" with rights, obligations and other legal significance that is distinct from their members, affiliates, owners, managers, officers and employees. *Doe v. Gelineau*, 732 A.2d 43, 44 (R.I. 1999). In fact the Supreme Court Rules of Professional Conduct clearly distinguishes legal representation of a legal entity from

---

[2] Presumably in an effort to establish that AP&S has somehow recognized that a conflict of interest exists in this case, CPR and CPA9 describe a situation in which AP&S sought and obtained a written conflict waiver from Nicholas E. Cambio and UPG in order to represent A. Cardi Realty Associates ("Cardi") in connection with a sale of real estate from Cardi to UPG. What CPR and CPA9 neglect to mention, however, is that at the time the written waiver was requested and received (1997), Mr. Cambio and UPG were *present* clients of AP&S. This does not show there is a conflict in AP&S's representation of Coventry, or that AP&S in any way acknowledges the existence of a conflict in the instant case, but rather that, when faced with an actual conflict of interest in *another* matter, AP&S acted appropriately.

representation of its "officers, directors, employees, shareholders and other constituents." *See* Sup. Ct. R. of Prof. Conduct 1.13. In order for AP&S' past representation of the Cambios, Mr. Malafronte and UPG to potentially give rise to a conflict of interest in this case, at a minimum, this Court would have to disregard the legal distinctions between those separate legal "persons" and CPR and CPA9 and pierce the so-called "corporate veil," making each alter egos of one another. This is not a task to be undertaken lightly, particularly where CPR and CPA9 do not advocate such a process and result and in the absence of any evidence that might justify such an extreme measure. *Gelineau*, 732 A.2d at 44 ("When it comes to piercing corporate veils, courts are loath to act like Vlad the Impaler. Indeed, the stakes are too high for courts regularly to disregard the separate legal status of corporations.").

## II. THE RHODE ISLAND RULES OF PROFESSIONAL CONDUCT DO NOT REQUIRE DISQUALIFICATION OF AP&S

Rule 1.9 is the Rule of Professional Conduct that addresses conflicts of interest with respect to former clients of a lawyer or law firm.[3] It provides:

> **Rule 1.9. Conflict of interest: Former client.** A lawyer who has formerly represented a client in a matter shall not thereafter:
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client consents after consultation; or
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

[3] The motion to disqualify appears to suggest that disqualification is warranted under Rule 1.7 of the Rhode Island Supreme Court Rules of Professional Conduct, which prohibits a lawyer from accepting representations that would be adverse to *present* clients. However, it does not appear that movants are suggesting that CPR, CPA9, the Cambios, Mr. Malafronte or UPG are present clients of AP&S. As stated infra, none of these persons or entities is a present AP&S client and CPR and CPA9 have never been clients. Lake Aff., ¶ 2; Maggiacomo Dec., ¶ 6. In correspondence exchanged prior to the filing of the Motion to Disqualify, AP&S informed counsel for CPR and CPA9 that he was proceeding under the wrong Rule of Professional Conduct. A copy of the letter is attached as Exhibit 5. CPR and CPA9 apparently have chosen to ignore this information and instead have quoted from and cite to an inapplicable Rule in their motion.

Like the Rhode Island state courts, this Court employs the "substantially related" test to determine whether an alleged conflict of interest violates the strictures of Rule 1.9. *See Angeloff*, 936 F. Supp. at 75. *Jacobs v. Eastern Wire Prods. Co.*, No. Civ. A PB-03-1402, 2003 WL 21297120, at * 2 (R.I. Super. May 7, 2003). "[T]he test for determining whether matters are substantially related has been honed in its practical application to grant disqualification only upon a showing that the relationship between the issues in the prior and the present cases is 'patently clear' or when the issues are 'identical' or 'essentially the same.'" *Jacobs*, WL 21297120, at * 2. According to the First Circuit, the essential inquiry of this test is: "could the attorney have obtained confidential information in the first suit that would have been relevant to the second?" *Borges v. Our Lady of the Sea Corp.*, 935 F.2d 436, 439-40 (1st Cir. 1991).

CPR and CPA9 have failed to articulate – much less to proffer evidence tending to show – how this matter is "substantially related" to any past representation by AP&S of any person or entity. That is because there is no substantial relationship. The dispute between CPR and CPA9 and Coventry in this case concerns the parties' respective rights and obligations under a Net Ground Lease for the real estate that formerly housed the Coventry Town Landfill. AP&S did not form CPR or CPA9, did not draft, negotiate or review the Net Ground Lease and did not advise Mr. Cambio, Mr. Malafronte or UPG with respect to the Net Ground Lease or plans to develop the former Coventry Town Landfill site. Consequently, AP&S did not obtain confidential information, nor does it have information that could be used to disadvantage CPR or CPA9 in this litigation.

## III. CPR AND CPA9 HAVE WAIVED ANY RIGHT TO OBJECT TO AP&S'S REPRESENTATION OF COVENTRY

"Waiver is a valid basis for the denial of a motion to disqualify." *Commonwealth Ins. Co. v. Graphix Hot Line, Inc*; 808 F. Supp. 1200, 1208 (E.D. Pa. 1992); *Alexander,* 822 F. Supp. at 1114. One court explained:

> Such a finding is justified either when a former client expressly agrees to the attorney's representation of an adversary ... or when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when he had the opportunity. In the latter circumstance, the person whose confidences and secrets are at risk of disclosure or misuse is held to have waived his right to protection from that risk.

*INA Underwriters Ins. Co. v. Nalibotsky,* 594 F. Supp. 1199, 1204 (E.D. Pa. 1984). The vast majority of cases finding waiver in the disqualification for conflict of interest context involve only the moving party's delay in the case at issue – as opposed to its failure to object to opposing counsel's adverse representation in prior matters. *See, e.g., Alexander*, 822 F. Supp. at 1114. In the relatively rare circumstance – such as this case – involving movants that have failed to object to a law firm's prior adverse representations, courts generally do not hesitate to find waiver on that basis alone. *Javorski v. Nationwide Mut. Ins. Co.,* C.A. No. 3:06-CV-1071, 2006 WL 3242112, at *8 (M.D. Pa. Nov. 6, 2006) ("Here, Defendant does not dispute that [opposing counsel] has handled numerous UM/UIM claims against it, including the underlying claim in this case, and never before sought disqualification. We find these facts alone constitute waiver.").

The timing of CPR's and CPA9's motion to disqualify strongly suggests that the motion is a deliberate and strategic ploy to gain a tactical advantage in this litigation. CPR and CPA9 failed to respond to two motions filed by Coventry (a motion to dismiss and a motion to compel), have provided only minimal and thoroughly deficient discovery in response to Coventry's requests, waived their own rights to take discovery within the time period originally set by the

Court, and have waited until after the originally time set for discovery closure to file this motion, even though they have been aware of the "facts" that supposedly underlie the motion since the outset of the case. The failure to object to other adverse representations by AP&S in the Superior Court cases of *Commerce Park Realty, LLC v. Kent County Water Authority, et al.*, C.A. No. KC05-0494 and *Edward Rowse Architects, Inc. v. Universal Properties Group, Inc. et al*, C.A. No. 06-4555 reinforces the point that they have in the past, consistently and knowingly elected not to exercise their purported "right" to object to AP&S's adverse representation. The motion to disqualify also makes no mention of any alleged confidential information in the possession of AP&S that could potentially be misused or improperly disclosed in this litigation. Consequently, even if there would have been a basis for CPR and CPA9 to have brought a timely motion to disqualify (which there was not), CPR's and CPA9's conduct in failing to make a timely motion makes this a classic waiver case.

## CONCLUSION

For all the foregoing reasons, Coventry respectfully requests that the Motion to Disqualify Attorneys be denied.

Dated: Providence, Rhode Island
January 16, 2007

TOWN OF COVENTRY
By its Attorneys,

/s/ Geoffrey W. Millsom
Mark O. Denehy (#3492)
Elizabeth McDonough Noonan (#4226)
Geoffrey W. Millsom (#6483)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200; Fax: (401) 751-0604

# CERTIFICATE OF SERVICE

I hereby certify that I filed the within The Town Of Coventry's Objection To Motion To Disqualify Attorneys and supporting Memorandum of Law through the ECF system on the 16th day of January, 2007, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for Case No. 05-346T-LDA and was sent by regular mail to the following counsel of record:

| | |
|---|---|
| Patrick J. Sullivan<br>Law Offices of Patrick J. Sullivan, Esq.<br>505 Tiogue Ave.<br>Suite B<br>Coventry, RI 02816 | Scott L. Hammer<br>Blasbalg & Hammer<br>128 Dorrance St., Suite 350<br>Providence, RI 02903 |

/s/ Geoffrey W. Millsom

*403557_1.doc*