**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| STATE OF RHODE ISLAND, by and through the RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Plaintiff, | : | |
| vs. | : | C.A. No. 05-346T-LDA |
| TOWN OF COVENTRY, et al., Defendants. | : | |

**DEFENDANTS COMMERCE PARK REALTY, LLC**
**AND COMMERCE PARK ASSOCIATES 9, LLC'S**
**MOTION FOR MODIFICATION OF SCHEDULING ORDER**

Defendants Commerce Park Realty, LLC and Commerce Park Associates 9, LLC (the "Commerce Parties"), pursuant to Fed. R. Civ. P. 16(b), respectfully request that this Honorable Court modify the Scheduling Order in this matter by limiting its scope to the issue of the liability of the Defendant Town of Coventry (the "Town") under the indemnification provision of the Net Ground Lease that is the subject of one of the Commerce Parties' four (4) cross-claims against the Town. In support thereof and as grounds therefore, the Commerce Parties rely upon their Memorandum in Support thereof, as well as the arguments made at the Hearing on this matter.

WHEREFORE, the Commerce Parties respectfully request that this Honorable Court:

1. Modify the Scheduling Order so that it is limited to the sole issue of the Town's liability under the indemnification provision of the Net Ground Lease;

2. Enter an Order staying the issue of damages until such time as the same may be ascertained; and

3. Grant such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,
Defendants,
Commerce Park Realty, LLC and
Commerce Park Associates 9, LLC,
By their Attorneys,

/s/ Brian LaPlante

Brian LaPlante, Esq./#5861
Philip J. Laffey, Esq./#7292
LaPlante Sowa Goldman
67 Cedar Street
Providence, RI 02903
TEL: (401) 273-0200
FAX: (401) 273-0250

**CERTIFICATION**

Gregory L. Benik, Esquire
Nixon Peabody, LLP
One Citizens Plaza
Providence, RI 02903

David B. Graham, Esquire
Kaufman & Canoles, P.C.
4801 Courthouse Street, Suite 300
Post Office Box 6000
Williamsburg, Virginia 23188

Scott L. Hammer, Esquire
Hodosh Lyon & Hammer, Ltd.
1023 Post Road
Warwick, RI 02888

Mark O. Denehy, Esquire
Geoffrey W. Millsom, Esquire
Elizabeth McDonough Noonan, Esq.
Adler Pollock & Sheehan
One Citizens Plaza, 8th Floor
Providence, RI 02903

Anthony F. Muri, Esquire
Goldenberg & Muri LLP
10 Weybosset Street
Providence, RI 02903

Brian A. Wagner, Esquire
RI DEM
Office of Legal Services
235 Promenade Street
Providence, RI 02908

Patrick J. Sullivan, Esquire
Law Offices of Patrick J. Sullivan, Esquire
505 Tiogue Avenue, Suite B
Coventry, RI 02816

Michael A. DeSisto, Esquire
DeSisto Law
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563

I hereby certify that on this 13th day of April 2007, I caused a true and accurate copy of the within document to be sent via electronic means through the CM/EFC system of the United States District Court to the above-listed attorneys.

/s/ Brian LaPlante

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF RHODE ISLAND, by and through the RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Plaintiff, | |
| vs. | C.A. No. 05-346T-LDA |
| TOWN OF COVENTRY, et al., Defendants. | |

**DEFENDANTS COMMERCE PARK REALTY, LLC AND COMMERCE PARK ASSOCIATES 9, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR MODIFICATION OF SCHEDULING ORDER**

## Introduction

Defendants Commerce Park Realty, LLC ("CPR") and Commerce Park Associates 9, LLC ("CPA/9," and, together with CPR, the "Commerce Parties"), pursuant to Fed. R. Civ. P. 16(b), respectfully request that this Court modify the Scheduling Order in this matter by limiting its scope to the issue of the liability of Defendant Town of Coventry (the "Town") under the indemnification provision of the Net Ground Lease that is the subject of one of the Commerce Parties' four cross-claims against the Town. In support thereof and as grounds therefore, the Commerce Parties rely upon the following.

## Relevant Factual and Procedural Background[1]

The present action was instituted by the State of Rhode Island, by and through the Rhode Island Department of Environmental Management ("RIDEM"), in or about April 2005, against

[1] In addition to the factual and procedural background set forth herein, the Commerce Parties also rely upon the detailed facts set forth in their *Memorandum of Law in Support of Opposition to Defendant Town of Coventry's Motion to Preclude Use of Undisclosed Evidence, to Dismiss, for an Award of Costs, and For an Extension of Scheduling Order Deadline* (Document 69), as well as the Commerce Parties' *Memorandum In Support of Motion For Severance* and *Objection to the Honorable Magistrate Judge Almond's Report and Recommendation*, filed contemporaneously with the within Motion, as well as all defined and capitalized terms included therein..

the Defendant Town of Coventry (the "Town") and numerous other parties under several federal and state environmental laws, including the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601, *et seq*. ("CERCLA"), with respect to the presence of hazardous materials on the site of the former Town of Coventry landfill (the "Landfill Property"). Thereafter, RIDEM added the Commerce Parties as parties to the action, by virtue of those entities' positions as owner of the property adjacent to the Landfill Property (the "Adjacent Property") and lessee of the Landfill Property, respectfully.

The Commerce Parties thereafter filed cross-claims against the other defendants in this action for statutory contribution under CERCLA. In addition, and more pertinent to the matter presently before the Court, the Commerce Parties filed three additional cross-claims against the Town under the Net Ground Lease entered into between CPA/9 and the Town for the Landfill Property (the "Lease"), including claims for breach of warranty and misrepresentation, as well as indemnification based upon the fact that the Lease requires that the Town indemnify the Commerce Parties for any and all costs and damages incurred as the result of the presence of hazardous materials on the Landfill Property or the Adjacent Property.[2]

This Honorable Court entered a Scheduling Order on or about August 24, 2006 (the "Scheduling Order") with respect to discovery on the sole and limited issue contained in Count I of the Commerce Parties' cross-claim, the issue of the Town's indemnification obligations under the Lease. The Scheduling Order was limited to "[d]iscovery with respect to the issue of indemnification between [the Town] and [the Commerce Parties]." <u>All</u> of the remaining issues in the action, including the Commerce Parties' cross-claims against the Town for breach of

---

[2] The Commerce Parties filed these additional cross-claims against the Town under the Lease in an abundance of caution, effectively as a defensive measure, and despite the fact that the Commerce Parties had substantially identical claims pending against the Town in a Superior Court Civil Action, KC 02-303, filed in or about March 2002 (the "State Case"), which claims involve the hazardous condition of the Adjacent Property as well as the Landfill Property. (<u>See</u> <u>Exhibit</u> <u>1</u>.)

warranty and misrepresentation (inherently including the associated damages), are being held in abeyance pending the results of the lengthy and complex remedial investigation of the hazardous condition of the Landfill Property and Abutting Property. Pursuant to the Scheduling Order, discovery was set to close on December 1, 2006, with respect to the limited issue of the Town's Lease indemnification obligations.

On or about September 27, 2006, the Town propounded perfunctory discovery upon the Commerce Parties in the form of a First Request for Production of Documents, First Set of Interrogatories, and three notices of deposition (the "Discovery Requests"). Thereafter, on or about November 1, 2006, the Commerce Parties served their timely responses to the Discovery Requests. On December 8, 2006, the Commerce Parties provided supplemental responses to the Discovery Requests. On December 8, 2006, this Honorable Court entered an Order granting the Town's motion to compel discovery and extending the discovery deadline, in response to the Town's disapproval of the Commerce Parties' responses to certain Discovery Requests concerning the issue of the damages suffered by the Commerce Parties as a result of the hazardous condition of the Landfill Property and the Adjacent Property, which damages would be due and payable by the Town should it be held responsible under the indemnification provision of the Lease.

Thereafter, on January 16, 2007, despite the fact that Magistrate Judge Almond issued a Discovery Management Order on December 28, 2007, wherein he denied the Town's request for a conference concerning discovery and instead directed the parties to work together in good faith as contemplated by Fed. R. Civ. P. 37, the Town filed its *Motion to Preclude Use of Undisclosed Evidence, to Dismiss, for an Award of Costs, and an Extension of Scheduling Order Deadlines* (Document 64). In its *Motion*, the Town has again taken issue with the Commerce Parties'

perceived incomplete responses to the Discovery Requests as they relate to the issue of damages under the indemnification provision of the Lease. The matter was referred to Magistrate Judge Almond on March 15, 2007, for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and LR Cv 72. Magistrate Judge Almond heard arguments on the Motion on April 2, 2007, and issued his Report and Recommendation with respect to the same on April 4, 2007.

In his Report and Recommendation, Magistrate Judge Almond concluded that the Commerce Parties violated this Court's December 8, 2007 Order, and recommended that, among other things, "the District Court preclude the [Commerce Parties] from presenting expert witnesses," and " the District Court not extend the discovery closure deadline." The Commerce Parties have filed their specific objections to the Report and Recommendation of Magistrate Judge Almond, and, in connection therewith, are herein respectfully seeking a modification of the Scheduling Order so that it may meet the practical requirements of this particular case, and effectively promote judicial management with the participation and cooperation of counsel and the parties to achieve a swift, inexpensive, and just resolution of this action, pursuant to Fed. R. Civ. P. 16.

## Argument

### I. The Court has broad discretion to modify a scheduling order upon the showing of "good cause."

Pursuant to Fed. R. Civ. P. 16(a), Courts issue scheduling orders with respect to the conducting of discovery and other related matters in a case for several reasons, including: (1) expediting the disposition of the action, (2) establishing early and continuing control so that the case will not be protracted because of lack of management, (3) discouraging wasteful pretrial activities, (4) improving the quality of the trial through more thorough preparation, and

(5) facilitating the settlement of the case. The scheduling order controls the subsequent course of the action unless modified by the court. Fed. R. Civ. P. 16(e).

Scheduling Orders entered before the final pretrial conference may be modified upon a showing of "good cause" and by leave of the district judge or magistrate judge. Fed. R. Civ. P. 16(b). "Good cause" means that the schedule cannot reasonably be met despite the moving party's diligence. Fed. R. Civ. P. 16 Advisory Committee Notes, Subdivision (b) (1983 Amendment); see Carnrite v. Granada Hospital Group, Inc., 175 F.R.D. 439, 446 (W.D.N.Y. 1997). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." Johnson v. Mammoth Recreations, 975 F.2d 604, 609 (9th Cir. 1992) (citing Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me. 1985)).

## II. There exists "good cause" to modify the Scheduling Order, as the damages sustained by the Commerce Parties are unascertainable at this time.

### A. The Scheduling Order could not have contemplated expediting the issue of damages.

The Scheduling Order, under which this Honorable Court is operating with respect to the stringent time restraints concerning discovery in this matter, is limited to "[d]iscovery with respect to the issue of indemnification between [the Town] and [the Commerce Parties]." Based upon (1) this Court's December 8, 2006, Order concerning the Town's Motion to Compel, and (2) Magistrate Judge Almond's April 4, 2007, Report and Recommendation concerning the Town's Motion to Preclude, it appears that the Court is presuming that "the issue of indemnification between [the Town] and [the Commerce Parties]" also includes the narrow issue of the *damages* to which the Commerce Parties would be entitled should the Town be adjudged responsible under the indemnification provision of the Lease. This conclusion is based upon the

fact that both the December 8, 2006 Order and the April 4, 2007 Report and Recommendation address motions wherein the Town is seeking relief solely with respect to the Commerce Parties' perceived failure to provide documentation concerning the damages that those entities suffered under the indemnification provision of the Lease.

Neither this Court nor the parties to this action could have reasonably believed, however, at the time the Scheduling Order was entered, that the issue of the *damages* suffered by the Commerce Parties as a result of the hazardous condition at the Landfill Property and Adjacent Property was capable of prior determination to the completion of the investigation of the contamination at the Landfill and the Adjacent Property. If the Court and the parties had such a belief, there would have been no need to refrain from issuing a scheduling order with respect to all the remaining issues in the case, including the Commerce Parties' other claims and the parties' CERCLA based cross-claims for contribution. The Commerce Parties do not dispute that the Scheduling Order was reasonably intended to close discovery on the very limited issue of indemnification under the Lease, and agree that the issue of *liability* under the indemnification provision would best be determined in an expedited fashion so as to clarify the relationship between the Town and the Commerce Parties. The Commerce Parties' damages will only be known, at the earliest, however, when the investigation as to the contamination of the Landfill Property and Adjacent Property is complete, and therefore it is impractical and unjust to close discovery on the issue of said damages at this time.

**B. The damages that the Commerce Parties have suffered and will continue to suffer are unascertainable.**

As this Honorable Court is well aware, the environmental investigation as to the status of the hazardous condition and prescribed remediation for the same on the Landfill Property and the Adjacent Property has not yet been completed. In February 2007, Woodard & Curran

("Woodard"), the engineering firm conducting the investigation in conjunction with this action, indicated in its report (the "Report") that the investigation of the contamination is not yet complete and that data gaps do exist. (See Report, at Section 1, Page 2, attached hereto as Exhibit 2.) In its Report, Woodard recommended further site investigation, in order to clarify the nature and scope of the contamination. (See Exhibit 2.) If Woodard and, more importantly, RIDEM, have not yet determined the full extent of the contamination, and have not yet allocated the responsibility for remediation of the contamination, certainly the damages sustained by the Commerce Parties, which will be dictated by this very information, cannot be ascertained at this time.

The Commerce Parties' claims against the Town also concern the damages the Commerce Parties have suffered as a result of contamination of the Landfill Property and Adjacent Property. The totality of these damages inherently depends upon the uses to which the Landfill Property and the Adjacent Property can be put despite the contamination, or, in other words, the value of the Landfill Property and the Adjacent Property. (See Affidavit of Peter M. Scotti, attached hereto as Exhibit 3 at ¶11, 12.) Without a complete and accurate investigation as to the nature and scope of the contamination, and a definitive remediation plan, which has yet to be completed, it is impossible to determine the value of the Landfill Property and the Adjacent Property, and therefore what damages, if any, the Commerce Parties have suffered in that respect. (See Exhibit 3 at ¶11, 12.)

What monies will the Commerce Parties be forced to expend in order to remediate the hazardous condition of the Landfill Property and the Adjacent Property in this CERCLA action? What loss of profit will the Commerce Parties suffer as a result of the final determination as to the hazardous condition of the Landfill Property and the Adjacent Property? What legal fees and

expenses, court costs, and other related expenses will the Commerce Parties be required to expend to defend this action by RIDEM that is related to the hazardous condition of the Landfill Property and the Adjacent Property, the investigation for which is *still ongoing*, as well as to prosecute the cross-claims in this action? Aside from the legal fees and expenses, court costs, and other related expenses that the Commerce Parties have expended to date, evidence of which has been provided to the Town on numerous occasions in relation to this matter and the related State Case, these questions simply cannot be answered at this early stage. It is utterly illogical, and certainly unnecessary, to close discovery on the issue of the Commerce Parties' damages while the contamination investigation, the very vehicle which, upon completion, will provide the information necessary to determine said damages, remains ongoing.

**C. The Commerce Parties cannot produce evidence that does not exist.**

The motions that are the subject of this Court's December 8, 2006 Order, as well as the April 4, 2007 Report and Recommendation of Magistrate Judge Almond, involve demands by the Town for documents and information that not only are not in the Commerce Parties' possession, but they *simply could not exist*. Ending discovery on the issue of the damages that the Commerce Parties have suffered, and will continue to suffer, as a result of the contamination that is the subject of this entire matter, is illogical, impractical, and circumscribes any meaningful trial on the merits, without regard to the ancillary discovery disputes raised by the Town to leverage an unwarranted tactical advantage. Simply put, the Commerce Parties cannot be forced to produce documents or information that could not exist, even if they were to exercise the requisite good faith and diligent efforts to procure the same. It is also important to note in this regard that, as the investigation as to the effect of the contamination is not yet complete, the Town would be prejudiced by being wholly unable to refute any claim of damages by the Commerce Parties.

It is impossible for the Commerce Parties to identify potential experts, and produce expert reports, that speak to the damages suffered by the Commerce Parties due to the effect of the contamination of the Landfill Property and the Adjacent Property, when that effect has not yet been determined. (See Exhibit 3.) Precluding the Commerce Parties from offering expert witnesses or engaging in further discovery with respect to the issue of the damages sustained by the Commerce Parties as a result of the hazardous condition of the Landfill Property and Adjacent Property is impractical, unjust, illogical, and akin to dismissal with respect to the damages portion of the Commerce Parties' contractual claims in this action, as the Commerce Parties *will necessarily be incapable of ascertaining their damages until the investigatory efforts are completed and the remediation plan finalized*.

The Commerce Parties have provided the thousands of pages of documents that they do have in their possession, on more than one occasion, and, even through a difficult fall and winter due to the illness and death of Mr. Malafronte, a Commerce principal, and the withdrawal of prior counsel, have been extraordinarily diligent in attempting to comply fully with the Town's Discovery Requests.

**D. In order to serve justice, the Scheduling Order must be limited to the issue of the Town's *liability* with respect to the indemnification provision of the Lease.**

Cleary, the Scheduling Order concerning the limited issue of the Commerce Parties' contractual indemnification cross-claim could not have reasonably anticipated the closing of discovery with respect to damages as they relate to the Commerce Parties, while the investigation in the underlying matter remains ongoing. Such a mandate would thwart the clear goals of Fed. R. Civ. P. 16, which would be violated should this Court close discovery at this early stage on the issue of damages as they relate to the Town's indemnification of the Commerce Parties under the Lease. The issue of *liability* under the Lease may be ripe for trial at this point,

and the Commerce Parties respectfully request that the Court order that discovery on said matter be completed in accordance with Magistrate Judge Almond's Report and Recommendation, and as contemplated by the Scheduling Order. The adjudication of the contractual dispute is premature with respect to *damages*, however, because the documentation and information the Commerce Parties require are simply unavailable, and therefore good cause certainly exists for the modification of the Scheduling Order to meet the purposes set forth in Fed. R. Civ. P. 16, in particular, improving the quality of the trial through more thorough preparation, as well as potentially facilitating the settlement of the case.

**Conclusion**

For the foregoing reasons, Defendants Commerce Park Realty, LLC and Commerce Park Associates 9, LLC respectfully request that this Honorable Court modify the Scheduling Order so that it is limited to the sole issue of the Town's *liability* under the indemnification provision of the Lease, and that the Court leave open, along with the Commerce Parties' other pending claims, and all parties' CERCLA contribution claims, the issue of damages under the Lease.

Respectfully submitted,
Defendants,
Commerce Park Realty, LLC and
Commerce Park Associates 9, LLC,
By their Attorneys,

/s/ Brian LaPlante

Brian LaPlante, Esq./#5861
Philip J. Laffey, Esq./#7292
LaPlante Sowa Goldman
67 Cedar Street
Providence, RI 02903
TEL: (401) 273-0200
FAX: (401) 273-0250

**CERTIFICATION**

Gregory L. Benik, Esquire
Nixon Peabody, LLP
One Citizens Plaza
Providence, RI 02903

David B. Graham, Esquire
Kaufman & Canoles, P.C.
4801 Courthouse Street, Suite 300
Post Office Box 6000
Williamsburg, Virginia 23188

Scott L. Hammer, Esquire
Hodosh Lyon & Hammer, Ltd.
1023 Post Road
Warwick, RI 02888

Mark O. Denehy, Esquire
Geoffrey W. Millsom, Esquire
Elizabeth McDonough Noonan, Esquire
Adler Pollock & Sheehan
One Citizens Plaza, 8th Floor
Providence, RI 02903

Anthony F. Muri, Esquire
Goldenberg & Muri LLP
10 Weybosset Street
Providence, RI 02903

Brian A. Wagner, Esquire
RI DEM
Office of Legal Services
235 Promenade Street
Providence, RI 02908

Patrick J. Sullivan, Esquire
Law Offices of Patrick J. Sullivan, Esquire
505 Tiogue Avenue, Suite B
Coventry, RI 02816

Michael A. DeSisto, Esquire
DeSisto Law
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563

I hereby certify that on this 13th day of April 2007, I caused a true and accurate copy of the within document to be sent via electronic means through the CM/EFC system of the United States District Court to the above-listed attorneys.

/s/ Brian LaPlante

# EXHIBIT 1

STATE OF RHODE ISLAND
KENT, SC

SUPERIOR COURT

INTERSTATE OPTIONS, LLC, COMMERCE PARK REALTY, LLC, and COMMERCE PARK ASSOCIATES 9, LLC,
Plaintiffs,

v.

C.A. No. KC 02-303

A. CARDI REALTY ASSOCIATES, A. CARDI REALTY CO., INC., ARNOLD ROAD REALTY, LLC, CARDI CORPORATION, ANTONIO B. CARDI, and STEPHEN A. CARDI,
Defendants.

v.

FRANCIS A. FROBEL, in his official Capacity as Acting Treasurer of the Town of Coventry,
Third-Party Defendant.

## FIRST AMENDED COMPLAINT

### Parties

1. Plaintiff Commerce Park Realty, LLC ("Commerce Park Realty") is a limited liability company organized and existing under the laws of the State of Rhode Island, with a principal place of business located at 207 Quaker Lane, West Warwick, Rhode Island.

2. Plaintiff Interstate Options, LLC ("Interstate") is a limited liability company organized and existing under the laws of the State of Rhode Island, with a principal place of business located at 207 Quaker Lane, West Warwick, Rhode Island.

3. Plaintiff Commerce Park Associates 9, LLC ("Commerce Park Associates") is a limited liability company organized and existing under the laws of the State of Rhode Island, with a principal place of business located at 207 Quaker Lane, West Warwick, Rhode Island.

4. Commerce Park Realty, Commerce Park Associates, and Interstate shall be collectively referred to herein as "Plaintiffs."

5. Upon information and belief, Defendant A. Cardi Realty Associates ("A. Cardi") is a Rhode Island general partnership, with a principal place of business located at 400 Lincoln Avenue, Warwick, Rhode Island.

6. Upon information and belief, Defendant A. Cardi Realty Co., Inc. ("A. Cardi Realty Co.") is a Rhode Island business with a principal place of business located at 400 Lincoln Avenue, Warwick, Rhode Island.

7. Upon information and belief, Defendant Arnold Road Realty, LLC ("Arnold Road") is a Rhode Island business with a principal place of business located at 400 Lincoln Avenue, Warwick, Rhode Island.

8. Upon information and belief, Defendant Cardi Corporation ("Cardi Corp.") is a Rhode Island business with a principal place of business located at 400 Lincoln Avenue, Warwick, Rhode Island.

9. Upon information and belief, Defendant Antonio B. Cardi ("Antonio Cardi") is an individual residing at 88 Varnum Drive, East Greenwich, Rhode Island.

10. Upon information and belief, Defendant Stephen A. Cardi ("Stephen Cardi") is an individual residing at 25 Devon Court, East Greenwich, Rhode Island.

11. A. Cardi, A. Cardi Realty Co., Arnold Road, Cardi Corp., Antonio Cardi, and Stephen Cardi shall be collectively referred to herein as "the Cardi Defendants."

12. Upon information and belief, Third-Party Defendant Town of Coventry (the "Town") is a municipal corporation in the State of Rhode Island.

13. Plaintiffs' claims against the Town are brought against the Town by and through its Treasurer/Finance Director, Maryellen Shardlow, pursuant to R.I.G.L. § 45-15-1 et. seq.

14. On or about August 7, 2002, Plaintiffs provided notice to the Town, pursuant to R.I.G.L. § 45-15-5, by certified mail, return receipt requested, of their claims against the Town and its agents. To date, Plaintiffs have received no answer in response to Plaintiffs' claims, and the Town has offered no compensation.

15. Defendants have sufficient minimum contacts with the State of Rhode Island such that they are subject to the jurisdiction of this Honorable Court.

16. The matter in controversy is sufficient to meet the jurisdictional limits of this Court.

## Facts

17. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

18. Commerce Park Realty is in the business of commercial real estate development.

19. Interstate is in the business of commercial real estate development.

20. Commerce Park Associates is in the business of commercial real estate development, purchasing, and sales.

21. Upon information and belief, A. Cardi is in the real estate business.

22. Upon information and belief, A. Cardi Realty Co. is in the real estate business.

23. Upon information and belief, Arnold Road is in the real estate business.

24. Upon information and belief, Cardi Corp. is in the business of construction.

25. Upon information and belief, Antonio Cardi was at all material times hereto an owner, principal, officer, employee, and/or agent of A. Cardi, A. Cardi Realty Co., Cardi Corp., and Arnold Road.

26. Upon information and belief, Stephen Cardi was at all material times hereto an owner, principal, officer, employee, and/or agent of A. Cardi, A. Cardi Realty Co., Cardi Corp., and Arnold Road.

27. Upon information and belief, A. Cardi Realty Co. is the manager of Arnold Road.

28. Upon information and belief, Antonio Cardi and Stephen Cardi are general partners of A. Cardi.

29. On or about December 1, 1997, Interstate and A. Cardi entered into an agreement whereby Interstate acquired an option to purchase property owned by A. Cardi Realty Co. (the "Option Agreement").

30. The aforementioned parcel of property is comprised of approximately thirty-nine (39) acres located in Coventry, Rhode Island (the "Cardi Property").

31. Upon information and belief, from in or about 1954 until in or about 1975, the Cardi Defendants, their predecessors in interest, and/or alter egos, as well as the Town, allowed waste to be dumped at the Cardi Property.

32. During said time period, the Cardi Defendants, their predecessors in interest, and/or alter egos, as well as the Town, concealed, moved, altered, affected, and/or otherwise disposed of waste at the Cardi Property.

33. Despite Defendants' knowledge of the existence of said waste, Defendants misrepresented to Plaintiffs that the Cardi Property was of good quality and condition.

34. The Cardi Defendants failed to deliver a written disclosure to Plaintiffs in compliance with R.I.G.L. § 5-20.8-2, and failed to advise Plaintiffs of the existence of defects at the Property, including the existence of the aforesaid buried waste.

35. In or about January 2000, A. Cardi Realty Co., Inc. transferred the Property to its affiliate and/or alter ego, Arnold Road.

36. Despite reasonable diligence by Plaintiffs prior to the execution of the Option Agreement and prior to the exercise of the Option Agreement, Plaintiffs were unaware of the existence of said buried waste at the Cardi Property.

37. In or about March 2000, Commerce Park Realty purchased the Cardi Property from Arnold Road for Four Million and 00/100 Dollars ($4,000,000.00).

38. Commerce Park Realty's purchase of the Cardi Property was part of an overall development scheme by Plaintiffs and their affiliates regarding the Cardi Property and the surrounding parcels of property.

39. Subsequent to the purchase of the Cardi Property, and after Plaintiffs had expended significant time, resources, and monies concerning the development of the Cardi Property, Plaintiffs discovered the waste buried at the Cardi Property.

40. Due to the existence of the waste buried at the Cardi Property, the Cardi Property is valueless, worth significantly less than the amount paid by Commerce Park Realty for the Cardi Property, in need of clean-up and other restoration, and/or a significant liability.

41. In or about May 1999, Commerce Park Associates entered into a lease agreement with the Town (the "Lease Agreement") with respect to a certain parcel of land (the "Town Property") located adjacent to the Cardi Property.

42. The Town Property constitutes the former Town of Coventry Municipal Landfill.

43. The Lease Agreement included an Environmental Indemnification Clause (the "Indemnification Clause").

44. Pursuant to said Indemnification Clause, the Town covenants and decrees that it will indemnify Commerce Park Associates and its affiliates, including Interstate and Commerce Park Realty (each an "Indemnified Party"), for expenses of any kind arising out of the existence of waste at or emanating from the Town Property.

45. The Town failed to comply with the terms of the Lease Agreement, including, but not limited to, (a) failing to take action to cure and/or eliminate violations concerning environmental legal requirements and/or hazardous materials, (b) failing to prevent and/or remedy the migration of hazardous materials, and (c) failing to indemnify

Plaintiffs for their expenses arising out of the existence of waste and/or hazardous materials.

46. Commerce Park Realty's purchase of the Cardi Property and Commerce Park Associates' lease of the Town Property was part of an overall development scheme by Plaintiffs and their affiliates regarding the Cardi Property, the Town Property, and the surrounding parcels of property, which development was highly encouraged by the Town.

47. The Town made express representations to Plaintiffs (a) concerning the condition of the Cardi Property, including that said parcel was of good quality and condition, and (b) concerning its commitment to fulfilling its obligations under the Lease Agreement and Indemnification Clause.

48. Upon information and belief, there currently exist hazardous materials and other waste at the Town Property and/or the Cardi Property, which Plaintiffs have reason to believe constitute or may reasonably be expected to constitute or contribute to a danger or hazard to public health, safety or welfare, and/or to the environment.

49. The Rhode Island Department of Environmental Management has identified the Cardi Property and the Town Property as containing hazardous materials and other waste, and demanded the necessary and proper cleanup thereof.

50. The Cardi Defendants and the Town have wrongfully refused to take action to remedy the issues with the Cardi Property and the Town Property.

**COUNT I**
**(Fraudulent Misrepresentation and Deceit)**
**Cardi Defendants**

51. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

52. Prior to entering into the Option Agreement, and at all times thereafter, the Cardi Defendants represented to Plaintiffs that the Cardi Property was of good quality and condition.

53. The Cardi Defendants made false representations regarding the condition of the Cardi Property; namely, the Cardi Defendants represented to Plaintiffs that the Cardi Property was of good quality and condition.

54. The Cardi Defendants knew, or should have known, that their representations were false.

55. The Cardi Defendants knew, or should have known, that Plaintiffs would rely upon said representations.

56. The Cardi Defendants intended to deceive Plaintiffs by inducing Plaintiffs to rely upon their false representations in entering into the Option Agreement and in purchasing the Cardi Property.

57. Plaintiffs did in fact rely upon the Cardi Defendants' false representations.

58. Plaintiffs' reliance on the Cardi Defendants' false representations was reasonable under the circumstances.

59. Plaintiffs have suffered, and will continue to suffer, significant losses as a direct and proximate result of the Cardi Defendants' false representations, including, but not limited to, loss of profit.

60. The above-stated egregious misconduct by the Cardi Defendants was of such malice, wantonness, and/or willfulness and of such an extreme nature, which for the good of society and as a warning to individuals ought to be punished by an award of punitive damages to Plaintiffs.

61. The Cardi Defendants' misconduct requires deterrence and punishment over and above that provided by an award of compensatory damages to Plaintiffs.

**COUNT II**
**(Declaratory Relief)**
**The Town**

62. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

63. The Town is aware of the presence and release of waste materials, including hazardous waste, at the Cardi Property and the Town Property.

64. Pursuant to the terms of the Lease Agreement, the Town is required to immediately initiate and complete the necessary and adequate containment and removal of the waste materials at the Cardi Property and the Town Property.

65. Pursuant to the terms of the Lease Agreement, the Town is required to indemnify Plaintiffs for expenses arising out of the existence of hazardous materials and waste at the Cardi Property and the Town Property.

66. The Town has refused to comply with all of the terms of the Lease Agreement.

67. Plaintiffs are entitled to judgment declaring that the Town, pursuant to the Uniform Declaratory Judgment Act, §§ 9-30-1, et seq., of the Rhode Island General Laws

as well as the plain terms of the Lease Agreement, immediately undertake and complete the necessary remediation of the waste materials, including cleanup of all waste located at the Cardi Property, as well as the Town Property.

**COUNT III**
**(Breach of Contract)**
**The Town**

68. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

69. Plaintiffs have complied with R.I.G.L. § 45-15-5.

70. Plaintiffs have at all material times hereto satisfied the terms of the Lease Agreement with the Town.

71. The Town has failed, without justification in law or in fact, to tender performance as required by the Lease Agreement.

72. As a direct and proximate result of the Town's breach of the Lease Agreement, Plaintiffs have suffered and will continue to suffer severe and substantial damages.

**COUNT IV**
**(Fraudulent Misrepresentation and Deceit)**
**The Town**

73. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

74. Prior to Plaintiffs entering into the Option Agreement, and acquiring the Cardi Property, and at all times thereafter, the Town represented to Plaintiffs that the Cardi Property was of good quality and condition.

75. The Town made false representations regarding the condition of the Cardi Property; namely, the Town represented to Plaintiffs that the Cardi Property was of good quality and condition.

76. The Town represented to Plaintiffs that it would comply with the provisions of the Lease Agreement, and/or otherwise remedy all issues related to the existence of waste at the Town Property and surrounding parcels, including the Cardi Property.

77. The Town knew, or should have known, that their representations were false.

78. The Town knew, or should have known, that Plaintiffs would rely upon said representations.

79. The Town intended to deceive Plaintiffs by inducing Plaintiffs to rely upon their false representations in entering into the Option Agreement, purchasing the Cardi Property, improving the Cardi Property, and entering into the Lease Agreement.

80. Plaintiffs did in fact rely upon the Town's false representations.

81. Plaintiffs' reliance on the Town's false representations was reasonable under the circumstances.

82. Plaintiffs have suffered, and will continue to suffer, significant losses as a direct and proximate result of the Town's false representations, including, but not limited to, loss of profit.

**COUNT V**
**(Tortious Interference With Contractual and Prospective Contractual Relations)**
**The Town**

83. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

84. Plaintiffs entered into contractual relationships with third parties, including, but not limited to, financial institutions and contractors, with respect to the financing and development of the Cardi Property and the Town Property.

85. Plaintiffs expected to pursue contractual business relations with third parties with respect to the Cardi Property and the Town Property.

86. The Town knew, or should have known, of Plaintiffs' contractual and prospective contractual business relations.

87. The Town interfered with Plaintiffs' contractual and prospective contractual business relations by, among other things, inducing Plaintiffs to acquire the Cardi Property, and to develop the Cardi Property, as well as the Town Property.

88. The Town's actions were a direct and proximate cause of Plaintiffs' inability to perform their respective duties under the above-mentioned contracts, and Plaintiffs' inability to enter into prospective contractual business relations.

89. As a direct and proximate result of the Town's actions, Plaintiff suffered damages for which the Town's interference is a legal cause.

**COUNT VI**
**(Continuing Trespass)**
**The Town and the Cardi Defendants**

90. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

91. The Town, as owner of the Town Property, was and is under a duty to ensure that all waste, including hazardous waste, is appropriately deposited and contained within the confines of the Town Property boundaries.

92. The Cardi Defendants, as owner of the Cardi Property, were and are under a duty to ensure that all waste, including hazardous waste, is appropriately deposited and contained within the confines of the Town Property boundaries.

93. The Town and the Cardi Defendants caused and/or permitted waste to be deposited at the Cardi Property, and/or to migrate and/or "spill over" from the Town Property onto the Cardi Property.

94. The Town and the Cardi Defendants are responsible for the aforesaid wrongful depositing, migration, and or "spilling over" of waste at the Cardi Property.

95. The Town and the Cardi Defendants have failed to remediate and/or remove the waste at the Cardi Property.

96. The depositing, migration, and/or "spilling over" of waste onto the Cardi Property has interfered with the legal rights of Plaintiffs.

97. As a direct and proximate result of the aforesaid misconduct, Plaintiffs have suffered and will continue to suffer severe and substantial damages.

**<u>COUNT VII</u>**
**(Public Nuisance)**
**<u>The Town and the Cardi Defendants</u>**

98. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

99. The Town, as owner of the Town Property, was and is under a duty to ensure that waste, including hazardous waste, was and is appropriately deposited and/or prevented from migrating beyond the confines of the Town Property boundaries.

100. The Cardi Defendants, as owner of the Cardi Property, were and are under a duty to ensure that the waste is appropriately deposited and contained within the confines of the Town Property boundaries.

101. The Town and the Cardi Defendants have permitted the depositing and migration of waste from the Town Property and the Cardi Property, which has significantly interfered with the public health, safety, peace and comfort of Plaintiffs and other residents of the Town of Coventry.

102. The Town and the Cardi Defendants have unreasonably interfered with a right common to all members of the general public, including Plaintiffs, namely, the right to use and enjoy their respective property, water, and other natural resources.

103. Such conduct by the Town and the Cardi Defendants are of a continuing nature.

104. As a direct and proximate result of the aforesaid conduct, Plaintiffs have suffered and will continue to suffer severe and substantial damages.

**COUNT VIII**
**(Private Nuisance)**
**The Town and the Cardi Defendants**

105. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

106. The Town, as owner of the Town Property, was and is under a duty to ensure that waste, including hazardous waste, is appropriately deposited and contained within the confines of the Town Property boundaries.

107. The Cardi Defendants, as owner of the Cardi Property, were and are under a duty to ensure that the waste is appropriately deposited and contained within the confines of the Town Property boundaries.

108. The Town and the Cardi Defendants caused waste to be deposited and/or to migrate and/or "spill over" from the Town Property onto the Cardi Property.

109. The wrongful depositing, migration, and/or "spilling over" of waste has materially interfered with the ordinary physical comfort and the reasonable use of Plaintiffs' property, including the Cardi Property.

110. The Town and the Cardi Defendants have wrongfully used the Town Property, as well as the Cardi Property, in such a manner as to interfere with the use and enjoyment of Plaintiffs' property, including the Cardi Property.

111. As a direct and proximate result of the Town's and the Cardi Defendants' wrongful use of the Town Property, as well as the Cardi Property, Plaintiffs have suffered and will continue to suffer severe and substantial damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

1. Grant judgment in favor of Plaintiffs and against Defendants on each and every Count contained in Plaintiffs' Complaint;

2. Order the Cardi Defendants and/or the Town immediately to initiate and complete the necessary and proper cleanup of the Cardi Property;

3. Order the Town immediately to initiate and complete the necessary and proper cleanup of the Town Property;

4. Award Plaintiffs their attorney's fees, costs, and interest; and

5. Grant such other relief as this Court deems just and proper.

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY, AND DESIGNATE BRIAN LaPLANTE, ESQ. AS TRIAL COUNSEL.**

Plaintiffs,
By their Attorneys,

[signature]

Brian LaPlante, Esq./#5861
Christopher D. DiSano, Esq./#6783
Carrara LaPlante Dayian & Sowa, L.L.P.
67 Cedar Street, Suite 102
Providence, RI 02903
(401) 421-8884 (telephone)
(401) 421-8885 (facsimile)

DATED: 2/24/04

**CERTIFICATION**

Anthony F. Muri, Esquire
Goldenberg & Muri, LLP
10 Weybosset Street
Providence, RI 02903

Patrick J. Sullivan, Esquire
475 Tiogue Avenue
Coventry, RI 02816

I hereby certify that on this 24th day of February, 2004, I caused a true and accurate copy of the within *First Amended Complaint* to be sent via first-class mail, postage pre-paid, to the above-listed attorneys.

Kelly J. Gaulin

# EXHIBIT 2

1

2

3

4

# SITE INVESTIGATION REPORT
# COVENTRY LANDFILL
# COVENTRY, RHODE ISLAND

## Coventry Landfill Cooperating Parties

**February 2007**

WOODARD & CURRAN
Engineering • Science • Operations

41 Hutchins Drive
Portland, ME 04102
(207) 774-2112

www.woodardcurran.com

# EXECUTIVE SUMMARY

This Site Investigation Report (Report) describes activities conducted at the former Coventry Landfill located on Arnold Road in Coventry, Rhode Island (Site). Site activities completed for this investigation included the following: Test pitting, Geoprobe® soil borings, surface soil sampling, landfill gas sampling point installation and sampling, sediment and surface water sampling, monitoring well installation, and groundwater sampling. The work was completed by Woodard & Curran (W&C) on behalf of the Coventry Landfill Cooperating Parties (Parties) and in accordance with the W&C *Site Investigation Work Plan* (Work Plan), approved by the Rhode Island Department of Environmental Management (RIDEM) in July 2006.

**Natural Setting** – The Site consists of a former 10-acre landfill parcel on Arnold Road in Coventry, Rhode Island. The Site is located on the west side of the road, between 451 and 599 Arnold Road. Regional topography slopes north towards Tiogue Lake. The former landfill parcel is located on a slightly raised plateau where the majority of the landfilling occurred. The surface of the landfill plateau is relatively flat, with a slight downward slope in elevation towards the eastern portion of the Site. The landfill plateau slopes gently downward on the west, east, and south sides but slopes steeply on the north side. The immediate land west and south of the Site is vacant and continuous with the landfill parcel, and was also mined for sand and gravel. Some portion of the mined area was subsequently filled with waste. The groundwater piezometric surface mimics the surface topography and flows north across the Site towards Tiogue Lake, which empties into the Pawtuxet River, which flows east for approximately 17 miles until it empties into the Providence River and Narragansett Bay. The Site overlies a sand and gravel aquifer that is classified as GA. GA groundwater may be suitable for public drinking water without treatment. Groundwater was encountered at the Site during the investigation at depths ranging from approximately 28 feet below ground surface (bgs) to 49 feet bgs.

**Operational History** – The Site functioned as a landfill from approximately 1938 to July of 1975. Waste generated in Coventry and the surrounding area was reportedly brought to the town landfill and possibly included residential, commercial, and industrial waste such as sewage, waste oil, chemical and pharmaceutical wastes, and liquid and solid industrial waste from several drum reconditioning businesses in the area.

**Findings** - Based on the results of the investigation at the Site, the following findings are provided:

Surface Soils - Twenty surface soil samples were collected during this investigation for laboratory analysis. Generally, surface soil samples were collected from between 0.5 feet bgs and two feet bgs. The samples were collected from test pits and Geoprobe® soil samples for the purpose of evaluating the existing landfill cover. Based on these results, surface soils currently covering the landfill do not pose a significant risk to human health.

Groundwater Samples - Seven groundwater monitoring wells were installed around the perimeter of the Site. Based on these results, chlorobenzene, arsenic, beryllium and lead have been detected at concentrations that exceed the drinking water quality standards at the downgradient property boundary and may be migrating off-Site. Public water is available throughout the area; therefore, groundwater is apparently not used as a source of drinking water.

Sediment and Surface Water Samples - Three sediment and surface water samples were collected during the investigation. Based on these results, only arsenic, lead and thallium exceed the RIDEM criteria in sediment and surface water.

Landfill Gas Screening and Laboratory Samples - Twenty landfill gas (LFG) monitoring points were installed around the perimeter of the landfill. In October, 2006, nine points were field screened for percent by volume of methane and other gasses. Not all of the landfill gas points were screened due to the malfunctioning of field equipment caused by inclement weather. Four samples were collected for laboratory analysis. The laboratory results indicate that VOC vapors from the landfill gas do not pose a risk to human health. However, the October 2006 field screening results indicate that methane gas vapors exceed the 25% LEL Ridem criteria around the landfill perimeter.

**Contaminants of Concern (COCs)** - Based on the results of this field investigation, potential COCs have been identified to be as follows:

- Chlorobenzene, arsenic, beryllium, and lead in the groundwater; and
- Arsenic, beryllium, lead, and thallium in the surface soil, sediment, and surface water; and
- Methane gas around the landfill perimeter exceeds the 25% LEL EIDEM criteria.

**Migration Pathways** - The Site geology and hydrogeology affect the subsurface transport of contaminants. The primary potential exposure route is the possibility of ingestion of contaminated groundwater. Based on the current data set, all other potential exposure routes do not appear to pose a significant risk to human health. Potential receptors would be downgradient residential drinking water wells however, the area is served by public water; therefore downgradient drinking water wells are not considered to be a receptor.

**Remaining Data Gaps** - Based on this investigation, data gaps do exist. VOC concentrations exceed both RIDEM and EPA criteria for groundwater.

**Recommendations** - Based on the findings and remaining data gaps identified above, W&C is providing the following recommendations:

1. Investigate further the extent of the downgradient VOC plume.
2. Conduct a survey of downgradient residents to document connection with public water supply.

# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND, by and through the RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Plaintiff, | |
| vs. | C.A. No. 05-346T-LDA |
| TOWN OF COVENTRY, et al., Defendants. | |

**AFFIDAVIT OF PETER M. SCOTTI**

I, Peter M. Scotti, being duly sworn, upon oath, deposes and says as follows:

1. I am the President of Peter M. Scotti and Associates, Inc., a Rhode Island Certified General Licensed Real Estate Appraiser, and I have personal knowledge of the facts set forth in this Affidavit.

2. I founded Peter Scotti & Associates in 1988.

3. I have been engaged in the real estate business for over thirty (30) years.

4. I am a licensed real estate appraiser in Rhode Island and Massachusetts.

5. I have testified as an expert witness in both federal and state courts.

6. I have taught courses in real estate appraisal at the University of Rhode Island.

7. I have personally viewed the former Town of Coventry Landfill located on Arnold Road in Coventry, Rhode Island (the "Landfill Property"), and the property that abuts the Landfill Property (the "Adjacent Property"), incidental to providing an analysis of value concerning such properties.

8. I have reviewed documents concerning the hazardous waste and other pollutants that were allegedly dumped at the Landfill Property and the Adjacent Property.

9. It is my understanding that the nature and extent of the dumping on the Landfill Property and the Adjacent Property has not been fully analyzed.

10. It is my understanding that there is neither an established plan concerning the nature and scope of the remediation of the Landfill Property and the Adjacent Property, nor any reliable estimate of the costs associated with such remediation.

11. Based upon my experience, and the aforementioned facts, neither I, nor any other appraiser, is capable of providing a reliable estimate of the market value for the Landfill Property and the Adjacent Property until (a) the nature and extent of the dumping on the Landfill and Adjacent Property is confirmed, (b) the nature and scope of the remediation plan is confirmed, and (c) the cost of the clean up is quantified.

12. Based upon my experience, and the aforementioned facts, neither I, nor any other appraiser, is capable of providing a reliable estimate of the market value for the Landfill Property and the Adjacent Property to a reasonable degree of certainty until the costs of remediation are ascertainable, which determination is inherently dependent upon clarification of the nature and scope of the remediation to be performed.

________________________
Peter M. Scotti

Sworn and subscribed to before me at Providence, RI this 13th day of April, 2007.

________________________
Notary Public

Erin J. Kelly
NOTARY PUBLIC
State of Rhode Island
My Commission Expires 11/30/09