UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STATE OF RHODE ISLAND, by and through the RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Plaintiff, | : | |
| vs. | : | C.A. No. 05-346T-LDA |
| TOWN OF COVENTRY, et al., Defendants. | : | |

**DEFENDANTS COMMERCE PARK REALTY, LLC AND COMMERCE PARK ASSOCIATES 9, LLC'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE HONORABLE MAGISTRATE JUDGE LINCOLN D. ALMOND**

Defendants Commerce Park Realty, LLC and Commerce Park Associates 9, LLC (the "Commerce Parties"), pursuant to Fed. R. Civ. P. 72(b), respectfully object to the Report and Recommendation of the Honorable Magistrate Judge Lincoln D. Almond with respect to the Town of Coventry's *Motion to Preclude Use of Undisclosed Evidence, to Dismiss, for an Award of Costs, and an Extension of Scheduling Order Deadlines*. In support thereof and as grounds therefore, the Commerce Parties rely upon their Memorandum of Law, filed upon the same date herewith, as well as the arguments made at the Hearing on this matter.

Respectfully submitted,
Defendants,
Commerce Park Realty, LLC and
Commerce Park Associates 9, LLC,
By their Attorneys,

/s/ Brian LaPlante

Brian LaPlante, Esq./#5861
Philip J. Laffey, Esq./#7292
LaPlante Sowa Goldman
67 Cedar Street
Providence, RI 02903
TEL: (401) 273-0200
FAX: (401) 273-0250

**CERTIFICATION**

Gregory L. Benik, Esquire
Nixon Peabody, LLP
One Citizens Plaza
Providence, RI 02903

David B. Graham, Esquire
Kaufman & Canoles, P.C.
4801 Courthouse Street, Suite 300
Post Office Box 6000
Williamsburg, Virginia 23188

Scott L. Hammer, Esquire
Hodosh Lyon & Hammer, Ltd.
1023 Post Road
Warwick, RI 02888

Mark O. Denehy, Esquire
Geoffrey W. Millsom, Esquire
Elizabeth McDonough Noonan, Esq.
Adler Pollock & Sheehan
One Citizens Plaza, 8th Floor
Providence, RI 02903

Anthony F. Muri, Esquire
Goldenberg & Muri LLP
10 Weybosset Street
Providence, RI 02903

Brian A. Wagner, Esquire
RI DEM
Office of Legal Services
235 Promenade Street
Providence, RI 02908

Patrick J. Sullivan, Esquire
Law Offices of Patrick J. Sullivan, Esquire
505 Tiogue Avenue, Suite B
Coventry, RI 02816

Michael A. DeSisto, Esquire
DeSisto Law
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563

I hereby certify that on this 13th day of April 2007, I caused a true and accurate copy of the within document to be sent via electronic means through the CM/EFC system of the United States District Court to the above-listed attorneys.

/s/ Brian LaPlante

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STATE OF RHODE ISLAND, by and through the RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Plaintiff, | : | |
| vs. | : | C.A. No. 05-346T-LDA |
| TOWN OF COVENTRY, et al., Defendants. | : | |

**DEFENDANTS COMMERCE PARK REALTY, LLC AND COMMERCE PARK ASSOCIATES 9, LLC'S MEMORANDUM OF LAW IN SUPPORT OF SPECIFIC OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE HONORABLE MAGISTRATE JUDGE LINCOLN D. ALMOND**

## Introduction

Defendants Commerce Park Realty, LLC and Commerce Park Associates 9, LLC, pursuant to Fed. R. Civ. P. 72(b), respectfully object to the Report and Recommendation of the Honorable Magistrate Judge Lincoln D. Almond (the "Report and Recommendation," Document 73, attached hereto as Exhibit A) with respect to Defendant Town of Coventry's *Motion to Preclude Use of Undisclosed Evidence, to Dismiss, for an Award of Costs, and an Extension of Scheduling Order Deadlines* (the "Motion to Preclude," Document 64, attached hereto as Exhibit B ), as set forth herein.

## Factual and Procedural Background[1]

On January 10, 2007, immediately prior to the expiration of the discovery deadline of January 28, 2007, as set by the Court pursuant to the December 8, 2006 Order, the undersigned firm was retained by the Commerce Parties following the Commerce Parties' in-house counsel's

[1] In addition to the Factual and Procedural Background set forth herein, the Commerce Parties rely upon the detailed facts set forth in their *Memorandum of Law in Support of Opposition to Defendant Town of Coventry's Motion to Preclude Use of Undisclosed Evidence, to Dismiss, for an Award of Costs, and For an Extension of Scheduling Order Deadlines* (Document 69), as well as the Commerce Parties' Memoranda of Law in support of their *Motion for Modification of Scheduling Order* and *Motion for Severance*, filed contemporaneously with the within Motion, as well as all defined and capitalized terms included therein.

severance of employment. (See Affidavit of Brian LaPlante, Esquire, at ¶6 attached hereto as Exhibit C.) Thereafter, the undersigned immediately engaged in communications with counsel for the Town with respect to the Discovery Requests. The undersigned counsel knew, by virtue of its involvement in the State Case, that the Town had previously been provided with hundreds of documents sought by the Town in the instant matter. (See Exhibit C at ¶17.) In fact, at all times material hereto, all documents regarding the indemnification provision of the Lease were in the care, custody and control of the Town, as the Town is a party to the Lease and the legally mandated custodian of all documents related to the Town's negotiation and execution of the Lease. (See Exhibit C at ¶5.) Nevertheless, the Commerce Parties' counsel assured the Town's attorney that the Town would be provided with additional responses to the Discovery Requests upon review by the undersigned of the voluminous pleading and other documents concerning the instant matter. (See Exhibit C at ¶8.)

Despite the fact that Magistrate Judge Almond issued a Discovery Management Order on December 28, 2006 (Document 58, attached hereto as Exhibit D), wherein he denied the Town's request for a conference concerning discovery and instead directed the parties to work together in good faith as contemplated by Fed. R. Civ. P. 37; despite the fact that the undersigned entered their appearance on January 10, 2007; despite the fact that the undersigned assured counsel for the Town that it would receive all documents and information sought through the Discovery Requests (most of which documentation had already been provided to the Town in the State Case years earlier); and despite the fact that this Honorable Court's order permits post-closure discovery by agreement of the parties, the Town filed its *Motion to Preclude* on January 16, 2007. The Town took issue with the Commerce Parties' perceived incomplete responses to the Discovery Requests as they relate to the issue of damages under the indemnification provision of

the Lease. The matter was referred to Magistrate Judge Almond on March 15, 2007, for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and LR Cv 72. Magistrate Judge Almond heard arguments on the Motion on April 2, 2007.[2]

Magistrate Judge Almond issued his Report and Recommendation on April 4, 2007, wherein he recommended that the Town's Motion be denied in part and granted in part. Specifically, Magistrate Judge Almond concluded that the Commerce Parties violated this Court's December 8, 2007 Order, and recommended "that the District Court require the [Commerce Parties] to pay the reasonable expenses, including attorneys' fees, incurred by the Town in preparing and filing its Rule 37 Motions…and in conferring in an effort to obtain the requested discovery materials." In addition, Magistrate Judge Almond recommended "that the District Court preclude the [Commerce Parties] from presenting expert witnesses…." Lastly, Magistrate Judge Almond recommended "that the District Court not extend the discovery closure deadline."

The Commerce Parties object to the Report and Recommendation of Magistrate Judge Almond, and, in connection therewith, respectfully seek a modification of the Scheduling Order and severance (per the Motions filed contemporaneously with the instant filing) so that it may effectively promote judicial management with the participation and cooperation of counsel and the parties to achieve a swift, inexpensive, and just resolution of this action, pursuant to Fed. R. Civ. P. 16.

[2] The Commerce Parties timely ordered a transcript of said hearing, but the transcript was not yet available as of the date of this filing.

## Argument

**I. The Commerce Parties must not be precluded from presenting evidence that by its very nature does not exist regarding damages that are not yet ascertainable.**

The Scheduling Order issued by this Honorable Court could not reasonably have been intended to close discovery on the issue of damages while the investigation of the contamination at the Landfill and abutting properties was still ongoing. The Scheduling Order as it currently exists is limited to "[d]iscovery with respect to the issue of indemnification between [the Town] and [the Commerce Parties]." The Commerce Parties do not dispute that the Scheduling Order was reasonably intended to close discovery on the very limited issue of indemnification under the Lease and agree that the issue of *liability* under the indemnification provision would best be determined in an expedited fashion so as to clarify the contractual relationship between the Town and the Commerce Parties. However, arbitrarily calling an end to discovery on the issue of the damages that the Commerce Parties have suffered, and will continue to suffer, as a result of the contamination that is the subject of this entire matter, is illogical, impractical, and circumscribes any meaningful trial on the merits, without regard to the ancillary discovery disputes raised by the Town to leverage an unwarranted tactical advantage. Simply put, the Commerce Parties cannot be forced to produce documents or information that could not practicably exist, even assuming the Commerce Parties exercised good faith and diligent efforts to procure the same. Further, please see the arguments set forth in the Commerce Parties' Memoranda In Support of *Motion to Modify Scheduling Order* and *Motion to Sever*, each filed contemporaneously with the within Motion.

## II. The Town will in no way be prejudiced by this Court's allowing the Commerce Parties to utilize evidence of damages under the indemnification provision of the Lease at the trial in this matter, and the Commerce Parties will suffer severe prejudice if they are precluded from the same.

Pursuant to the Lease, the Town agreed, in part, that:

> [The Town] shall at its sole cost and expense indemnify, defend, exonerate, protect, and save harmless [the Commerce Parties] against and from any and all damages, losses, liabilities, obligations, penalties, claims, litigation, demands, defenses, judgments, suits, proceedings, costs, disbursements or expenses of any kind or nature whatsoever, including, without limitation, *attorneys' and experts' fees* and disbursements, which may at any time be imposed upon, incurred by or asserted or awarded against [the Commerce Parties] or any other indemnified party and arising from or out of, among other conditions, any hazardous materials on, in, under or affecting, all or any portion of the Premises on or before the date hereof, or which may hereafter affect all or any portion of the Premises, whenever discovered and however caused. (Emphasis added.)

When the Commerce Parties were named as defendants in the present action, they sought to protect both their statutory rights under CERCLA, as well as their rights under the environmental indemnification provision in the Lease. This is not the first time, however, that the Commerce Parties have sought indemnification from the Town under the Lease. The Commerce Parties have consistently, over the past several years, sought indemnification from the Town under the Lease in various forms, including the State Case claims and numerous demand letters to the Town for reimbursement of attorneys' fees and other expenses. (See Exhibit E.) As such, the Town has been fully aware of the nature of the claims by the Commerce Parties with respect to the indemnification provision of the Lease, and have also obtained documentation relating to those damages that are ascertainable at this time.

Even if there was some additional evidence of damages that the Commerce Parties could provide at this stage of the investigation, which there is not, the Town would not even be in a position to refute such evidence. Until the investigation is complete and the remediation plans confirmed, only very limited evidence of damages can be presented. (See Affidavit of Peter M. Scotti, attached hereto as Exhibit F.) As such, the Town has suffered no prejudice by not receiving

information that it is not in a position to refute or utilize in any meaningful way. Additionally, the Town has in no way been prejudiced by any perceived "delay" in receiving the requested information – the fact is that (1) it has had available to it the majority of the documents and information due to production in the State Case for at least several *years*, and (2) the documents and information that it has not yet received relate to damages that are yet-to-be ascertained, and *do not yet exist*. Furthermore, the fact is that the Town has had available to it, since 2003, the more than one-thousand (1,000) documents that were again provided to the Town in the instant matter on February 16, 2007. Those documents included attorneys' fees bills as well as expert reports concerning the environmental condition and valuation of the Landfill Property as well as the Adjacent Property. In addition, in early 2006, prior counsel for the Commerce Parties sent, on at least three (3) occasions, demands for payment to the Town, attaching attorneys' fees bills.

The Commerce Parties are being forced to compensate the Town for its efforts to obtain documentation, most of which *it already had in its possession*, including the Lease and other Town-controlled documents at the heart of the Court's current deliberations – whether the indemnification is enforceable. In addition, the Town had been assured by the undersigned immediately upon their entry of appearance in the case, that the Town would be receiving all of the information and documentation in the Commerce Parties' possession in short order, and voluminous information was in fact provided on February 16, 2007, after the Commerce Parties first dealt with the Town's unnecessarily uncompromising Motion seeking, among other relief, outright dismissal of the Commerce Parties' contractual claims. It is quite telling that, despite the vigilance with which the Town pursued technical dismissal of the Commerce Parties' claims due to perceived discovery failures, at no time prior to the issuance of Magistrate Judge Almond's

recommendation did the Town ever seek to re-notice the depositions or demand any particular documents from the undersigned counsel. (See Exhibit C at ¶14-15.)

More importantly, *the Commerce Parties cannot produce information that they do not possess, and that does not exist*, and for this Court to punish the Commerce Parties in this regard is illogical and unduly prejudicial. The Commerce Parties continue to be required to defend this CERCLA action, continue to be damaged in other ways as a result of the hazardous condition of the Landfill Property and the Adjacent Property, and will necessarily be incapable of confirming their damages for an indefinite period of time into the future. As such, the Commerce Parties respectfully request that this Court reject Magistrate Judge Almond's recommendation that the Commerce Parties be required to pay reasonable expenses, including attorneys' fees, incurred by the Defendant Town of Coventry (the "Town"), which expenses were wholly avoidable had the Town proceeded with discovery in good faith rather than resorting to unnecessary and antagonistic motion practice.[3]

Further, the Commerce Parties will be *severely* prejudiced should they be precluded from, for example, presenting an expert witness who has been afforded an opportunity to review the expert investigatory reports and, in turn, analyze the impact of the hazardous condition on the Commerce Parties' ability or inability to utilize the Landfill Property and Adjacent Property in a profitable manner. The Commerce Parties will be *severely* prejudiced should the Court in the trial of this matter refuse to accept as evidence further documentation relating to costs and other damages sustained by the Commerce Parties in relation to the defending of this action and the prosecution of the State Case. And the Commerce Parties will be *severely* prejudiced should they be precluded from offering evidence concerning the totality and legitimacy of the damages

[3] Again, it is notable that this Honorable Court's order permits discovery to proceed by agreement of the parties, post-deadline, and the Commerce Parties were willing to participate.

sustained by the Commerce Parties as a result of the existence of the hazardous condition on the Landfill Property and the Adjacent Property.

The Commerce Parties respectfully request that this Honorable Court reject Magistrate Judge Almond's Report and Recommendation as it relates to the award of costs, the preclusion of evidence, the closure of discovery as it relates to the issue of damages under the indemnification provision of the Lease, and the time period within which the parties may bring dispositive motions with respect to the issue of damages.

## III. The Town violated the clear mandates of Magistrate Judge Almond's Discovery Management Order, and now seeks to gain an unwarranted tactical advantage as a result of this egregious conduct.

The Town blatantly disobeyed Magistrate Judge Almond and violated the Discovery Management Order by filing its Motion to Preclude on January 16, 2007, and is now attempting to use this egregious conduct as a means of precluding the Commerce Parties from presenting evidence of its damages at trial, despite that damages are not yet ascertainable, and avoid a meaningful trial on the merits. Magistrate Judge Almond's clear and unambiguous Discovery Management Order, issued on December 28, 2006, required that the Town confer with the Commerce Parties <u>in good faith</u> regarding any perceived insufficiencies in the Commerce Parties' discovery responses <u>before</u> resorting to Rule 37 motion practice.

On or about January 2, 2007, counsel for the Town, Geoffrey W. Millsom ("Attorney Millsom"), sent a correspondence to the Commerce Parties' former counsel, Attorney Richard James ("Attorney James"), regarding perceived insufficiencies in the Commerce Parties' discovery responses. (<u>See</u> the "January 2, 2007 Correspondence," attached hereto as <u>Exhibit G</u>; <u>Exhibit C</u> at ¶3.) In the January 2, 2007 Correspondence, Attorney Millsom asserted that the Town would file a Rule 37 Motion if the Commerce Parties did not contact him regarding

alleged discovery insufficiencies on or before January 9, 2007, a mere seven (7) business days after Magistrate Judge Almond demanded that the Town confer with the Commerce Parties in good faith regarding any discovery dispute. (See Exhibit C at ¶4; Exhibit G.)

On or about January 9, 2007, the deadline the Town had unilaterally established for the production of supplementary discovery responses regarding future, currently unascertained damages, which it erroneously perceived that the Commerce Parties were capable of producing, the undersigned made contact with Attorney Millsom and informed him that Attorney James no longer represented the Commerce Parties and that the undersigned firm, LaPlante Sowa Goldman ("LSG"), would be representing the Commerce Parties in this matter going forward. (See Exhibit C at ¶7.) The undersigned further asserted to Attorney Millsom during this conversation that the Commerce Parties would address any and all outstanding discovery disputes with all deliberate speed and would take any and all steps to remedy any perceived deficiencies and to assure that this matter proceeds fairly and expeditiously. (See Exhibit C at ¶8.) The undersigned attorneys entered their appearance on behalf of the Commerce Parties on or about January 10, 2007. (See Exhibit C at ¶10.)

Despite the above-mentioned communications with Attorney Millsom on or before the deadline asserted in his January 2, 2007 Correspondence, and Magistrate Judge Almond's clear directive to the Town to confer in good faith prior to engaging in Rule 37 motion practice, the Town filed its Motion to Preclude on or about January 16, 2007. Furthermore, the Town failed to forward to LSG any correspondence directed to the Commerce Parties' previous counsel or any other documents expressing the Town's dissatisfaction with the Commerce Parties' previous discovery responses, which would have allowed the undersigned counsel to prepare satisfactory supplemental discovery responses; nor did the Town make any demands upon LSG for any

particular documents or information before the Town filed the Motion to Preclude. (See Exhibit C at ¶12, 13.) The Town also failed to re-notice or demand the depositions of Nicholas E. Cambio or the Commerce Parties at any time after the issuance of the Discovery Management Order, though it later claimed in the Motion to Preclude that its failure to conduct these depositions was due to discovery abuses by the Commerce Parties. (See Exhibit C at ¶14, 15.) Mr. Cambio and the Commerce Parties have, at all times material hereto, been ready, willing and able to be deposed by the Town. (See Exhibit C at ¶16.)

Magistrate Judge Almond issued a clear and unambiguous order that the Town has blatantly chosen to ignore so that it may subvert the discovery process, thwart the goals of Rule 37, and avoid a meaningful trial on the merits. The Town's egregious violation of the Discovery Management Order must not be rewarded.

## Conclusion

For the foregoing reasons, Defendants Commerce Park Realty, LLC and Commerce Park Associates 9, LLC respectfully request that this Honorable Court reject and/or modify the Report and Recommendation of the Honorable Magistrate Judge Lincoln D. Almond with respect to the Defendant Town of Coventry's *Motion to Preclude Use of Undisclosed Evidence, to Dismiss, for an Award of Costs, and an Extension of Scheduling Order Deadlines,* as follows:

1. Reject the recommendation that the Commerce Parties be required to pay reasonable expenses, including attorneys' fees, incurred by the Defendant Town of Coventry (the "Town") in preparing and filing its avoidable and unnecessarily filed Rule 37 motions;

2. Reject the recommendation that the Commerce Parties be precluded from presenting expert witnesses with respect to the issue of damages under the indemnification provision of the Lease, given the unascertainable nature of such damages at this time;

3. Reject the recommendation that the discovery closure deadline not be extended, and instead amend and/or modify the Scheduling Order so that it addresses only the issue of liability under the indemnification provision of the Lease; and

4. Reject the recommendation that the dispositive motion deadline be extended 30 days, and instead amend and/or modify the Scheduling Order so that it addresses only the issue of liability under the indemnification provision of the Lease.

Respectfully submitted,
Defendants,
Commerce Park Realty, LLC and
Commerce Park Associates 9, LLC,
By their Attorneys,

/s/ Brian LaPlante

Brian LaPlante, Esq./#5861
Philip J. Laffey, Esq./#7292
LaPlante Sowa Goldman
67 Cedar Street
Providence, RI 02903
TEL: (401) 273-0200
FAX: (401) 273-0250

## CERTIFICATION

Gregory L. Benik, Esquire
Nixon Peabody, LLP
One Citizens Plaza
Providence, RI 02903

David B. Graham, Esquire
Kaufman & Canoles, P.C.
4801 Courthouse Street, Suite 300
Post Office Box 6000
Williamsburg, Virginia 23188

Scott L. Hammer, Esquire
Hodosh Lyon & Hammer, Ltd.
1023 Post Road
Warwick, RI 02888

Mark O. Denehy, Esquire
Geoffrey W. Millsom, Esquire
Elizabeth McDonough Noonan, Esquire
Adler Pollock & Sheehan
One Citizens Plaza, 8th Floor
Providence, RI 02903

Anthony F. Muri, Esquire
Goldenberg & Muri LLP
10 Weybosset Street
Providence, RI 02903

Brian A. Wagner, Esquire
RI DEM
Office of Legal Services
235 Promenade Street
Providence, RI 02908

Patrick J. Sullivan, Esquire
Law Offices of Patrick J. Sullivan, Esquire
505 Tiogue Avenue, Suite B
Coventry, RI 02816

Michael A. DeSisto, Esquire
DeSisto Law
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563

I hereby certify that on this 13th day of April 2007, I caused a true and accurate copy of the within document to be sent via electronic means through the CM/EFC system of the United States District Court to the above-listed attorneys.

/s/ Brian LaPlante

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

STATE OF RHODE ISLAND, :
DEPARTMENT OF ENVIRONMENTAL :
MANAGEMENT :
:
v. : C.A. No. 05-346T
:
TOWN OF COVENTRY, et al. :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Before the Court is the Town of Coventry's Motion pursuant to Fed. R. Civ. P. 37(b) to (1) Preclude use of Undisclosed Evidence; (2) Dismiss; (3) Award Costs; and (4) Extend the Scheduling Order Deadlines (Document No. 64) filed on January 16, 2007. This Motion was referred to me on March 15, 2007 for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and LR Cv 72. A hearing was held on April 2, 2007. For the reasons discussed below, this Court recommends that the Town's Motion be GRANTED in part and DENIED in part as specified herein.

**Background**

On August 16, 2005, the Rhode Island Department of Environmental Management ("RIDEM") commenced this action under CERCLA to address the alleged presence of hazardous substances at the site of a former landfill in Coventry, Rhode Island. The Town of Coventry (the "Town"), owner of the landfill, is one of several defendants named in the original Complaint. On March 14, 2006, RIDEM filed a First Amended Complaint (Document No. 14) adding Commerce Park Associates 9, LLC and Commerce Park Realty, LLC (the "Commerce Park Defendants") as

defendants. On May 17, 2006, the Commerce Park Defendants answered and asserted cross-claims including one for contractual indemnification against the Town arising out of a 1999 ground release between the Town and Commerce Park Associates 9, LLC.

Following a Rule 16 conference before Judge Torres, a scheduling order was issued on August 29, 2006 setting a closure date of December 1, 2006 for "[d]iscovery with respect to the issue of indemnification between Defendant Town of Coventry and the Commerce Park Defendants." (Document No. 43). On or about September 28, 2006, the Town served eight document requests and thirteen interrogatories on the Commerce Park Defendants. The Town also noticed the depositions of Nicholas Cambio and the Commerce Park Defendants for October 30, and 31, 2006.

On October 24, 2006, the Commerce Park Defendants' attorney moved to withdraw citing nonpayment for his legal services. Attorney Richard H. James entered his appearance on November 1, 2006 for the Commerce Park Defendants and the pending Motion to Withdraw was granted. Also, on November 1, 2006, Attorney James served initial responses to the Town's discovery requests. The Town was dissatisfied with some of the responses and, on November 17, 2006, moved to compel further responses to four document requests (Nos. 1, 5 to 7) and six interrogatories (Nos. 4, 7 to 11). (Document No. 51). The Commerce Park Defendants did not object to the Town's Motion and it was granted absent opposition pursuant to LR Cv 7(b)(1) on December 8, 2006. The Commerce Park Defendants did, however, at about that same time, serve supplemental discovery responses on the Town.

The Town was still not satisfied with the supplemental responses and requested a discovery conference. The request for a conference was denied on December 28, 2006. (Document No. 58).

On January 16, 2007, the instant Motion for Sanctions was filed under Fed. R. Civ. P. 37(b). On January 11, 2007, Attorney Brian LaPlante entered his appearance for the Commerce Park Defendants. At the hearing, Attorney LaPlante represented that his entry of appearance came in connection with the "severance" of Attorney James as in-house counsel for the Commerce Park Defendants. Attorney LaPlante credibly represented to the Court that he has had "regular communications" regarding discovery with the Town's counsel since his appearance and, on February 16, 2007, served on the Town a second set of supplemental responses to the disputed discovery requests.

This February 16, 2007 production included over one thousand documents which had not previously been produced in this case. Attorney LaPlante conceded at the hearing that these documents were "certainly responsive" to the Town's original discovery requests and that such documents were available to Attorney James. However, in defense of Attorney James, he stated: "I don't believe Mr. James was in a position to understand that which was available to him to produce. I was in a better position."

**Discussion**

The Town made clear at the hearing that its Motion is brought under Fed. R. Civ. P. 37(b) and seeks various sanctions for the Commerce Park Defendants' failure to comply with this Court's December 8, 2006 Order. That Order required the Commerce Park Defendants to produce the requested discovery within twenty days pursuant to LR Cv 37(b). This Court finds that the Commerce Park Defendants failed to comply with its December 8, 2006 Order in a timely fashion.

It is undisputed that the Commerce Park Defendants supplemented their discovery responses a second time on February 16, 2007 and produced, according to Attorney LaPlante, over one

thousand documents previously produced to the Town in a state court action and "hundreds more that had never been produced." He was also forced to concede at the hearing that such documents were available to Attorney James (counsel of record as of December 8, 2006) and that the documents were "certainly responsive" to the Town's discovery requests. In other words, the discovery materials could have, and should have, been produced in a timely fashion. If the Commerce Park Defendants had done so initially, the Town likely would have been able to complete discovery by the original December 1, 2006 closure date. As it stands, the bulk of the discovery materials were not produced until February 16, 2007 – over two and one-half months after the original discovery deadline and over two weeks after the extended discovery deadline. Having concluded that the Commerce Park Defendants violated the December 8, 2006 Order, the next question is what sanctions, if any, should be imposed against them due to such noncompliance.

Fed. R. Civ. P. 37(b)(2) states in relevant part: "If a party...fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule..., the court...may make such orders in regard to the failure as are just...." "The choice of sanctions for failing to comply with an order of the district court lies within the sound discretion of the court." Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 10 (1st Cir. 1990).

In this case, the Town seeks an order dismissing with prejudice the cross-claims made against it by the Commerce Park Defendants. "Dismissal with prejudice is a harsh sanction which runs counter to [the] strong policy favoring the disposition of cases on the merits." Figueroa Ruiz v. Alegria, 896 F.2d 645, 647 (1st Cir. 1990). (internal citations omitted). "[D]ismissal orders typically are measures of last resort, reserved for extreme cases." Torres-Vargas v. Pereira, 431 F.3d 389, 393 (1st Cir. 2005). When noncompliance with an order occurs, "the ordering court should

consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003).

Reviewing the totality of events, the harsh sanction of dismissal is not warranted. Although the discovery materials in dispute should have been produced earlier than February 16, 2007, the Town has not shown that the Commerce Park Defendants engaged in a pattern of discovery abuses or that their delayed response to this Court's Order was sufficiently egregious to warrant dismissal. That is not to say, however, that no level of sanctions are warranted. Pursuant to Fed. R. Civ. P. 37(b)(2), this Court recommends that the District Court require the Commerce Park Defendants to pay the reasonable expenses, including attorneys' fees, incurred by the Town in preparing and filing its Rule 37 Motions (Document Nos. 51 and 64) and in conferring in an effort to obtain the requested discovery materials. Such a sanction is sufficient to remedy the consequences of the Commerce Park Defendants' failure to produce discovery in a timely fashion and to deter such behavior in the future.

The Town also seeks an order precluding the Commerce Park Defendants from using undisclosed evidence at trial. This Court recommends that the District Court preclude the Commerce Park Defendants from presenting expert witnesses but otherwise deny the request without prejudice.[1] As to expert witnesses, the Town sought their identity in Interrogatory No. 12 and the Commerce Park Defendants responded that "no expert witnesses have been retained or consulted...at this time [and they] retain the right to do so before trial and will, at that time, answer this question

[1] If the Commerce Park Defendants attempt to introduce undisclosed evidence at trial or in connection with any future motion or hearing, the Town would not be precluded from objecting to the admission of such evidence at that time on the basis that it was requested and not produced in discovery.

in full." The Commerce Park Defendants cannot, however, retain rights they do not have under the Federal Rules of Civil Procedure and Judge Torres' Scheduling Order. The Scheduling Order provides as follows regarding experts:

> 3. Expert Witnesses. Any party intending to utilize the testimony of an expert witness shall, upon request, disclose the identity of such witness promptly. If the expert is retained subsequent to such request, disclosure shall be made immediately after retention and before Closure Date. In any event, disclosure shall be made within the times prescribed by Fed. R. Civ. P. 26(a)(2)(C). Any such witness not so disclosed may be barred from testifying unless the Court otherwise directs for good cause show.

Document No. 43 (emphasis in original).

At a March 9, 2007 hearing in this case, Judge Torres indicated that his Scheduling Order "makes it clear that, if those requirements aren't complied with, the expert doesn't testify." "It is settled law that a party flouts a court order at his peril." Torres-Vargas, 431 F.3d 393. Discovery has closed as to the indemnity cross-claim brought by the Commerce Park Defendants against the Town. There is no indication in the record that the Commerce Park Defendants have identified any expert witnesses or produced any expert witness reports. While the Commerce Park Defendants may be under the mistaken impression that they had retained the right to do so at any time before trial, Judge Torres' Scheduling Order simply does not afford them that right and provides for preclusion of undisclosed experts under these circumstances.

Finally, the Town again asks to extend the discovery closure date and the dispositive motion deadline due to the Commerce Park Defendants' discovery non-compliance. This Court does not see any basis for or need to reopen discovery and recommends that the District Court not extend the discovery closure deadline. It appears that the primary task remaining is for the Town to take the

depositions of Mr. Cambio and the Commerce Park Defendants which were noticed prior to the closure of discovery but never conducted. This Court recommends that the Town be given leave by the District Court to renotice these depositions to take place within thirty days. The Commerce Park Defendants offered no objection to conducting such depositions and, in fact, Attorney LaPlante stated that such depositions could be conducted "tomorrow." Further, the parties are reminded that Judge Torres' Scheduling Order permits post-closure discovery "by agreement of all counsel." As to the dispositive motion deadline, this Court recommends that the District Court extend that deadline by thirty days subject to the "prerequisites to filing" set forth in paragraph 7 of Judge Torres' Scheduling Order.

**Conclusion**

For the reasons discussed above, this Court recommends that the Town's Motion (Document No. 64) be GRANTED in part and DENIED in part as specified herein. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 4, 2007

# EXHIBIT B

COPY

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF RHODE ISLAND, by and through the RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Plaintiff, | |
| v. | |
| TOWN OF COVENTRY, et. al, Defendants. | C.A. 05-346T-LDA |

**TOWN OF COVENTRY'S MOTION TO PRECLUDE USE OF UNDISCLOSED EVIDENCE, TO DISMISS, FOR AN AWARD OF COSTS, AND AN EXTENSION OF SCHEDULING ORDER DEADLINES**

Pursuant to Rule 37(b) & (c) of the Federal Rules of Civil Procedure, The Town of Coventry, Rhode Island ("Coventry") hereby moves the Court to issue an order: 1) precluding Commerce Park Realty, LLC and Commerce Park Associates 9, LLC (collectively, the "Commerce Park Defendants") from using undisclosed evidence at trial, hearing or motion in this case, 2) dismissing the Cross-claims as a result of the Commerce Park Defendants' failure to comply with the Court's December 8, 2006 Order, 3) awarding Coventry its costs and expenses, including attorneys' fees, incurred in its various efforts to obtain the requested (and ordered) discovery, and 4) extending the period of time in which Coventry may conduct discovery and file dispositive motions. The arguments upon which this motion is based are set forth in the accompanying memorandum.

Dated: Providence, Rhode Island
January 16, 2007

TOWN OF COVENTRY, RHODE ISLAND
By its Attorneys,

/s/ Geoffrey W. Millsom
Mark O. Denehy (#3492)
Elizabeth McDonough Noonan (#4226)
Geoffrey W. Millsom (#6483)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607

## RULE 37 CERTIFICATION

I hereby certify that, prior to bringing this motion to compel, I conferred in good faith with the party failing to make discovery in an unsuccessful effort to secure the information without court action.

/s/ Geoffrey W. Millsom

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| STATE OF RHODE ISLAND, by and through the RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, | : | |
| Plaintiff, | : | |
| v. | : | |
| TOWN OF COVENTRY, et. al, | : | C.A. 05-346T-LDA |
| Defendants. | : | |

**MEMORANDUM IN SUPPORT OF TOWN OF COVENTRY'S MOTION TO PRECLUDE USE OF UNDISCLOSED EVIDENCE, TO DISMISS, FOR AN AWARD OF COSTS, AND AN EXTENSION OF SCHEDULING ORDER DEADLINES**

The Town of Coventry, Rhode Island ("Coventry") submits this memorandum in support of its Motion To Preclude Use Of Undisclosed Evidence, To Dismiss, For An Award Costs, And Extension of Scheduling Order Deadlines.

**BACKGROUND**

This action was filed pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.* by the Rhode Island Department of Environmental Management ("RIDEM") to address the alleged presence of hazardous materials at the site of a former landfill in Coventry, Rhode Island. Contemporaneously with the filing of this suit, 14 of the entities identified by RIDEM as potentially responsible parties ("PRPs") entered into a Partial Consent Decree in which the alleged PRPs agreed to finance and perform a remedial investigation/ feasibility study at the landfill. Subsequently, the settling PRPs were denied access to the landfill for the purpose of performing their obligations under the Consent Decree by the entity that owns the adjacent

property, Commerce Park Realty, LLC, and the entity that leases the property on which the former landfill was situated, Commerce Park Associates 9, LLC. In response, RIDEM amended its Complaint to include the Commerce Park Defendants.

The Commerce Park Defendants answered RIDEM's Amended Complaint and brought multiple cross-claims against their co-defendants, including Coventry. One of the cross-claims asserted against Coventry seeks contractual indemnification under a lease between Coventry and Commerce Park Associates 9, LLC ("CPA9").

On August 24, 2006, the Court issued a Scheduling Order pursuant to Rule 16 of the Federal Rules of Civil Procedure. Pursuant to the Scheduling Order, discovery on the indemnification issue between Coventry and the Commerce Park Defendants was to close on December 1, 2006. On September 27, 2006, Coventry served its First Request for the Production of Documents and First Set of Interrogatories upon the Commerce Park Defendants (the "Discovery Requests"). That same date, Coventry noticed the depositions of the Commerce Park Defendants and Nicholas E. Cambio for October 30 and 31, 2006.

On November 1, 2006, the Commerce Park Defendants served responses to the Discovery Requests. Coventry deemed these responses inadequate and, after meeting and conferring with the Commence Park Defendants, moved to compel full and adequate responses and to extend the time in which Coventry could take discovery and bring dispositive motions. The Commence Park Defendants did not object to this motion. On December 8, 2006, the Court issued an order granting Coventry's motion to compel and extending the discovery closure date, ordering the Commerce Park Defendants to produce the requested discovery within 30 days and extend the dispositive motion deadline in this case by 30 days. Pursuant to this order the new discovery closure date is January 28, 2006.

On December 8, 2006, the Commerce Park Defendants supplemented their discovery responses. Copies of these supplemental responses are attached as Exhibits 1 and 2. (These responses fairly and accurately reflect Coventry's individual requests). Coventry subsequently has raised its dissatisfaction regarding the sufficiency of the discovery responses with counsel for the Commerce Park Defendants. Additionally, new counsel has recently appeared in this case for the Commerce Park Defendants and Coventry has conferred with this new counsel regarding its discovery concerns. Despite these efforts, Coventry has not obtained full and adequate discovery responses. Although Coventry is hopeful that it may eventually be able to obtain the discovery it seeks with the assistance of new counsel, it does not believe that its discovery will be completed before the discovery deadline.

## ARGUMENT

The discovery provisions of the Federal Rules of Civil Procedure are designed to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958). Rule 26 of the Federal Rules of Civil Procedure permits parties to take discovery of all relevant information. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."). "If a party fails to make a disclosure required by Rule 26(a) any other party may move to compel disclosure and for appropriate sanctions." *See* Fed. R. Civ. P. 37(a)(2)(A). Under Rule 37, "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3).

Rule 37(b) & (c) provide a range of sanctions for a party's failure to comply with a court order compelling the production of discovery. Fed. R. Civ. P. 37(b) & (c). At a minimum, the

Rule precludes the non-compliant party from using at a trial, hearing or on a motion any evidence or information not disclosed. *See* Fed. R. Civ. P..37(c) ("A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."). Other available sanctions include attorney's fees and dismissal. *Id.* Indeed, the language of Rule 37 indicates that an award of attorney's fees is mandatory, not discretionary, in the event of a meritorious motion to compel under Rule 37(a), which suggests that such an award is even more appropriate in the event that the movant is forced – as is the case here – to bring a second motion under Rule 37(b) & (c).

## I. DISMISSAL IS WARRANTED BECAUSE THE COMMERCE PARK DEFENDANTS HAVE NOT COMPLIED WITH THE COURT'S ORDER COMPELLING DISCOVERY

In its Motion to Compel, Coventry argued that the Court should order the Commerce Park Defendants to produce, *inter alia*, the following categories of discovery:

Documents And Information Reflecting Damages, Costs and Fees

Coventry's Document Request Numbers 5, 6 & 7 each sought documents reflecting damages, costs or fees incurred by CPR and/or CPA9 as a result of the RIDEM Complaint and the facts giving rise to the RIDEM Complaint. Similarly, Coventry's Interrogatories numbered 7 & 8 requested that the Commerce Park Defendants itemize all such damages, costs or fees. The Court's December 8, 2006 Order directed the Commerce Park Defendants to provide this information.

To date, however, the Commerce Park Defendants have produced only a letter from a consultant, an appraisal, an ambiguous accounting schedule and interest calculations. In their supplementary discovery responses, the Commerce Park Defendants indicated that they would

produce their "accounts payable records" for inspection. (When requested to copy and produce the "accounts payable records," however, the Commerce Park Defendants failed to comply). *See* Exhibit 3. The Commerce Park Defendants have not produced any bills, invoices, or requests for payment reflecting the damages they seek in this case. Nor have they produced any documentary evidence of payment of those damages, such as canceled checks, receipts, bank account statements, etc.

The Commerce Park Defendants' interrogatory responses (as supplemented) list only broad categories of claimed expenses totaling in excess of $24,500,000. *See* Exhibit 2. To the extent that any of these categories of damages are dependant on expert testimony (e.g. "lost value of adjacent real estate" and "estimated value of the leasehold interest in Landfill over lease term"), the Commerce Park Defendants have produced no expert reports and disclosed no expert witnesses have been disclosed. Indeed, they have affirmatively represented that, as of December 8, 2006, they had not retained any expert witnesses. Taken together, these discovery responses, provide insufficient evidence of the Commerce Park Defendants claimed "damages" to merit this case proceeding to trial. Unquestionably, proof of "damages" is an element of the Commerce Park Defendants *prima facie* indemnification claim.

Although Rule 37(c) certainly provides the Court with sufficient authority to dismiss the Commerce Park Defendants' Cross-claim as a sanction for their discovery non-compliance and willful disobedience of this Court's December 8, 2006 Order, in this case dismissal is also warranted by virtue of the imposition of the lesser (and mandatory) sanction of preclusion of the undisclosed evidence. Fed. R. Civ. P. 37(c). If the Commerce Park Defendants are unable to introduce evidence at trial in the form of expert opinions as to the "lost value" aspect of their

damages as well as documentary evidence of their out-of-pocket losses and expenses, they cannot prevail on their Cross-claim and it, therefore, must be dismissed

In addition, the Commerce Park Defendants should be ordered to compensate Coventry for the needless expense of time, resources and attorneys' fees incurred while attempting to obtain the requested discovery. The Commerce Park Defendants have frustrated Coventry's ability to understand the scope of their claimed damages and prevented Coventry from being able to conceive of or mount a defense to the damages aspect of the Cross-claim. At a minimum, this frustration of Coventry's rights to discovery and unjustified escalation of Coventry's litigation expenses merits an order compelling the Commerce Park Defendants to reimburse Coventry for the fees and expenses incurred in the course of attempting to obtain the requested (and ordered) discovery.

Electronically Stored Information

In its motion to compel, Coventry requested that the Commerce Park Defendants be ordered to produce electronically stored information that was responsive to Coventry's discovery requests and to certify their good faith search of their electronic records. This request was based on the fact that the Commerce Park Defendants produced a few documents, such as a spreadsheet and accounting software printouts, that were clearly generated from electronically stored information. The Commerce Park Defendants did not produce these (or any other documents) in electronic form. Nor did the Commerce Park Defendants produce any emails, which is a very unusual event in modern business litigation. Subsequent to Coventry's motion to compel, counsel for the Commerce Park Defendants did indicate that he would be producing certain environmental reports in electronic form, but these reports were never actually produced. *See* Exhibit 3.

By granting Coventry's motion to compel, the Court ordered the Commerce Park Defendants to produce the electronic versions of the documents produced that clearly exist in electronic form and compelled the Commerce Park Defendants to review their electronically stored information, produce any other responsive information contained therein and certify to Coventry and the Court that it has made a thorough and complete review and production of its electronic records. Coventry is in contempt of this Order. As a result, Coventry should be precluded from using all undisclosed electronically stored information, the cross-claims should be dismissed and Coventry should be awarded the costs, fees and expenses incurred in obtaining production of electronically stored information and the requested certification.

Environmental Testing Results

Coventry's motion to compel sought disclosure of information responsive to Interrogatory number 10, which sought the results of "any testing for the presence of hazardous materials on the Property or the Adjacent Properties performed by [the Commerce Park Defendants]." After first refusing to provide this relevant information because the request was not specific as to time frame, the Commerce Park Defendants supplemented their discovery response and refused to provide any responsive information that had been provided to it by Coventry and agreed to provide certain other responsive information. *See* Exhibits 1 & 3. They have not, however, actually provided such documentation. This failure by the Commerce Park Defendants also justifies preclusion, dismissal of the Cross-claims, and the imposition of an order directing them to pay the costs, fees and expenses incurred by Coventry in the course of attempting to obtain the requested discovery.

Prior Litigation

At Coventry's request, this Court ordered the Commerce Park Defendants to respond fully to Interrogatory number 11, which sought disclosure of the identity of all lawsuits to which the Commerce Park Defendants or Nicholas Cambio have ever been a party. The Commerce Park Defendants have ignored the Court's order and refused to provide responsive information. This intentional flouting of the Court's order and their own discovery obligations justifies preclusion, dismissal of the Cross-claims and an award of fees, costs and expenses to Coventry.

## II. IF THE CROSS-CLAIMS ARE NOT DISMISED, THE DISCOVERY CLOSURE DATE SHOULD BE EXTENDED

The discovery closure date for this case is January 28, 2007 and the dispositive motion deadline is February 28, 2006. Despite having diligently pursued discovery since September, Coventry will not be in a position to conclude its written discovery or to depose all fact witnesses by the closure date as a result of the Commerce Park Defendants' discovery non-compliance. Accordingly, in the event that the Cross-claims are not dismissed as a result of the Commerce Park Defendants' refusal to comply with this Court's December 8, 2006 Order, Coventry seeks a sixty day extension of the discovery closure date and deadline for filing dispositive motions set forth in the Court's current Scheduling Order, but requests that no such extension be granted to the Commerce Park Defendants, who should not be rewarded for their deliberate refusal to provide discovery in accordance with this Court's Order and the Federal Rules of Civil Procedure.

## CONCLUSION

For all the foregoing reasons, Coventry requests that the Court issue an order: 1) precluding the Commerce Park Defendants from using undisclosed evidence at a trial, hearing or motion in this case, 2) dismissing the Cross-claims as a result of the Commerce Park

Defendants' failure to comply with the Court's December 8, 2006 Order, 3) awarding Coventry its costs and expenses, including attorneys' fees, incurred in its various efforts to obtain the requested (and ordered) discovery, and 4) extending the period of time in which Coventry may conduct discovery and file dispositive motions.

Dated: Providence, Rhode Island
January 16, 2007

TOWN OF COVENTRY, RHODE ISLAND
By its Attorneys,

/s/ Geoffrey W. Millsom

Mark O. Denehy (#3492)
Elizabeth McDonough Noonan (#4226)
Geoffrey W. Millsom (#6483)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(401) 274-7200
Fax: (401) 751-0604/ 351-4607

## CERTIFICATE OF SERVICE

I hereby certify that I filed the within Town Of Coventry's Motion To Preclude Use Of Undisclosed Evidence, To Dismiss, For An Award Of Costs, And An Extension Of Scheduling Order Deadlines and the Memorandum of Law in support thereof through the ECF system on the 16th day of January, 2007, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for Case No. 05-346T-LDA and was sent by regular mail to the following counsel of record:

| | |
|---|---|
| Patrick J. Sullivan<br>Law Offices of Patrick J. Sullivan, Esq.<br>505 Tiogue Ave.<br>Suite B<br>Coventry, RI 02816 | Scott L. Hammer<br>Blasbalg & Hammer<br>128 Dorrance St., Suite 350<br>Providence, RI 02903 |

/s/ Geoffrey W. Millsom

*404879_1.doc*

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| STATE OF RHODE ISLAND, by and through the RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Plaintiff, | : | |
| vs. | : | C.A. No. 05-346T-LDA |
| TOWN OF COVENTRY, et al., Defendants. | : | |

**AFFIDAVIT OF BRIAN LAPLANTE, ESQ.**

I, Brian LaPlante, Esq., being duly sworn, upon oath, depose and say as follows:

1. I am attorney of record for Defendants Commerce Park Realty, LLC and Commerce Park Associates 9, LLC ("Commerce Parties") and I have personal knowledge of the facts set forth in this Affidavit.

2. On or about December 28, 2006, Magistrate Judge Almond issued a Discovery Management Order, directing the Town of the Coventry (the "Town") to confer with the Commerce Parties' counsel in good faith regarding any perceived insufficiencies in the Commerce Parties' discovery responses before resorting to Rule 37 motion practice.

3. On or about January 2, 2007, counsel for the Town, Geoffrey W. Millsom ("Attorney Millsom"), sent a correspondence to the Commerce Parties' former counsel, Attorney Richard James ("Attorney James"), regarding perceived insufficiencies in the Commerce Parties' discovery responses (the "January 2, 2007 Correspondence") (See January 2, 2007 Correspondence attached as Exhibit 1).

4. In the January 2, 2007 Correspondence, Attorney Millsom asserted that the Town would file a Rule 37 Motion if the Commerce Parties did not contact him regarding alleged discovery insufficiencies on or before January 9, 2007, a mere seven (7) business days after Magistrate Judge Almond ordered the Town to confer with the Commerce Parties in good faith regarding any discovery dispute.

5. The Town, as the contracting party, had in its care, custody and control all documents related to the indemnification provision in the subject lease prior to propounding any discovery requests upon the Commerce Parties in the instant matter.

6. Immediately prior to the issuance of the Discovery Management Order, the Commerce Parties and Attorney James terminated their relationship and the Commerce Parties took immediate action to retain myself and my firm, LaPlante Sowa Goldman ("LSG"), to represent them in this matter.

7. On or about January 9, 2007, the deadline the Town had unilaterally established for the production of supplementary discovery responses, primarily related to future, currently unascertainable damages, which it erroneously perceived that the Commerce Parties were capable of producing, I made contact with Attorney Millsom and informed him that my firm and I would be representing the Commerce Parties in this matter.

8. I advised Attorney Millsom that the Commerce Parties would address any and all outstanding discovery disputes with all deliberate speed and would take any and all steps to remedy any perceived deficiencies and to assure that this matter proceeds fairly and expeditiously.

9. My associate, Attorney Philip J. Laffey ("Attorney Laffey"), had similar conversations with Attorney Millsom.

10. I entered my appearance on behalf of the Commerce Parties on or about January 10, 2007.

11. Despite (a) the above-mentioned communications with Attorney Millsom on or before the deadline asserted in his January 2, 2007 Correspondence, (b) Magistrate Judge Almond's clear directive to the Town to confer in good faith prior to engaging in Rule 37 motion practice, and (c) this Honorable Court's own rule that discovery may be conducted beyond the discovery deadline, which the Commerce Parties were willing to do, the Town filed its *Motion to Preclude Use of Undisclosed Evidence, to Dismiss, for an Award of Costs, and an Extension of Scheduling Order Deadlines* (the "Motion to Preclude").

12. The Town failed to forward to LSG or me <u>any</u> correspondence directed to the Commerce Parties' previous counsel or <u>any</u> other documents expressing the Town's particular dissatisfaction with the Commerce Parties' previous discovery responses, which would have expedited our preparation of satisfactory supplemental discovery responses, either before or after the Town filed the Motion to Preclude, despite my attempts to avoid unnecessary motion practice by advising the Town's counsel that I would cooperate fully with the discovery process.

13. The Town failed to make <u>any</u> demands of LSG or me for any particular documents or information before it filed its Motion to Preclude.

14. The Town failed to re-notice or demand the depositions of Nicholas E. Cambio ("Mr. Cambio") or the Commerce Parties at <u>any</u> time after the issuance of the

Discovery Management Order, but later claimed in the Motion to Preclude that its failure to conduct these depositions was due to discovery abuses by the Commerce Parties.

15. At no time during my conversations with Attorney Milsom did he even request dates to conduct the depositions of the Commerce Parties.

16. Mr. Cambio and the Commerce Parties have, at all times material hereto, been ready, willing and able to be deposed by the Town.

17. I knew, by virtue of my involvement in the State Case, that the Town had previously been provided with hundreds of documents sought by the Town in the instant matter.

Brian LaPlante, Esq.

Sworn and subscribed to before me at Providence, RI this 13th day of April, 2007.

Erin J. Kelly
NOTARY PUBLIC
State of Rhode Island
My Commission Expires 11/30/09

Notary Public

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

STATE OF RHODE ISLAND, :
DEPARTMENT OF ENVIRONMENTAL :
MANAGEMENT :
:
v. : C.A. No. 05-346T
:
TOWN OF COVENTRY, et al. :

**DISCOVERY MANAGEMENT ORDER**

On December 20, 2006, the Town of Coventry (the "Town"), through its counsel, requested a discovery conference because the Town is "unsatisfied with the discovery responses served upon [it] by" co-defendants and cross-claimants Commerce Park Realty, LLC and Commerce Park Associates 9, LLC (collectively "Commerce"). Judge Torres has referred this request to me. The Town represents its belief that "attempting to meet and confer with [Commerce] would be futile" and that "a conference with the Court would be the most expeditious way to resolve the outstanding issues."

As counsel knows, most discovery disputes are presented to the Court under Fed. R. Civ. P. 37. Pursuant to LR Cv 37(a), the moving party's Motion sets forth the discovery request in issue, the disputed response and an explanation as to why the movant maintains that the response is inadequate. Thus, the Court is in a position to either rule on the dispute on the papers or become sufficiently informed about the dispute to hold a hearing and engage in a meaningful dialogue about the dispute with counsel. Since the Town's letter provides no insight into the nature of the instant dispute, the Court would be wholly uninformed and unprepared to engage in a meaningful dialogue at the requested conference.

Further, the Town provides no legal or factual support for its proposed "futility" exemption from Rule 37's obligation to confer in good faith prior to seeking Court intervention. In particular, Rule 37(a)(2)(B) mandates that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer...in an effort to secure the information or material without court action." This mandate has two purposes. First, it requires the moving party to exhaust its own efforts to obtain the discovery sought before utilizing the Court's resources. Second, it recognizes that the attorneys, with their experience in the subject matter and detailed knowledge of the case, are in a much better position to address these issues than is the Court which generally has only sporadic involvement in a case during the pretrial period.

If this Court were to grant the Town's request for a conference and agree with its futility exemption to the meet and confer requirement, it would signal to the other parties in this case and others on the Court's docket that Fed. R. Civ. P. 37 and LR Cv 37(a) are meaningless. It would signal that the easiest way to be heard on discovery disputes is to submit a vague one-page letter requesting a conference and asserting that it would be futile to even attempt to meet and confer. While the Town may view this as an expeditious way to resolve their dispute, this Court does not agree. If it was, it is likely that such a mechanism would have been incorporated into the Federal Rules of Civil Procedure or this Court's Local Rules. While this Court appreciates the Town's desire to avoid unnecessary motion practice under Rule 37, the best way to accomplish that goal is for counsel to confer or attempt to confer in "good faith" about the dispute prior to filing a discovery motion as required. If that fails, it is highly likely that a motion hearing preceded by succinct and targeted briefing would be more productive than an unstructured conference before an uninformed

judge. Further, without a pending motion, it is questionable what authority this Court would have at a "conference" to grant any formal relief to the Town without Commerce's consent

In summary, the Town has simply not shown at this time how the discovery dispute in this case is different than the dozens of similar disputes brewing in other pending cases at any given time, and why the parties in this case should be exempted from Fed. R. Civ. P. 37(a)(2)(B). Thus, this Court is unwilling at this time to hold a discovery conference based on the contents of the Town's current request. If the Town disagrees with this Court's initial assessment and believes that a conference would be appropriate and productive, the Town may renew its request directly to the undersigned with a more detailed explanation of the nature of the dispute and why even an attempt to meet and confer with Commerce would be futile.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 28, 2006

# EXHIBIT E

RBHE
Ratcliffe Burke Harten & Elias LLP
ATTORNEYS AT LAW

February 16, 2006

Thaddeus Jendzejec, President
Coventry Town Council
1670 Flat River Road
Coventry, RI 02816

Justin Pomfret, Member
Coventry Town Council
1670 Flat River Road
Coventry, RI 02816

Frank Hyde, Member
Coventry Town Council
1670 Flat River Road
Coventry, RI 02816

Gregory Laboissonniere, Member
Coventry Town Council
1670 Flat River Road
Coventry, RI 02816

Robert Thibeault, Member
Coventry Town Council
1670 Flat River Road
Coventry, RI 02816

***Re: Lease of Coventry Landfill to Commerce Park Associates 9, LLC dated May 1999***

Dear Mr. President and
Members of the Council:

This office represents Commerce Park Associates 9, LLC, the tenant ("Tenant") under the above-referenced Lease. Our client has retained us to enforce its rights under the Lease arising as a result of the presence of Hazardous Materials on the leased premises, and the release of Hazardous Materials to the surrounding properties, also owned by our client or its related affiliates. Capitalized terms in this correspondence have the meanings ascribed to them in the Lease.

A complete copy of Article 13 of the Lease is attached to this correspondence as Exhibit A. It concerns our client's right to the quiet enjoyment of the Premises. This letter will present our client's demand for immediate and ongoing indemnification for costs and liabilities incurred by our client as a result of the presence of Hazardous Materials on and adjacent to the Premises.

RBHE



Such materials are present both on the Premises and on the surrounding real estate as a result of the migration of Hazardous Materials from the Premises.

## I. The Town's Representations and Warranties

Article 13 of the Lease contains certain representations of the landlord, which were to be true as of the date of the Lease and which are to remain true at all times after the date of the Lease. These representations and warranties include, without limitation, the following: that except as disclosed in Environmental Reports prior to the date of the Lease and attached to the Lease as Exhibit B:

- No Hazardous Materials have been . . . stored, . . . released or located on, under or from the Premises;
- Neither the Town nor any of its employees or agents has violated or may have violated any Environmental Legal Requirements;
- The Town had no knowledge of any of the foregoing conditions, defects, . . . or other matters as to any adjacent Premises or other Premises which might, by virtue of movement of Hazardous Materials or otherwise, have a material adverse effect on the Premises.

As more particularly set forth below, it appears that each and every one of the representations and warranties set forth above, without limiting the foregoing generality, may have been untrue as of the date of the Lease, and is certainly untrue as of the date of this correspondence.

## II. The Environmental Status of the Property as of the Date of This Correspondence

Reference is made to a "Partial Consent Decree" to which the Town is a party, filed in United States District Court for the District of Rhode Island, in the matter of *State of Rhode Island v. Town of Coventry, et al*, C.A. No. 05-346ML. The presence of Hazardous Materials is documented in the environmental reports attached to the consent decree as follows:

> The Coventry Landfill received waste from the late 1930's to July, 1975. In addition to municipal waste, the landfill accepted various types of industrial, commercial and building

RBHE



> wastes, including drummed waste and liquid waste from at least two barrel reconditioners; Farrell Barrel (later Great Lakes Container Corporation), and Efros Barrel are both located adjacent to the landfill. . .
>
> The most recent soil sampling was conducted at the landfill on April 5, 1994 by CD Federal Programs Corporation for US EPA Region One. Several volatile organic compounds (VOC's), a semi-volatile organic compound (SVOC), the polychlorinated biphenyl (PCB) Aroclor-1254, several pesticides, and several metals were detected in surface soil samples collected. Acetone, chlorobenzene, Aroclor-1254, aopha-chlordane, calcium, chromium, copper, lead, magnesium, manganese, mercury, and vanadium were detected at concentrations significantly above apparent background concentrations. A detailed description of sampling locations and activities is included in ARCS I Final Site Inspection Prioritization Report by CDM dated April 11, 1995.
>
> Previously, soil sampling was conducted at the landfill on August 16, 1984 by the NUS Corporation and documented in Final Report: Coventry Municipal Landfill Site Inspection dated August 31, 1984. A total of eight soil samples were collected for analysis of VOC's and priority pollutant metals. VOC compounds detected in the west/southwest section of the landfill included benzene, chlorobenzene, ethylbenzene, toluene, meta-xylene, and trichloroethylene. Priority pollutant metals were only detected in elevated concentrations in the west/southwest portion of the landfill.

Substantially all of the above referenced compounds and substances comprise "Hazardous Materials" as that term is defined in the Lease. The substance of the Report cited above is that both the Premises and the real estate surrounding the Premises are characterized by two factors that trigger the Town's indemnification obligations under the Lease: the presence and migration of Hazardous Materials, and the violation of Environmental Legal Requirements.

RBHE



## III. The Town's Obligation to Indemnify the Tenant

Under the circumstances as defined in the reports referenced in the immediately preceding section, the Town's obligation to indemnify our client for costs incurred as a result of the presence of Hazardous Materials on the Premises and in the surrounding property is comprehensive. Specifically, the Town must, at its sole cost and expense indemnify, defend, exonerate, protect and save harmless the tenant against and from any and all damages, losses, liabilities, obligations, penalties, claims, litigation, demands, defenses, judgments, suits, proceedings, costs, disbursements or expenses of any kind or nature, including, without limitation, attorneys' and experts' fees and disbursements, which may at any time be imposed upon, incurred by or asserted or awarded against the tenant or any other indemnified party and arising from or out of: [a] *any hazardous materials* on, in, *under or affecting*, all or any portion of the Premises on or before the date of the Lease, or which may thereafter affect all or any portion of the Premises, whenever discovered and however caused or from the violation of any Environmental Legal Requirements by the landlord or by any third party or with respect to the Premises existing on or before the date of the Lease or which may exist thereafter, whenever discovered and however caused.

We note that the obligation to indemnify does not depend upon the location of the Hazardous Materials, nor on whether the "Environmental Legal Requirement" pertains to hazardous materials so long as it "pertains to the regulation or protection of the environment or the health and safety of persons or property."

## IV. Limitations on the Town's Right to Contest Indemnification Obligations

The landlord has the right to contest the facts leading to indemnification obligations, provided that its contest meets certain standards set forth in the Lease. The circumstances under which the landlord may contest the claims, demands, levies or assessments under the environmental enforcement actions include:

- The contest will not materially impair the taking of any required remedial action . . . or operate to create a material risk of worsening environmental conditions affecting the Premises and;
- The Town must demonstrate to tenant's satisfaction that the Town has the financial capability to undertake and pay for such contest and any remedial

RBHE



action then or thereafter necessary. This demonstration may include, at the tenant's option, the posting of a bond, letter of credit or cash reserves or collateral sufficient to pay all costs of such contest and any such remedial action.

Based upon, without limitation, the facts and contractual conditions set forth above, and on the rights of the tenant under the Lease, and on behalf of our client, the undersigned hereby demands that the Town comply with the terms of the Lease in the following manner:

1. Immediate indemnification in the amount of One Hundred Fifty Seven Thousand Three Hundred Eighty Six and 62/100ths ($157,386.62) Dollars. This amount includes costs incurred and ascertainable as of today's date, including legal fees, in connection with the management of legal and financial issues arising as a result of the ongoing requirement that our client evaluate and remediate the presence of Hazardous Materials on the Premises described in the Lease, and on the adjacent properties, in the amount of Ninety Five Thousand Seven Hundred Eighty Eight and 45/100ths ($95,788.45) Dollars and costs incurred in connection with the development of such real estate, which was halted due to the presence of violations of Environmental Legal Requirements, in the amount of Sixty One Thousand Five Hundred Ninety Eight and 17/100ths ($61,598.17) Dollars.

2. That the Town immediately demonstrate to the Tenant's satisfaction the Town's financial ability to comply with its obligations under the Lease by posting a bond, with surety, to secure such obligations in the amount of Twenty Four Million Five Hundred Thousand ($24,500,000.00) Dollars. This amount is based on the purchase price of the property adjacent to the Landfill, which property has been contaminated due to the migration of Hazardous Materials from the landfill and further due to the deposition of Hazardous Materials thereon during the course of the management of the landfill by the Town prior to the date of the Lease, as follows:

   A. Approximate value of the real estate surrounding the Landfill: Twelve Million ($12,000,000.00) Dollars

   B. Interest accrued on debt incurred to purchase the real estate surrounding the Landfill: Four Million Five Hundred Thousand

RBHE



($4,500,000.00) Dollars.

C. Estimated value of leasehold interest in Landfill over balance of lease term: Eight Million ($8,000,000.00) Dollars.

We have been directed to take such action as may be necessary or desirable to enforce our client's interest in the Lease and in the Town's obligations within forty (40) days, pursuant to Rhode Island law, if this matter is not resolved to our client's satisfaction in that time.

Please contact the undersigned upon receipt of this correspondence.

Very truly yours,

Stephen H. Burke (mmp)

Stephen H. Burke

cc: Richard P. Sullivan, Acting Town Manager
John Pagliarini, Esq.
Ms. Holly Connors

RBHE
Ratcliffe Burke Harten & Elias LLP
ATTORNEYS AT LAW

March 27, 2006

Thaddeus Jendzejec, President
Coventry Town Council
1670 Flat River Road
Coventry, RI 02816

Justin Pomfret, Member
Coventry Town Council
1670 Flat River Road
Coventry, RI 02816

Frank Hyde, Member
Coventry Town Council
1670 Flat River Road
Coventry, RI 02816

Gregory Laboissonniere, Member
Coventry Town Council
1670 Flat River Road
Coventry, RI 02816

Robert Thibeault, Member
Coventry Town Council
1670 Flat River Road
Coventry, RI 02816

***Re: Rhode Island Department of Envrionmental Management v. Town of Coventry, et al.***

Dear Mr. President and
Members of the Council:

This letter is presented in supplement to my prior correspondence of February 16, 2006, in light of recent developments in the above-referenced federal court action. As you are aware, the Town of Coventry is a defendant in that lawsuit, and has been a defendant therein since the date that the lawsuit was commenced. As you are further aware, certain defendants in that lawsuit, including the Town of Coventry, are engaged in the process of preparing to evaluate the presence of solid and hazardous waste at the Site, as that term is referenced in the documents filed in the lawsuit. The Site includes the former Coventry landfill, and several acres of the surrounding property. The former Coventry landfill is leased to my client pursuant to the lease described in the above-referenced correspondence, and the property surrounding the landfill is owned by my client, and has been the subject of additional deposits of solid and, potentially, hazardous waste, and in any event has been the subject of impact of hazardous waste deposited at the former landfill.

1600 FINANCIAL PLAZA, PROVIDENCE, RHODE ISLAND 02903
TELEPHONE: 401-331-3400 FAX: 401-331-3440
WEB SITE: www.rbhelaw.com

RBHE



The purpose of this correspondence is to notify the Town that the lessee under the lease has been added to the federal litigation as a new defendant, and that the owner of the property surrounding the former Coventry landfill has also been added to the litigation as a defendant. Accordingly, on behalf of the lessee, the undersigned hereby demands, in addition to the demands made in the above-referenced correspondence, that the Town of Coventry indemnify and hold my client harmless from and against any and all damages, including without limitation legal fees, incurred in connection with the defense of the above-referenced lawsuit, or imposed upon my client as a result of any order or judgment entered therein. Please be advised that this letter is being forwarded to you, in part, in compliance with the provisions of R.I. Gen. Laws § 38-2-7(b), which requires that forty (40) days notice of any claim be given to the Town prior to initiating a suit thereon. It is my clients' intention to commence litigation against the Town in the event that the Town fails to respond to the demands in this letter within the time period described in the above-referenced statute.

Please telephone my office if you have any questions or concerns with respect to the above matter.

Very truly yours,

Stephen H. Burke

SHB/mmp

RBHE
Ratcliffe Burke Harten & Elias LLP
ATTORNEYS AT LAW

April 14, 2006

Warren West
Finance Director
Town of Coventry
Coventry Town Hall
1670 Flat River Road
Coventry, RI 02816

***Re: Lease of Coventry Landfill to Commerce Park Associates 9, LLC Dated May 1999***

Dear Mr. West:

This office represents Commerce Park Associates 9, LLC ("CP9"), the tenant under the above-referenced lease ("Lease") with the Town of Coventry ("Town"). Reference is made to my correspondence concerning the Lease dated February 15, 2006 and March 27, 2006. That correspondence pertains to the Town's obligation to indemnify CP9 for costs, including attorneys' fees, incurred in connection with (among other things) the defense of any litigation arising as a result of the presence or alleged presence of hazardous materials or the existence of environmental violations on the property subject to the lease or the property adjacent thereto.

We have attached copies of this firm's most recent invoices for services rendered to our client in connection with such matters, with certain portions redacted to protect our client's privacy or which pertain to privileged matters. These invoices pertain to ongoing litigation with the State of Rhode Island and associated "potentially responsible parties" in the litigation now pending in United States District Court for the District of Rhode Island regarding the Coventry Town Dump, which is the leased premises described in the Lease.

Also, these invoices pertain to litigation pending in Rhode Island Superior Court with the Town, arising as a result of the disposition of hazardous and solid waste by the Town, and by others with the permission of the Town, on the land surrounding the leased premises

On behalf of our client, we request that these invoices be paid directly to this office at your earliest convenience.

1600 FINANCIAL PLAZA. PROVIDENCE, RHODE ISLAND 02903
TELEPHONE: 401-331-3400 FAX: 401-331-3440
WEB SITE: www.rbhelaw.com

RBHE

Warren West
April 14, 2006
Page 2

In light of the ongoing nature of both of these cases, we have enclosed for your review a copy of our usual form of retainer agreement, with certain portions redacted to protect our client's privacy. CP9 requests that the Town retain this firm as CP9's counsel in these matters, at the Town's cost. Please advise as to the Town's position with respect to this request, and contact my office to discuss the information which has been redacted from the form retainer agreement.

I look forward to hearing from you.

Very truly yours,

Stephen H Burke

SHB/mmp
Enclosures

cc:

Mr. Thaddeus Jendzejec
Mr. Frank Hyde
Mr Robert Thibeault, Jr.
Mr. Justin Pomfret
Mr Gregory Laboissonniere
Patrick Sullivan, Esq.

1600 FINANCIAL PLAZA, PROVIDENCE, RHODE ISLAND 02903
TELEPHONE: 401-331-3400 FAX: 401-331-3440
WEB SITE: www rbhelaw com

RBHE
Ratcliffe Burke Harten & Elias LLP
ATTORNEYS AT LAW

May 8, 2006

Moody's Investor's Service
99 Church Street
New York, NY 10007

Standard & Poors
225 Franklin Street, 15th Floor
Boston, MA 02110-2804

***Re:*** ***Commerce Park Associates 9, LLC v. Town of Coventry, Rhode Island***

Dear Sirs:

This office represents Commerce Park Associates, 9 LLC, a Rhode Island limited liability company. Our client is the tenant under a lease with the Town of Coventry, Rhode Island whereby it lease certain property from the Town generally described as the "Coventry Landfill."

As the tenant under that lease, our client has certain rights to indemnification for costs and liabilities associated with environmental violations, including hazardous waste violations, located on or affecting the Coventry Landfill. State and local authorities have alleged, in ongoing litigation, that such violations exist.

Our client has demanded both indemnification from the Town for costs and liabilities incurred to date, and security for future indemnification obligations in the amount of Twenty Four Million Five Hundred Thousand and 00/100 Dollars ($24,500,000.00).

At our client's request, we are forwarding copies of our demands to the Town of Coventry concerning this matter for your consideration.

Very truly yours,

Stephen H. Burke

SHB/mmp
Enclosure

cc: Mr. Nicholas Cambio

1600 FINANCIAL PLAZA, PROVIDENCE, RHODE ISLAND 02903
TELEPHONE: 401-331-3400 FAX: 401-331-3440
WEB SITE: www.rbhelaw.com

STATE OF RHODE ISLAND
KENT, SC

SUPERIOR COURT

INTERSTATE OPTIONS, LLC,
COMMERCE PARK REALTY, LLC, and
COMMERCE PARK ASSOCIATES 9,
LLC,
Plaintiffs,

v.

A. CARDI REALTY ASSOCIATES,
A. CARDI REALTY CO., INC.,
ARNOLD ROAD REALTY, LLC,
CARDI CORPORATION,
ANTONIO B. CARDI, and STEPHEN
A. CARDI,
Defendants.

v.

FRANCIS A. FROBEL, in his official
Capacity as Acting Treasurer of the
Town of Coventry,
Third-Party Defendant.

C.A. No. KC 02-303

**FIRST AMENDED COMPLAINT**

**Parties**

1. Plaintiff Commerce Park Realty, LLC ("Commerce Park Realty") is a limited liability company organized and existing under the laws of the State of Rhode Island, with a principal place of business located at 207 Quaker Lane, West Warwick, Rhode Island.

2. Plaintiff Interstate Options, LLC ("Interstate") is a limited liability company organized and existing under the laws of the State of Rhode Island, with a principal place of business located at 207 Quaker Lane, West Warwick, Rhode Island.

3. Plaintiff Commerce Park Associates 9, LLC ("Commerce Park Associates") is a limited liability company organized and existing under the laws of the State of Rhode Island, with a principal place of business located at 207 Quaker Lane, West Warwick, Rhode Island.

4. Commerce Park Realty, Commerce Park Associates, and Interstate shall be collectively referred to herein as "Plaintiffs."

5. Upon information and belief, Defendant A. Cardi Realty Associates ("A. Cardi") is a Rhode Island general partnership, with a principal place of business located at 400 Lincoln Avenue, Warwick, Rhode Island.

6. Upon information and belief, Defendant A. Cardi Realty Co., Inc. ("A. Cardi Realty Co.") is a Rhode Island business with a principal place of business located at 400 Lincoln Avenue, Warwick, Rhode Island.

7. Upon information and belief, Defendant Arnold Road Realty, LLC ("Arnold Road") is a Rhode Island business with a principal place of business located at 400 Lincoln Avenue, Warwick, Rhode Island.

8. Upon information and belief, Defendant Cardi Corporation ("Cardi Corp.") is a Rhode Island business with a principal place of business located at 400 Lincoln Avenue, Warwick, Rhode Island.

9. Upon information and belief, Defendant Antonio B. Cardi ("Antonio Cardi") is an individual residing at 88 Varnum Drive, East Greenwich, Rhode Island.

10. Upon information and belief, Defendant Stephen A. Cardi ("Stephen Cardi") is an individual residing at 25 Devon Court, East Greenwich, Rhode Island.

11. A. Cardi, A. Cardi Realty Co., Arnold Road, Cardi Corp., Antonio Cardi, and Stephen Cardi shall be collectively referred to herein as "the Cardi Defendants."

12. Upon information and belief, Third-Party Defendant Town of Coventry (the "Town") is a municipal corporation in the State of Rhode Island.

13. Plaintiffs' claims against the Town are brought against the Town by and through its Treasurer/Finance Director, Maryellen Shardlow, pursuant to R.I.G.L. § 45-15-1 et. seq.

14. On or about August 7, 2002, Plaintiffs provided notice to the Town, pursuant to R.I.G.L. § 45-15-5, by certified mail, return receipt requested, of their claims against the Town and its agents. To date, Plaintiffs have received no answer in response to Plaintiffs' claims, and the Town has offered no compensation.

15. Defendants have sufficient minimum contacts with the State of Rhode Island such that they are subject to the jurisdiction of this Honorable Court.

16. The matter in controversy is sufficient to meet the jurisdictional limits of this Court.

**Facts**

17. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

18. Commerce Park Realty is in the business of commercial real estate development.

19. Interstate is in the business of commercial real estate development.

20. Commerce Park Associates is in the business of commercial real estate development, purchasing, and sales.

21. Upon information and belief, A. Cardi is in the real estate business.

22. Upon information and belief, A. Cardi Realty Co. is in the real estate business.

23. Upon information and belief, Arnold Road is in the real estate business.

24. Upon information and belief, Cardi Corp. is in the business of construction.

25. Upon information and belief, Antonio Cardi was at all material times hereto an owner, principal, officer, employee, and/or agent of A. Cardi, A. Cardi Realty Co., Cardi Corp., and Arnold Road.

26. Upon information and belief, Stephen Cardi was at all material times hereto an owner, principal, officer, employee, and/or agent of A. Cardi, A. Cardi Realty Co., Cardi Corp., and Arnold Road.

27. Upon information and belief, A. Cardi Realty Co. is the manager of Arnold Road.

28. Upon information and belief, Antonio Cardi and Stephen Cardi are general partners of A. Cardi.

29. On or about December 1, 1997, Interstate and A. Cardi entered into an agreement whereby Interstate acquired an option to purchase property owned by A. Cardi Realty Co. (the "Option Agreement").

30. The aforementioned parcel of property is comprised of approximately thirty-nine (39) acres located in Coventry, Rhode Island (the "Cardi Property").

31. Upon information and belief, from in or about 1954 until in or about 1975, the Cardi Defendants, their predecessors in interest, and/or alter egos, as well as the Town, allowed waste to be dumped at the Cardi Property.

32. During said time period, the Cardi Defendants, their predecessors in interest, and/or alter egos, as well as the Town, concealed, moved, altered, affected, and/or otherwise disposed of waste at the Cardi Property.

33. Despite Defendants' knowledge of the existence of said waste, Defendants misrepresented to Plaintiffs that the Cardi Property was of good quality and condition.

34. The Cardi Defendants failed to deliver a written disclosure to Plaintiffs in compliance with R.I.G.L. § 5-20.8-2, and failed to advise Plaintiffs of the existence of defects at the Property, including the existence of the aforesaid buried waste.

35. In or about January 2000, A. Cardi Realty Co., Inc. transferred the Property to its affiliate and/or alter ego, Arnold Road.

36. Despite reasonable diligence by Plaintiffs prior to the execution of the Option Agreement and prior to the exercise of the Option Agreement, Plaintiffs were unaware of the existence of said buried waste at the Cardi Property.

37. In or about March 2000, Commerce Park Realty purchased the Cardi Property from Arnold Road for Four Million and 00/100 Dollars ($4,000,000.00).

38. Commerce Park Realty's purchase of the Cardi Property was part of an overall development scheme by Plaintiffs and their affiliates regarding the Cardi Property and the surrounding parcels of property.

39. Subsequent to the purchase of the Cardi Property, and after Plaintiffs had expended significant time, resources, and monies concerning the development of the Cardi Property, Plaintiffs discovered the waste buried at the Cardi Property.

40. Due to the existence of the waste buried at the Cardi Property, the Cardi Property is valueless, worth significantly less than the amount paid by Commerce Park Realty for the Cardi Property, in need of clean-up and other restoration, and/or a significant liability.

41. In or about May 1999, Commerce Park Associates entered into a lease agreement with the Town (the "Lease Agreement") with respect to a certain parcel of land (the "Town Property") located adjacent to the Cardi Property.

42. The Town Property constitutes the former Town of Coventry Municipal Landfill.

43. The Lease Agreement included an Environmental Indemnification Clause (the "Indemnification Clause").

44. Pursuant to said Indemnification Clause, the Town covenants and decrees that it will indemnify Commerce Park Associates and its affiliates, including Interstate and Commerce Park Realty (each an "Indemnified Party"), for expenses of any kind arising out of the existence of waste at or emanating from the Town Property.

45. The Town failed to comply with the terms of the Lease Agreement, including, but not limited to, (a) failing to take action to cure and/or eliminate violations concerning environmental legal requirements and/or hazardous materials, (b) failing to prevent and/or remedy the migration of hazardous materials, and (c) failing to indemnify

Plaintiffs for their expenses arising out of the existence of waste and/or hazardous materials.

46. Commerce Park Realty's purchase of the Cardi Property and Commerce Park Associates' lease of the Town Property was part of an overall development scheme by Plaintiffs and their affiliates regarding the Cardi Property, the Town Property, and the surrounding parcels of property, which development was highly encouraged by the Town.

47. The Town made express representations to Plaintiffs (a) concerning the condition of the Cardi Property, including that said parcel was of good quality and condition, and (b) concerning its commitment to fulfilling its obligations under the Lease Agreement and Indemnification Clause.

48. Upon information and belief, there currently exist hazardous materials and other waste at the Town Property and/or the Cardi Property, which Plaintiffs have reason to believe constitute or may reasonably be expected to constitute or contribute to a danger or hazard to public health, safety or welfare, and/or to the environment.

49. The Rhode Island Department of Environmental Management has identified the Cardi Property and the Town Property as containing hazardous materials and other waste, and demanded the necessary and proper cleanup thereof.

50. The Cardi Defendants and the Town have wrongfully refused to take action to remedy the issues with the Cardi Property and the Town Property.

**COUNT I**
**(Fraudulent Misrepresentation and Deceit)**
**Cardi Defendants**

51. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

52. Prior to entering into the Option Agreement, and at all times thereafter, the Cardi Defendants represented to Plaintiffs that the Cardi Property was of good quality and condition.

53. The Cardi Defendants made false representations regarding the condition of the Cardi Property; namely, the Cardi Defendants represented to Plaintiffs that the Cardi Property was of good quality and condition.

54. The Cardi Defendants knew, or should have known, that their representations were false.

55. The Cardi Defendants knew, or should have known, that Plaintiffs would rely upon said representations.

56. The Cardi Defendants intended to deceive Plaintiffs by inducing Plaintiffs to rely upon their false representations in entering into the Option Agreement and in purchasing the Cardi Property.

57. Plaintiffs did in fact rely upon the Cardi Defendants' false representations.

58. Plaintiffs' reliance on the Cardi Defendants' false representations was reasonable under the circumstances.

59. Plaintiffs have suffered, and will continue to suffer, significant losses as a direct and proximate result of the Cardi Defendants' false representations, including, but not limited to, loss of profit.

60. The above-stated egregious misconduct by the Cardi Defendants was of such malice, wantonness, and/or willfulness and of such an extreme nature, which for the good of society and as a warning to individuals ought to be punished by an award of punitive damages to Plaintiffs.

61. The Cardi Defendants' misconduct requires deterrence and punishment over and above that provided by an award of compensatory damages to Plaintiffs.

**COUNT II**
**(Declaratory Relief)**
**The Town**

62. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

63. The Town is aware of the presence and release of waste materials, including hazardous waste, at the Cardi Property and the Town Property.

64. Pursuant to the terms of the Lease Agreement, the Town is required to immediately initiate and complete the necessary and adequate containment and removal of the waste materials at the Cardi Property and the Town Property.

65. Pursuant to the terms of the Lease Agreement, the Town is required to indemnify Plaintiffs for expenses arising out of the existence of hazardous materials and waste at the Cardi Property and the Town Property.

66. The Town has refused to comply with all of the terms of the Lease Agreement.

67. Plaintiffs are entitled to judgment declaring that the Town, pursuant to the Uniform Declaratory Judgment Act, §§ 9-30-1, et seq., of the Rhode Island General Laws

as well as the plain terms of the Lease Agreement, immediately undertake and complete the necessary remediation of the waste materials, including cleanup of all waste located at the Cardi Property, as well as the Town Property.

**COUNT III**
**(Breach of Contract)**
**The Town**

68. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

69. Plaintiffs have complied with R.I.G.L. § 45-15-5.

70. Plaintiffs have at all material times hereto satisfied the terms of the Lease Agreement with the Town.

71. The Town has failed, without justification in law or in fact, to tender performance as required by the Lease Agreement.

72. As a direct and proximate result of the Town's breach of the Lease Agreement, Plaintiffs have suffered and will continue to suffer severe and substantial damages.

**COUNT IV**
**(Fraudulent Misrepresentation and Deceit)**
**The Town**

73. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

74. Prior to Plaintiffs entering into the Option Agreement, and acquiring the Cardi Property, and at all times thereafter, the Town represented to Plaintiffs that the Cardi Property was of good quality and condition.

75. The Town made false representations regarding the condition of the Cardi Property; namely, the Town represented to Plaintiffs that the Cardi Property was of good quality and condition.

76. The Town represented to Plaintiffs that it would comply with the provisions of the Lease Agreement, and/or otherwise remedy all issues related to the existence of waste at the Town Property and surrounding parcels, including the Cardi Property.

77. The Town knew, or should have known, that their representations were false.

78. The Town knew, or should have known, that Plaintiffs would rely upon said representations.

79. The Town intended to deceive Plaintiffs by inducing Plaintiffs to rely upon their false representations in entering into the Option Agreement, purchasing the Cardi Property, improving the Cardi Property, and entering into the Lease Agreement.

80. Plaintiffs did in fact rely upon the Town's false representations.

81. Plaintiffs' reliance on the Town's false representations was reasonable under the circumstances.

82. Plaintiffs have suffered, and will continue to suffer, significant losses as a direct and proximate result of the Town's false representations, including, but not limited to, loss of profit.

**COUNT V**
**(Tortious Interference With Contractual and Prospective Contractual Relations)**
**The Town**

83. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

84. Plaintiffs entered into contractual relationships with third parties, including, but not limited to, financial institutions and contractors, with respect to the financing and development of the Cardi Property and the Town Property.

85. Plaintiffs expected to pursue contractual business relations with third parties with respect to the Cardi Property and the Town Property.

86. The Town knew, or should have known, of Plaintiffs' contractual and prospective contractual business relations.

87. The Town interfered with Plaintiffs' contractual and prospective contractual business relations by, among other things, inducing Plaintiffs to acquire the Cardi Property, and to develop the Cardi Property, as well as the Town Property.

88. The Town's actions were a direct and proximate cause of Plaintiffs' inability to perform their respective duties under the above-mentioned contracts, and Plaintiffs' inability to enter into prospective contractual business relations.

89. As a direct and proximate result of the Town's actions, Plaintiff suffered damages for which the Town's interference is a legal cause.

**COUNT VI**
**(Continuing Trespass)**
**The Town and the Cardi Defendants**

90. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

91. The Town, as owner of the Town Property, was and is under a duty to ensure that all waste, including hazardous waste, is appropriately deposited and contained within the confines of the Town Property boundaries.

92. The Cardi Defendants, as owner of the Cardi Property, were and are under a duty to ensure that all waste, including hazardous waste, is appropriately deposited and contained within the confines of the Town Property boundaries.

93. The Town and the Cardi Defendants caused and/or permitted waste to be deposited at the Cardi Property, and/or to migrate and/or "spill over" from the Town Property onto the Cardi Property.

94. The Town and the Cardi Defendants are responsible for the aforesaid wrongful depositing, migration, and or "spilling over" of waste at the Cardi Property.

95. The Town and the Cardi Defendants have failed to remediate and/or remove the waste at the Cardi Property.

96. The depositing, migration, and/or "spilling over" of waste onto the Cardi Property has interfered with the legal rights of Plaintiffs.

97. As a direct and proximate result of the aforesaid misconduct, Plaintiffs have suffered and will continue to suffer severe and substantial damages.

**COUNT VII**
**(Public Nuisance)**
**The Town and the Cardi Defendants**

98. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

99. The Town, as owner of the Town Property, was and is under a duty to ensure that waste, including hazardous waste, was and is appropriately deposited and/or prevented from migrating beyond the confines of the Town Property boundaries.

100. The Cardi Defendants, as owner of the Cardi Property, were and are under a duty to ensure that the waste is appropriately deposited and contained within the confines of the Town Property boundaries.

101. The Town and the Cardi Defendants have permitted the depositing and migration of waste from the Town Property and the Cardi Property, which has significantly interfered with the public health, safety, peace and comfort of Plaintiffs and other residents of the Town of Coventry.

102. The Town and the Cardi Defendants have unreasonably interfered with a right common to all members of the general public, including Plaintiffs, namely, the right to use and enjoy their respective property, water, and other natural resources.

103. Such conduct by the Town and the Cardi Defendants are of a continuing nature.

104. As a direct and proximate result of the aforesaid conduct, Plaintiffs have suffered and will continue to suffer severe and substantial damages.

**COUNT VIII**
**(Private Nuisance)**
**The Town and the Cardi Defendants**

105. Plaintiffs repeat, reallege, and incorporate by reference herein each and every allegation herein pleaded.

106. The Town, as owner of the Town Property, was and is under a duty to ensure that waste, including hazardous waste, is appropriately deposited and contained within the confines of the Town Property boundaries.

107. The Cardi Defendants, as owner of the Cardi Property, were and are under a duty to ensure that the waste is appropriately deposited and contained within the confines of the Town Property boundaries.

108. The Town and the Cardi Defendants caused waste to be deposited and/or to migrate and/or "spill over" from the Town Property onto the Cardi Property.

109. The wrongful depositing, migration, and/or "spilling over" of waste has materially interfered with the ordinary physical comfort and the reasonable use of Plaintiffs' property, including the Cardi Property.

110. The Town and the Cardi Defendants have wrongfully used the Town Property, as well as the Cardi Property, in such a manner as to interfere with the use and enjoyment of Plaintiffs' property, including the Cardi Property.

111. As a direct and proximate result of the Town's and the Cardi Defendants' wrongful use of the Town Property, as well as the Cardi Property, Plaintiffs have suffered and will continue to suffer severe and substantial damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

1. Grant judgment in favor of Plaintiffs and against Defendants on each and every Count contained in Plaintiffs' Complaint;

2. Order the Cardi Defendants and/or the Town immediately to initiate and complete the necessary and proper cleanup of the Cardi Property;

3. Order the Town immediately to initiate and complete the necessary and proper cleanup of the Town Property;

4. Award Plaintiffs their attorney's fees, costs, and interest; and

5. Grant such other relief as this Court deems just and proper.

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY, AND DESIGNATE BRIAN LaPLANTE, ESQ. AS TRIAL COUNSEL.**

Plaintiffs,
By their Attorneys,

Brian LaPlante, Esq./#5861
Christopher D. DiSano, Esq./#6783
Carrara LaPlante Dayian & Sowa, L.L.P.
67 Cedar Street, Suite 102
Providence, RI 02903
(401) 421-8884 (telephone)
(401) 421-8885 (facsimile)

DATED: 2/24/04

**CERTIFICATION**

Anthony F. Muri, Esquire
Goldenberg & Muri, LLP
10 Weybosset Street
Providence, RI 02903

Patrick J. Sullivan, Esquire
475 Tiogue Avenue
Coventry, RI 02816

I hereby certify that on this 24th day of February, 2004, I caused a true and accurate copy of the within *First Amended Complaint* to be sent via first-class mail, postage pre-paid, to the above-listed attorneys.

Kelly J. Boulin

# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND, by and through the RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Plaintiff, | |
| vs. | C.A. No. 05-346T-LDA |
| TOWN OF COVENTRY, et al., Defendants. | |

**AFFIDAVIT OF PETER M. SCOTTI**

I, Peter M. Scotti, being duly sworn, upon oath, deposes and says as follows:

1. I am the President of Peter M. Scotti and Associates, Inc., a Rhode Island Certified General Licensed Real Estate Appraiser, and I have personal knowledge of the facts set forth in this Affidavit.

2. I founded Peter Scotti & Associates in 1988.

3. I have been engaged in the real estate business for over thirty (30) years.

4. I am a licensed real estate appraiser in Rhode Island and Massachusetts.

5. I have testified as an expert witness in both federal and state courts.

6. I have taught courses in real estate appraisal at the University of Rhode Island.

7. I have personally viewed the former Town of Coventry Landfill located on Arnold Road in Coventry, Rhode Island (the "Landfill Property"), and the property that abuts the Landfill Property (the "Adjacent Property"), incidental to providing an analysis of value concerning such properties.

8. I have reviewed documents concerning the hazardous waste and other pollutants that were allegedly dumped at the Landfill Property and the Adjacent Property.

9. It is my understanding that the nature and extent of the dumping on the Landfill Property and the Adjacent Property has not been fully analyzed.

10. It is my understanding that there is neither an established plan concerning the nature and scope of the remediation of the Landfill Property and the Adjacent Property, nor any reliable estimate of the costs associated with such remediation.

11. Based upon my experience, and the aforementioned facts, neither I, nor any other appraiser, is capable of providing a reliable estimate of the market value for the Landfill Property and the Adjacent Property until (a) the nature and extent of the dumping on the Landfill and Adjacent Property is confirmed, (b) the nature and scope of the remediation plan is confirmed, and (c) the cost of the clean up is quantified.

12. Based upon my experience, and the aforementioned facts, neither I, nor any other appraiser, is capable of providing a reliable estimate of the market value for the Landfill Property and the Adjacent Property to a reasonable degree of certainty until the costs of remediation are ascertainable, which determination is inherently dependent upon clarification of the nature and scope of the remediation to be performed.

____________________________
Peter M. Scotti

Sworn and subscribed to before me at Providence, RI this 13th day of April, 2007.

____________________________
Notary Public

Erin J. Kelly
NOTARY PUBLIC
State of Rhode Island
My Commission Expires 11/30/09

# EXHIBIT G

ADLER POLLOCK & SHEEHAN P.C.

One Citizens Plaza, 8th floor
Providence, RI 02903-1345
Telephone 401-274-7200
Fax 401-751-0604 / 351-4607

175 Federal Street
Boston, MA 02110-2210
Telephone 617-482-0600
Fax 617-482-0604

www.apslaw.com

January 2, 2007

**VIA EMAIL AND REGULAR MAIL**

Richard H. James, Esq.
Universal Properties Group, LLC
207 Quaker Lane, Suite 300
West Warwick, RI 02893

Re: RIDEM v. The Town of Coventry, et al, No. 05-346T-LDA

Dear Mr. James:

As you are aware, Magistrate Judge Almond refused my request for a Discovery Conference in the above-referenced matter and has insisted that Coventry raise its concerns regarding the failure of Commerce Park Realty, LLC ("CPR") and Commerce Park Associates 9, LLC ("CPA9") to comply with the court's December 8, 2006 Order by way of a second Rule 37 motion. Accordingly, I request that you contact me by no later than January 9, 2007 to meet and confer in an attempt to resolve or narrow the scope of the dispute.

I have articulated my concerns to you in a letter dated November 9, 2006, the Motion to Compel, and several emails on various dates, most recently December 22, 2006. I do not believe that CRP and CPA9's supplemental interrogatory responses addressed any of my concerns. Moreover, CRP and CPA9 did not either supplement their response to Coventry's document request or produce any additional documents. The failure to produce additional documents is particularly egregious in light of the fact that you: 1) have informed me that you have certain environmental reports and asked my permission for you to produce them in electronic format, and 2) have identified certain "accounts receivable" documents in your interrogatory responses, which I requested in writing that you copy and send to me.

If I do not hear from you on or before January 9, 2007, I will bring an appropriate motion under Rule 37.

Very truly yours,

GEOFFREY W. MILLSOM
GWM:sjt

cc: Elizabeth McDonough Noonan, Esq.
Patrick J. Sullivan, Esq.

403560_1.doc