UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND, DEPT. OF ENVIRONMENTAL MANAGEMENT,<br><br>*Plaintiff,*<br><br>vs.<br><br>TOWN OF COVENTRY, RHODE ISLAND, et al.,<br><br>*Defendants.* | C.A. No. 05-346 T |

**DEFENDANT/CROSS-CLAIM DEFENDANT'S PRETRIAL MEMORANDUM**

## I. PARTIES

| | |
|---|---|
| Cross-Claim Plaintiffs: | Commerce Park Realty, LLC and Commerce Park Associates 9, LLC |
| Plaintiffs' Attorney: | Brian LaPlante, Esq., LAPLANTE SOWA GOLDMAN 67 Cedar Street, Suite 102, Providence, RI 02903 |
| Cross-Claim Defendant: | Town of Coventry |
| Defendant's Attorneys: | Geoffrey W. Millsom, Esq., and Elizabeth McDonough Noonan, Esq., ADLER POLLOCK & SHEEHAN P.C. One Citizens Plaza, 8th Floor, Providence, RI 02903 |
| | Michael A. DeSisto, Esq., 211 Angell Street, P.O. Box 2563, Providence, RI 02906 |
| | Patrick J. Sullivan, Esq., 505 Tiogue Avenue, Suite B, Coventry, RI 02816 |

## II. FACTS

On August 16, 2005, the State of Rhode Island by and through the Rhode Island Department of Environmental Management ("RIDEM") filed the instant lawsuit. RIDEM filed this lawsuit pursuant to the Comprehensive Environment Response,

Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq. to address the alleged presence of hazardous materials at the site of the former Coventry Landfill ("Landfill") and surrounding properties ("Cardi Property") (collectively "Site"). The lawsuit named fourteen (14) parties as defendants including the Town of Coventry (the "Town"). Cross-claim Plaintiffs, Commerce Park Realty Associates, LLC and Commerce Park Associates 9, LLC (hereinafter, "CPR" and CPA9", respectively and collectively, "Plaintiffs") were not parties in the initial Complaint. However, that changed when Plaintiffs refused the Town and the other named defendants access to the Site.

Contemporaneously with the filing of the Complaint, the named defendants entered into a Partial Consent Decree with RIDEM to conduct an environmental remedial investigation/feasibility study at the Site. (Document 11) The Site was under the control of Plaintiffs. In accordance with the Decree, the Town and defendants requested permission to access the Landfill and the Site from Plaintiffs. In May of 1999, Plaintiff CPA-9 and the Town of Coventry entered into a Net Ground Lease ("Lease") for the Landfill. The Cardi Property was owned by CPRA. Plaintiffs refused defendants access to the Landfill and the Cardi Property.

Therefore, to facilitate access, RIDEM amended its Complaint to include Plaintiffs as Defendants in the lawsuit. (Document 14) RIDEM filed a motion requesting access to the Site to allow it and defendants access to the Property to perform the environmental remedial investigation/feasibility study at the Site (Document 17). As a result of CPA9's unreasonable denial of access to the leased property, the Town

terminated the Lease pursuant to its terms and provided CPA9 with the contractually required notice of the termination.

Plaintiffs eventually agreed to allow the Town and defendants access to the Site. In their Answer to the Amended Complaint (Document 25), Plaintiffs asserted a cross-claim against the Town for contribution under CERCLA and three other cross-claims on various state law theories of liability. One of these state law cross-claims (common law contribution was dismissed by the Court. (Document 50) The Court has scheduled the remaining three state law cross-claims for a bench trial on the question of liability only.

## III. CLAIMS AND DEFENSES

Plaintiffs remaining state law cross-claims are for contractual indemnification (Count I), breach of warranty (Count II) and misrepresentation (Count III).

The Town has three principal defenses to Plaintiffs' contract claims. First, the predicate to Plaintiffs' contractual indemnification and breach of warranty claims, the Net Ground Lease ("Lease"), is void *ab initio* for lack of mutuality of obligation, unconscionability and under the doctrine of *ultra vires*. Second, even if the Lease had been valid, it is no longer enforceable by virtue of Plaintiff CPA9's own breaches. CPA9 breached the Lease by failing to ever pay the specified rent, which constitutes a failure of consideration and voids the Town's obligations under the Lease. CPA9 also refused to permit the Town and the other settling defendants access to the Landfill to ascertain whether hazardous materials are present on the property, which was a breach of the covenant of good faith and fair dealing that is implied in the Lease. Third, the Town has not breached the indemnification provision of the Lease, but rather has acted appropriately by signing the Consent Decree and joining the other settling defendants in

funding a Remedial Investigation/Feasibility Study of the leased property and some adjacent land.

With respect to their misrepresentation claims, Plaintiffs' claims are, at this point inscrutable and the Town is unable to anticipate Plaintiffs' proof. Accordingly, the Town simply denies that it ever made any false representations about the condition of the Site and that Plaintiffs ever relied to their detriment on any representations of the Town.

## IV. LEGAL AND EVIDENTIARY ISSUES

1. Is the Lease void *ab initio* for lack of mutuality of obligation, unconscionability and/or *ultra vires*?

2. Is the Lease void and/or unenforceable as a result of a failure of consideration?

3. Is the Lease void and/or unenforceable as a result of CPA9's breach of the implied covenant of good faith and fair dealing?

4. Did the Town validly terminate the Lease pursuant to its terms?

5. Has the Town's cooperation with RIDEM and participation in and funding of the Remedial Investigation/Feasibility Study satisfied any "indemnification" obligations that presently exist in the event the Lease is enforceable?

6. An evidentiary issue exists concerning the admissibility of the Lease. Plaintiff was unable, in discovery, to produce a full, complete and authentic copy of the Lease including all exhibits. The Town will object at trial to the admission of the Lease as produced in discovery, because the exhibits are essential elements of the Lease and relevant to Plaintiffs' claims against the Town.

## V. ARGUMENT

### A. CPA9 CANNOT SATISFY ITS BURDEN OF PROVING THE ELEMENTS OF ITS CONTRACT CLAIMS

The elements of a breach of contract claim are: "(1) the existence of a valid and binding contract; (2) that plaintiff has complied with the contract and performed his own obligations under it; and (3) breach of the contract causing damages." *Persson v. Scotia Prince Cruises, Ltd.*, 330 F.3d 28, 35 (1st Cir. 2003) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1235, at 268-70 (2d ed. 2002); *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996). The evidence that will be presented at trial will show that each of these elements is missing in this case.

#### 1. THE EVIDENCE WILL DEMONSTRATE THAT THE LEASE IS VOID AND UNENFORCEABLE

"The law requires mutuality of obligation as a prerequisite to a binding bilateral contract." *Crellin Technologies v. Equipmentlease Corp.*, 18 F.3d 1, 7 (1st Cir. 1994). In order to show this mutuality, both parties to the contract must be legally bound through the making of reciprocal promises. *Id*. Further, "[a] fundamental requisite to a contract that can be enforced by a court is an exchange of legal consideration by the parties." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 182 F.R.D. 386, 397 (D.R.I. 1998). Cancellation or rescission of a contract is warranted where an entire failure of consideration occurs or where the inadequacy of consideration is so glaring as to shock the conscience of the court. *Turner v. Domestic Investment and Loan Corporation*, 375 A.2d 956, 959 (R.I. 1977). In the instant case, the Lease is so one-sided and so lacking in

reciprocal promises by Plaintiff that, as a matter of law, it cannot be upheld and must be rescinded.

In the Lease, CPA9 received use of approximately 10 acres of land adjacent to several large parcels of land undergoing significant commercial development for a total of 275[1] years. CPA9 further received an extraordinarily broad and far-reaching indemnification for the leased property that they now claim requires the Town to, *inter alia*, fund their litigation against a neighboring property owner from whom they acquired adjacent land *after* entering into the Lease. The Lease also provided CPA9 the option to purchase the entire 10 acre parcel at the conclusion of the 275 years for the total sum of $1. In return the Town received rent in the amount of $1 per year (which, as it turns out, CPA9 never even paid). The Lease imposes no other obligations on Plaintiff.

This is not a fair bargain. The Town provided a very valuable parcel of land along with some onerous indemnification obligations in return for practically nothing. As a result the Lease is unconscionable and void for lack of mutuality of obligation under Rhode Island law. Moreover, by agreeing to essentially "give" this property away to CPA9 and not get anything in return – not even a promise to develop the property – the Town Council exceeded the powers vested in them by law. As such their agreement to the alleged terms of the Lease was *ultra vires* and cannot be enforced.

---

[1] The initial term of the Lease is 25 years with Plaintiff having 10 consecutive renewal options, each in the amount of 25 years.

2. THE EVIDENCE WILL SHOW THAT CPA9 DID NOT FULFILL ITS OBLIGATIONS UNDER THE LEASE

Plaintiff breached the Lease first by failing to pay rent and then by refusing to allow the Town access to the Landfill to conduct environmental testing. The first breach constitutes a failure of consideration and the second is a breach of the covenant of good faith and fair dealing that is implied into the Lease under Rhode Island law. Both render the Lease void and unenforceable. *Women's Development Corporation v. City of Central Falls*, 764 A.2d 151, 158 (R.I. 2001) ("A party's material breach of contract justifies the nonbreaching party's subsequent nonperformance of its contractual obligations.").

a. Failure of Consideration

The contractual defense of failure of consideration arises when the party seeking to enforce the contract has failed to perform its own obligations. *Restatement (Second) of Contracts* § 237 (1981).[2] Where a failure of consideration occurs, a contract is rendered unenforceable. *Id*. Stated otherwise: "the party first in default under a bilateral contract cannot recover for the subsequent failure of the other party to perform." 14 *Williston on Contracts* § 43.5 (4th ed. 2006).

The evidence presented at trial will show that CPA9's never paid the $1 per year rent recited in the Lease – a fact that CPA9 has recently tacitly admitted and attempted –

2 The defense of failure of consideration is different – and must be distinguished from – the defense of lack of consideration, which is also at issue in this case. *Haft v. Dart Group Corp*., 841 F. Supp. 549, 573 n.30 (D. Del. 1993) ("There is a distinction between lack of consideration and failure of consideration."). When consideration is lacking in the formation of the contract, a putative contract is void *ab initio*. *Crellin Technologies*, 18 F.3d at 7. On the other hand, when the contract reflects a mutuality of obligation, but one party fails to perform, the contract becomes unenforceable due to a failure of consideration. *Restatement (Second) of Contracts* § 237 (1981). For this reason, some commentators refer to the defense of failure of consideration as "failure of performance." *Restatement (Second) of Contracts* § 237, cmt ("What is sometimes referred to as "failure of consideration" by courts and statutes (e.g., Uniform Commercial Code § 3- 408) is referred to in this Restatement as "failure of performance" to avoid confusion with the absence of consideration.").

unsuccessfully – to rectify. CPA9's abject failure to perform the only act required of it under the contract, an act (paying rent) that is material and at the very essence of the lease bargain, constitutes a failure of consideration and precludes its claims for breach of warranty and indemnification.

b. Breach Of The Implied Covenant

Every contract in Rhode Island contains an implied covenant of good faith and fair dealing between the parties. *Crellin Technologies, Inc.*, 18 F.3d at 10. "This implied covenant exists between the parties to a contract so that contractual objectives may be achieved. *Ide Farm & Stable, Inc. v. Cardi,* 110 R.I. 735, 739, 297 A.2d 643, 645 (1972). A breach of the implied covenant of good faith and fair dealing by one party to a contract provides the other party with the right to terminate the contract. *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 10-11 (1st Cir. 2000) ("every enforceable contract involves a bargained-for exchange of obligations, the material breach of which by one party gives the other party a right to terminate")

The evidence will show that Plaintiffs denied the Town and the other settling defendants access to the former landfill property (and the adjacent property) for the purpose of investigating and remediating contamination in conjunction with RIDEM. In so doing, CPA9 frustrated the Town's ability to provide the very indemnification of which it complains in this litigation, which, it alleges, was a material aspect of the bargain. CPA9's conduct in this regard and the terms upon which it insisted in exchange for allowing access were unquestionably unreasonable, which is the standard for measuring the breach of the implied covenant of good faith and fair dealing. *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 66 F.Supp.2d 317, 329 (D.R.I.1999) (holding

that the standard for determining whether the implied covenant of good faith and fair dealing has been breached is "whether or not the actions in question are free from arbitrary or unreasonable conduct."). This unreasonableness led RIDEM to commence suit against CPA9 and CPR, to move the Court for an order compelling access to the Site and to claim in its motion papers that CPA9's refusal and insistence on concessions by RIDEM and the settling defendants was unreasonable. It also caused the Town to terminate the Lease in accordance with its terms. CPA9's breach of the implied covenant and the Town's valid termination of the Lease also precludes CPA9's claims for breach of warranty and indemnification.

### 3. THERE WILL BE NO EVIDENCE THAT THE TOWN BREACHED ITS OBLIGATIONS UNDER THE LEASE

The facts of this case will demonstrate that the Town has complied with any indemnification provisions that may exist or have existed under the void and unenforceable Lease. The Town and Settling Defendants have entered into the Partial Consent Decree (Document 11) to investigate the existence of any hazardous waste on the Property and, if any is found, to engage in remediation efforts. By law, this investigation and remediation must be done in accordance with CERCLA and RIDEM rules and regulations. By its actions, the Town is complying with any indemnification provisions that could exist under the void and unenforceable Lease. Plaintiffs only became parties to the Federal Court case as a direct result of their inexplicable, unreasonable and, ultimately, self-defeating, actions in refusing access to the Site.

4. CPA9 HAS NO EVIDENCE OF ACTUAL DAMAGES

The expenses complained of in this case by CPA9 consist of the invoices – many unpaid – of attorneys and consultants retained by CPA9 and/or its related entities in connection with a litigation initiated by them against the former owners of two parcels of property adjacent to the landfill that are included by RIDEM in the underlying CERCLA action. Rather than permit the Town to work cooperatively with RIDEM and the other settling defendants and work to remediate all this property, the overly-litigious CPA9 saw fit to commence its own state court litigation against the neighbors (and eventually the Town) presumably in an effort to gain commercial leverage and concessions to which it was not legally entitled. CPA9 has incurred no legitimate, reasonable, necessary costs related to the investigation or remediation of hazardous materials at the Site that might properly constitute indemnifiable "damages" under the Lease.

**B. THERE WILL BE NO EVIDENCE OF ANY MISREPRESENTATION BY THE TOWN**

The elements necessary to establish a claim of negligent misrepresentation are: "(1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation." *Manchester v. Pereira*, 926 A.2d 1005, 1012 (R.I. 2007) (quoting *Mallette v. Children's Friend and Service*, 661 A.2d 67, 69 (R.I. 1995)).

Misrepresentation is defined as "any manifestation by words or other conduct by one

person to another, that, under the circumstances, amounts to an assertion not in accordance with the facts." *Halpert v. Rosenthal,* 267 A.2d 730, 734 (R.I. 1970)(quoting *Restatement of Contracts,* § 470 at 890-91*).* "A misrepresentation becomes material when it becomes likely to affect the conduct of a reasonable man with reference to a transaction with another person." *Id.*

Plaintiffs will be unable to establish any elements necessary to prove misrepresentation by the Town. At this point, because the specific allegations of misrepresentation are unknown, the Town can only deny making any false representations about the condition of the Site. Further, at a minimum, the environmental language contained in the Lease along with the environmental reports that certainly belies any justifiable reliance by Plaintiffs to their detriment on any representation made by the Town.

## VI. PENDING MATTERS

None

## VII. ESTIMATED TIME OF TRIAL

The Town estimates that its witnesses and evidence will take approximately one day to present. At least one of the Town's anticipated non-party witnesses is traveling from out-of-state, however, and another is beginning a new job on October 15, 2007. Accordingly, the Town may request the Court's indulgence and assistance in scheduling the testimony of non-party witnesses during the time allotted for trial.

Defendant/Cross-claim Defendant,
Town of Coventry,
By its attorneys,

/s/ *Geoffrey W. Millsom*
Geoffrey W. Millsom (#6483)
Mark O. Denehy (#3492)
Elizabeth McDonough Noonan (#4226)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
(410) 274-7200
Fax: (401) 751-0604/351-4607
gmillsom@apslaw.com

/s/ *Michael A. DeSisto*
Michael A. DeSisto (#2444)
DESISTO LAW
211 Angell Street
PO Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: michael@desistolaw.com

/s/ *Patrick J. Sullivan*
Patrick J. Sullivan #5383
Law Offices of Patrick J. Sullivan, Esq.
505 Tiogue Avenue – Suite B
Coventry, RI 02816
(401) 823-7991
(401) 823-4040 fax
Patrick@sullivan-attorneys.com

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on October 5, 2007 and is available for viewing and downloading from the ECF system, and that the following counsel of record will receive notice via the ECF system:

Geoffrey W. Millsom
gmillsom@apslaw.com

Brian LaPlante
blaplante@laplantesowa.com

Anthony F. Muri
amuri@murilaw.com

Patrick J. Sullivan
patrick@sullivan-attorneys.com

Elizabeth M. Noonan
enoonan@apslaw.com

/s/ *Michael A. DeSisto*
Michael A. DeSisto